UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN J. ALTIER | CIVIL ACTION |
| VERSUS | NO. 11-241 c/w 11-242 |
| WORLEY CATASTROPHE RESPONSE, LLC ET AL. | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

Plaintiff, John J. Altier, brought Civil Action No. 11-241 as a putative collective and class action, pursuant to both the Fair Labor Standards Act (the "FLSA") and Fed. R. Civ. P. 23. The defendants are BP Exploration & Production Inc. ("BP"),[1] Worley Catastrophe Response, LLC, and Worley Catastrophe Services, LLC[2] (collectively "Worley"). Following the blowout of the Deepwater Horizon offshore well, which was operated by BP, and the subsequent catastrophic oil spill, Worley, which had a contract with BP, hired Altier and other persons as claims adjusters (a/k/a claims evaluators) to evaluate claims brought against BP by third parties. Altier filed this action individually and on behalf of those similarly situated to recover unpaid overtime wages under the

---

[1] BP's motion to dismiss was granted by Judge Barbier because plaintiffs failed to plead "sufficient facts for the court to draw a reasonable inference that there was an employer relationship between plaintiffs and BP." Order and Reasons, Record Doc. No. 87 at p. 6.

[2] Worley Catastrophe Services, LLC was added as a defendant in plaintiff's Second Amended Complaint, Record Doc. No. 110, which did not otherwise change the allegations of plaintiff's First Amended Complaint.

FLSA. 29 U.S.C. § 201 et seq. Altier alleges that he and similarly situated claims adjusters routinely worked 12 hours or more per day, and more than 40 hours per work week, and that defendants willfully violated the FLSA by improperly classifying the claims adjusters as employees who are exempt from the overtime provisions of the FLSA. On behalf of himself and all others similarly situated, Altier seeks unpaid back wages, liquidated damages, attorney's fees, costs and interest. First Amended Complaint, Record Doc. No. 14.

This matter was recently referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 138.

Altier moved for conditional certification of a collective class pursuant to Section 216(b) of the FLSA. 29 U.S.C. § 216(b). He seeks the court's approval of a proposed notice of the collective action to be sent to potential class members and of a schedule for potential plaintiffs to opt in to the action. Finally, he asks that defendant be compelled to turn over contact information for the potential class members. Record Doc. No. 115.

Worley filed a timely memorandum in opposition to the motion. Record Doc. No. 156. Plaintiff received leave to file a reply memorandum. Record Doc. Nos. 164, 166.

Having considered the record; the complaint, as amended; the submissions and arguments of the parties; and the applicable law, IT IS ORDERED that plaintiff's motion

to certify a collective class is GRANTED IN PART AND DEFERRED IN PART, but only as follows, in that only "conditional certification," as discussed below, is granted.

I.   CONDITIONAL CERTIFICATION

Altier alleges that Worley required him and similarly situated claims adjusters to work 12-hour days for six or seven days a week, for a total of 72 or 84 hours per week, and paid them only a pre-set daily rate of pay for each day worked. To support his allegations, he has submitted affidavits, contracts, time sheets and pay stubs from himself and several others who have opted in to this action as plaintiffs. Altier argues that Worley's failure to pay the adjusters for overtime work violated Section 207(a)(1) of the FLSA, which requires an employer to pay overtime compensation to non-exempt employees who work more than 40 hours per week. The FLSA provides in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

However, the FLSA exempts from the overtime provisions of Section 207(a)(1) "any employee employed in a bona fide executive, administrative, or professional capacity." Id. § 213(a)(1). Worley argues that Altier and the other claims adjusters

3

whom he seeks to represent in this action are executive, administrative and/or highly compensated employees, who are therefore exempt from the overtime compensation mandate of Section 207(a)(1). See 29 C.F.R. §§ 541.200, 541.214(a) (administrative employee); id. § 541.100 (executive employee); id. § 541.601 (highly compensated employees).

Section 216(b) of the FLSA grants employees a collective cause of action to recover overtime compensation and liquidated damages against an employer who violates Section 207.

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . , and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

In the instant motion, Altier seeks to certify a Section 216(b) class consisting of

> all current and former employees of Worley Catastrophe Response, LLC and/or Worley Catastrophe Services, LLC (collectively "Worley"), who:
> Occupied the position(s) of claims adjuster (a/k/a claims evaluator) in support of Worley's role in providing services related to business and property damages arising from the 2010 explosion at the Deepwater

>Horizon offshore drilling rig operated by BP Exploration & Production Inc. ("BP");
>
>>Were paid a daily or hourly rate of pay for their services; and
>>Worked more than 40 hours in workweeks without being paid overtime premium wages for the hours worked over 40 pursuant to the federal Fair Labor Standards Act.

Record Doc. No. 115, Motion for Conditional Certification as a Collective Action, at pp. 1-2.

The Fifth Circuit in Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), approved a two-step, conditional certification process for a collective action brought pursuant to Section 216(b) of the FLSA.[3] Under this procedure, which was based on Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), the district court first determines whether the named plaintiff is "similarly situated" to the proposed class members, as required by Section 216(b). Mooney, 54 F.3d at 1212; accord Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008).

The Fifth Circuit in Mooney also approved another model of determining Section 216(b) certification, which was based on Shushan v. Univ. of Colo., 132 F.R.D. 263 (D.

---

[3] Mooney was a collective action brought under the Age Discrimination in Employment Act, which incorporates Section 216(b) of the FLSA. Id. (citing 29 U.S.C. § 626(b)). Thus, collective action cases brought under the Age Discrimination in Employment Act are persuasive when interpreting Section 216(b) of the FLSA.

Colo. 1990). "Shushan espouses the view that § [216(b)] merely breathes new life into the so-called 'spurious' class action procedure previously eliminated from Fed. R. Civ. P. 23. . . . In other words, the court looks at 'numerosity,' 'commonality,' 'typicality' and 'adequacy of representation' to determine whether a class should be certified." Mooney, 54 F.3d at 1214.

Although the Fifth Circuit has refused to endorse either of the two models as the preferred method, district courts in this circuit agree that "the Lusardi approach has been 'embraced' more often in the Fifth Circuit than the 'Spurious Class Action' [approach] found in Shushan." England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (Polozola, C.J.) (quoting Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (Duval, J.)); accord West v. Lowes Homes Ctrs., Inc., No. 6: 09-1310, 2010 WL 5582941, at *4 (W.D. La. Dec. 16, 2010) (Hill, M.J.), report & recommendation adopted, 2011 WL 126908 (W.D. La. Jan. 14, 2011) (Doherty, J.) (citing Lang v. DirecTV, Inc., 735 F. Supp. 2d 421 (E.D. La. 2010) (Vance, J.)). Accordingly, I will use the Lusardi approach approved in Mooney.

"Similarly situated" is not defined in the FLSA, and the Fifth Circuit "ha[s] not ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action." Acevedo, 600 F.3d at 518-19. The cases that have interpreted this section of the FLSA

6

> are remarkable in that they do not set out a definition of "similarly situated," but rather they define the requirement by virtue of the factors considered in the "similarly situated" analysis. In other words, this line of cases, by its nature, does not give a recognizable form to an ADEA [or FLSA] representative class, but lends itself to <u>ad hoc</u> analysis on a case-by-case basis.

<u>Mooney</u>, 54 F.3d at 1213. Thus, under the <u>Lusardi</u> approach,

> the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made <u>using a fairly lenient standard, [FN8] and typically results in "conditional certification" of a representative class</u>. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>> [FN8] <u>At the notice stage, courts appear to require nothing more than substantial allegations</u> that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.

<u>Id.</u> at 1213-14 & n.8 (quotations and citations omitted) (emphasis added).

Under this lenient, two-step process, if conditional certification is granted, the defendant later may file a motion for decertification after more extensive discovery has been completed.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual

>determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives–i.e. the original plaintiffs–proceed to trial on their individual claims.

Id. at 1214.

The issue presented by Altier's motion at this conditional certification stage is whether he is "similarly situated" to the class members whom he seeks to represent. Because the court's analysis is an ad hoc one, based on the facts of this particular case, other cases that have conditionally certified, declined to certify or decertified conditional classes are not extremely useful in determining whether he is "similarly situated" to other potential class members.

Some of the cases cited by Worley in opposition to plaintiff's motion for conditional certification were either decided at the decertification stage or involved denials of motions to certify when extensive discovery had already been accomplished and the standard used for maintaining or granting certification was much stricter than the lenient standard employed at this conditional certification stage. E.g., England, 370 F. Supp. 2d at 506-07, 511; Baroni v. BellSouth Telecomms., Inc., No. 02-009, 2004 WL 1687434, at 10-11 (E.D. La. July 27, 2004) (Africk, J.); Basco, 2004 WL 1497709, at *4.

8

The cases in which conditional certification has been granted or upheld are clear that the "similarly situated" standard at this stage is <u>lenient</u>, plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is <u>not</u> determinative of lack of similarity. E.g., <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1217-19 (11th Cir. 2001); <u>Mooney</u>, 54 F.3d at 1213-14; <u>West</u>, 2010 WL 5582941, at *7-9; <u>Longcrier v. HL-A Co.</u>, 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008) (citing <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1102 (10th Cir. 2001); <u>Russell v. Ill. Bell Tel. Co.</u>, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); <u>Rubery v. Buth-Na-Bodhaige, Inc.</u>, 569 F. Supp. 2d 334, 337 (W.D.N.Y. 2008); <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008); <u>Bowens v. Atlantic Maint. Corp.</u>, 546 F. Supp. 2d 55, 82-83 (E.D.N.Y. 2008)).

At a minimum, there must be "meaningful 'identifiable facts or legal nexus [that] bind the claims,'" <u>Simmons v. T-Mobile</u>, No. H-06-1820, 2007 WL 210008, at * 8 (S.D. Tex. Jan. 24, 2007) (citation omitted), "so that hearing the cases together furthers the purposes of . . . § 216, is fair to both parties, and does not result in an unmanageable trial." <u>Falcon v. Starbucks Corp.</u>, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008). "Courts have repeatedly stressed that Plaintiffs must only be similarly–not identically–situated to proceed collectively." <u>Id.</u> at 534 (citing <u>Hipp</u>, 252 F.3d at 1217; <u>Reyes v. Tex. Ezpawn, L.P.</u>, No. V-03-128, 2007 WL 101808 , at *1 (S.D. Tex. Jan. 8, 2007); <u>Hill v.

Muscogee County Sch. Dist., No. 4:03-CV-60, 2005 WL 3526669, at *2 (M.D. Ga. Dec. 20, 2005); Basco, 2004 WL 1497709, at *5; Frank v. Capital Cities Commc'ns, Inc., No. 80-CIV-2188-CSH, 1983 WL 643, at *2 (S.D.N.Y. Oct. 11, 1983)).

In his affidavit, Altier estimates that Worley employed approximately 1,300 claims adjusters to work on the Deepwater Horizon oil spill. Plaintiff's Exh. 11. Since this lawsuit was filed, 45 adjusters have opted in as plaintiffs, which "is persuasive evidence that a putative class does exist." Shaffner v. Cash Register Sales & Serv. of Houston, Inc., No. H-05-2064, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006); accord Simmons, 2007 WL 210008, at * 9 (citing Mooney, 54 F.3d at 1214 n. 8; Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1568 (11th Cir. 1991)).

Altier's evidence shows that he and six other claims adjusters, who opted in to this action and submitted affidavits in support of Altier's motion,[4] began working for Worley in the summer of 2010, and that all were required to work 12-hour days for more than five days each week and were paid a fixed daily rate, without receiving any overtime pay. They all assert that they had frequent personal contact with other adjusters, did not know of any other adjusters who had a different job description or different substantive duties

---

[4]Plaintiff has submitted affidavits and supporting documents from himself and six other opt-in plaintiffs: Albert Lynn, Plaintiff's Exhs. 12, 13; Andrew Fraraccio, Plaintiff's Exhs. 14, 15; Franz Shriner, Plaintiff's Exhs. 16-18; Mary Sondgerath, Plaintiff's Exhs. 19, 20; John Starkey, Plaintiff's Exhs. 22, 23; and George Barton, Plaintiff's Exhs. 25, 26.

from them, and understood that the other adjusters were also paid a daily rate without any additional payment for overtime.  See Aguirre v. SBC Commc'ns, Inc., No. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. 2006) ("A court may deny plaintiffs' right to proceed collectively [at the first step] if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.") (citing England, 370 F. Supp. 2d at 507); Hill v. Muscogee County Sch. Dist., No. 4:03-CV-60, 2005 WL 3526669, at *3 (M.D. Ga. Dec. 20, 2005) (citations omitted) ("if there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication"); O'Brien v. Ed Donnelly Enters., Inc., No. 2:04-CV-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) (citations omitted) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice.").  Despite some individual variations in the daily rate of pay, Altier has made substantial allegations that Worley had a single policy, applicable to all claims adjusters who routinely worked more than 40 hours per week, of paying them a flat daily rate without paying for overtime.

Worley argues that some of the potential plaintiffs had contracts, while others did not, and that different managers hired the potential class members and established their pay, work schedules and other job expectations. Plaintiff responds that, regardless of their contracts and who hired them, each of the potential class members was required to work 12-hour days and was paid a daily rate with no payment for overtime work. The potential for individualized amounts of back pay owed to each class member does not defeat the appropriateness of conditional certification. Maynor v. Dow Chem., 2008 WL 2220394, at *10 (S.D. Tex. 2008). Plaintiff's allegations and evidence of Worley's generally applicable policy is sufficient to satisfy the lenient standard for conditional certification at the notice stage. Concerns about individualized damages "are more appropriately addressed at the second stage of the Lusardi analysis." Id.

Worley also contends that Altier and the potential class members were executive, administrative and/or highly compensated employees who were exempt from payment of overtime under the FLSA. Defendant argues that determining whether each class member was exempt will be so fact-intensive and individualized that collective action certification is not possible. Courts in this and other circuits have rejected such arguments at the initial notice stage. West, 2010 WL 5582941, at *9 (citing Indergit v. Rite Aid Corp., No. 08 CIV. 9361(PGG), 2010 WL 2465488, at * 9-10 (S.D.N.Y. June 16, 2010); Robinson v. Empire Equity Group, Inc., 2009 WL 4018560, at *4 (D. Md.

2009); Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008); Prater v. Commerce Equities Mgmt. Co., No. H-07-2349, 2007 WL 4146714, at *7 (S.D. Tex. Nov. 19, 2007); Beall v. Tyler Techs., Inc., 2009 WL 1766141, *3 (E.D. Tex. 2009)).  Whether an employee or category of employees is exempt is more appropriately determined at the second stage of the analysis after discovery has revealed more specific evidence.

Therefore, considering the "lenient standard" for conditional certification and the "minimal evidence" necessary at this stage, I find that Altier is similarly situated to other claims adjusters.  Based on the foregoing evidence, and applying the low standard of proof imposed by the two-step procedure for collective action certification, IT IS ORDERED that plaintiff's motion is GRANTED IN PART and that a collective class under Section 216(b) is conditionally certified, consisting of

> all current and former employees of Worley Catastrophe Response, LLC and/or Worley Catastrophe Services, LLC (collectively "Worley"), who:
> Occupied the position(s) of claims adjuster (a/k/a claims evaluator) in support of Worley's role in providing services related to business and property damages arising from the 2010 explosion at the Deepwater Horizon offshore drilling rig operated by BP Exploration & Production Inc. ("BP");
> Were paid a daily or hourly rate of pay for their services; and
> Worked more than 40 hours in workweeks without being paid overtime premium wages for the hours worked over 40 pursuant to the federal Fair Labor Standards Act.

13

## II.   PLAINTIFF'S PROPOSED NOTICE TO THE POTENTIAL CLASS

Although Worley contends that plaintiff's proposed form of notice "is defective and objectionable for a number of reasons," it has not argued its objections to the proposed form in its current motion papers. Worley asks the court for an opportunity to address those objections, if conditional certification is granted. Defendant also objects that plaintiff's proposed 90-day opt-in period is too long, and asks that the parties be given time to confer and attempt to reach agreement regarding these issues.

Accordingly, IT IS ORDERED that plaintiff's motion is DEFERRED IN PART as to the proposed notice, and that the parties must comply with the additional deadlines set forth below.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's motion to certify a collective class is GRANTED IN PART and that a collective class is <u>conditionally</u> certified, consisting of

> all current and former employees of Worley Catastrophe Response, LLC and/or Worley Catastrophe Services, LLC (collectively "Worley"), who:
> Occupied the position(s) of claims adjuster (a/k/a claims evaluator) in support of Worley's role in providing services related to business and property damages arising from the 2010 explosion at the Deepwater Horizon offshore drilling rig operated by BP Exploration & Production Inc. ("BP");
> Were paid a daily or hourly rate of pay for their services; and

14

Worked more than 40 hours in workweeks without being paid overtime premium wages for the hours worked over 40 pursuant to the federal Fair Labor Standards Act.

IT IS FURTHER ORDERED THAT plaintiff's motion is DEFERRED IN PART and that, no later than July 25, 2011, counsel for the parties must confer concerning a proposed form of notice and, to the extent that they can agree on it, must submit their proposed form to me via a joint letter, which I will file in the record. By the same date, the parties may file supplemental memoranda regarding any portions of the notice and the proposed deadlines as to which they have not agreed. The court will thereafter enter an order regarding the form of notice.

New Orleans, Louisiana, this   11th   day of July, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE