UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN J. ALTIER                                   CIVIL ACTION

VERSUS                                           NO. 11-241 c/w 11-242
                                                 PERTAINS TO NO. 11-242

WORLEY CATASTROPHE                               MAGISTRATE JUDGE
RESPONSE, LLC ET AL.                             JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Plaintiff, John J. Altier, brought Civil Action No. 11-242 as a putative class action

pursuant to Louisiana substantive law and Fed. R. Civ. P. 23 against defendant Worley

Catastrophe Response, LLC.  Complaint, Civil Action No. 11-242, Record Doc. No. 1.

The Second Amended Complaint added 44 more plaintiffs and Worley Catastrophe

Services, LLC as a defendant (collectively "Worley").[1]

This case arises from the massive oil spill that followed the explosion of the

Deepwater Horizon offshore drilling rig operated by BP Exploration & Production Inc.

("BP").  Worley, which had a contract with BP (or, at different times, with BP's

subcontractor or designee) (collectively "BP"), hired Altier and the other plaintiffs as

claims adjusters, also known as claims evaluators, to evaluate claims brought against BP

---

[1]Defendants assert in various pleadings that the original defendant, Worley Catastrophe
Response, LLC, was never the employer of any plaintiff and that Worley Catastrophe Services, LLC
was the employer.  However, Worley Catastrophe Response, LLC has not been dismissed.

by third parties affected by the oil spill.  Altier filed this action individually and on behalf of similarly situated adjusters, seeking additional wages that defendant allegedly failed to pay them in breach of the employment agreements that each plaintiff signed with Worley and on the basis of unjust enrichment.  Plaintiffs seek class certification, compensatory damages, punitive damages, attorney's fees and costs.  Second Amended Complaint, Record Doc. No. 111.

This matter was recently referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 138.

Plaintiffs moved for certification of a class action pursuant to Federal Rule of Civil Procedure 23.  Record Doc. No. 120.  If a class is certified, plaintiffs ask that Worley be compelled to turn over contact information for the potential class members.  They also seek the court's approval of a proposed notice to be sent to potential class members and of a 90-day deadline for class members to opt out of this action after being notified.

Plaintiffs seek to certify a class consisting of

all current and former employees of Worley Catastrophe Response, LLC and/or Worley Catastrophe Services, LLC (collectively "Worley"), who:
Occupied the position(s) of claims adjuster (a/k/a claims evaluator) in support of Worley's role in providing services related to business and property damages arising from the 2010 explosion at the Deepwater

Horizon offshore drilling rig operated by BP Corporation North America, Inc. ("BP"); and

Signed a written employment Agreement with Worley.

Record Doc. No. 120, Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23, at pp. 1-2.

Worley filed a timely memorandum in opposition to the motion. Record Doc. No. 157. Plaintiffs received leave to file a reply memorandum. Record Doc. Nos. 165, 168, 169.

Having considered the record; the complaint, as amended; the submissions and arguments of the parties; and the applicable law, IT IS ORDERED that plaintiffs' motion to certify a class action is DENIED, for the following reasons.

I.     CLASS ACTIONS UNDER FED. R. CIV. P. 23

Federal Rule of Civil Procedure 23 provides that one or more members of a class may sue as representative parties on behalf of all members only if the proposed class satisfies the threshold requirements of Rule 23(a) and one of three possible types of classes under Rule 23(b). Plaintiffs bear the evidentiary burden to show that their proposed class meets all the requirements of both Rule 23(a) and whichever Rule 23(b) subpart supplies the framework for the type of class sought to be certified. Madison v. Chalmette Ref., L.L.C., 637 F.3d 551, 554-55 (5th Cir. 2011). The United States Supreme Court recently summarized plaintiffs' burden as follows.

3

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to <u>prove that there are in fact</u> sufficiently numerous parties, common questions of law or fact, etc.  We recognized in [<u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147 (1982)] that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," . . . and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," . . . ; ("<u>[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable</u>").  Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

<u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011) (quoting <u>Falcon</u>, 457 U.S. at 160, 161) (internal quotations omitted) (emphasis added).

Because of "the important due process concerns of both plaintiffs and defendants inherent in the certification decision," the "plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification."  <u>Madison</u>, 637 F.3d at 554, 555 (quotations omitted).  The district court "must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.  The court must also consider how a trial on the merits would be conducted if the class were certified."  <u>Cole v. Gen. Motors Corp.</u>, 484 F.3d 717, 724 (5th Cir. 2007) (quotations and citations omitted).

A.   <u>Standing</u>

In opposition to plaintiffs' motion for class certification, Worley argues that, as a threshold jurisdictional matter, some of the named plaintiffs never signed employment agreements with it and therefore lack standing to bring breach of contract claims for themselves or on behalf of putative class members. Worley does not argue that all 45 named plaintiffs lack standing, but contends that a class cannot be certified because several plaintiffs do not fall within the proposed class definition.

> Before [the court] reach[es] the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction. . . .
> At an "irreducible constitutional minimum," to have standing, plaintiffs must establish three elements. First, plaintiffs must show that they have suffered "an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" Second, plaintiffs must establish "a causal connection between the injury and the conduct complained of." Finally, it must be likely that the injury "will be redressed by a favorable decision."
> . . . . [I]t is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.

<u>Id.</u> at 721-22 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)) (citing <u>Parker v. Dist. of Columbia</u>, 478 F.3d 370, 377 (D.C. Cir. 2007)).

Worley identifies two named plaintiffs with whom it had no written employment contracts and cites six plaintiffs whose written contracts with it <u>pre</u>dated the BP oil spill. Defendant asserts that these six contracts were "different" from the contracts signed by

Altier and the other adjusters on the BP oil spill project.  Defendant's Exh. A, declaration under penalty of perjury of Allen Carpenter, Manager of Corporate Compliance at Worley Catastrophe Response, LLC, Record Doc. No. 157-1, ¶¶ 10-11.  Thus, Worley argues, these eight plaintiffs have no standing to sue on the employment agreement on which the other named plaintiffs rely for their breach of contract allegations.

Defendant's argument does not defeat class certification.  The proposed class definition limits class membership to those adjusters who worked with Worley in support of the BP oil spill project, signed a written employment agreement substantially identical to the ones attached as Plaintiffs' Exhibit 8 to their motion for certification, and suffered economic injury as a result of Worley's alleged breach of that agreement.  Worley has identified at most eight, and as few as two, of 45 named plaintiffs who did not sign such contracts.  Because defendant has not shown how the prior contracts are "different," the court cannot find at this time that those contracts are so different from those submitted to the court by many of the other named plaintiffs that those six persons are not members of the putative class.

If a class is certified, any named or putative plaintiffs who did not sign such an employment agreement are, by definition, excluded from the class.  Any named plaintiffs who are not class members can be dismissed.  Therefore, the named plaintiffs have standing to pursue this class action.

6

B.   The Prerequisites of Rule 23(a)

Rule 23(a) contains four prerequisites that must be satisfied in all cases:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.  Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.  The Rule's four requirements–numerosity, commonality, typicality, and adequate representation–effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

Dukes, 131 S. Ct. at 2550 (quotations and citations omitted).

"Within the confines of Rule 23, a district court maintains substantial discretion in determining whether to certify a class." Braud v. Transp. Servs. of Ill., No. 05-1898, 2009 WL 2208524, at *7 (E.D. La. July 23, 2009) (Knowles, M.J.) (citing Smith v. Texaco, 263 F.3d 394, 403 (5th Cir. 2001); Berger v. Compaq Computer Corp., 257 F.3d 475, 479-80 (5th Cir. 2001)).  If plaintiffs fail to prove any requirement of Rule 23(a) and

one of the Rule 23(b) categories, "the court must refuse to certify the class." Myers v. BP Am., Inc., No. 08-0168, 2009 WL 2341983, at *5 (W.D. La. July 29, 2009) (Doherty, J.) (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 746 (5th Cir. 1996); Redditt v. Miss. Extended Care Ctrs., Inc., 718 F.2d 1381, 1387 (5th Cir.1983); Huff v. N.D. Cass Co., 485 F.2d 710, 712 (5th Cir. 1973)).

> C.   The Three Types of Classes Under Rule 23(b)

If plaintiffs can meet the threshold requirements of Rule 23(a), they must also satisfy one of the three subparts of Rule 23(b). Cole, 484 F.3d at 723.

A class may be certified under Rule 23(b)(1) if

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1).

A Rule 23(b)(2) class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.

R. Civ. P. 23(b)(2).

A class may be certified under Rule 23(b)(3) if

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## II.   ANALYSIS

The 45 plaintiffs named in the Second Amended Complaint[2] assert that they are

part of a group of approximately 1,300 similarly situated claims adjusters whom Worley

paid between $350 and $550 per day for their work. They allege that they signed written

employment agreements with Worley, which provided that they were to be paid "'65%

of the total fee amount of the invoice billed to the <u>insurance carrier</u> [i.e., BP or its

---

[2]In their reply memorandum, plaintiffs state that a total of 57 plaintiffs have filed consents to join in this action as of July 11, 2011. Record Doc. No. 169, at p. 2. Since then, one more plaintiff has consented to join. Record Doc. No. 181.

designees, such as the Gulf Coast Claims Facility ("GCCF")], upon receipt by Worley, of payment from carrier for work performed.'"  Record Doc. No. 120-1, plaintiffs' memorandum at p. 3 (quoting ¶ 2 of the employment agreements, Record Doc. No. 120-4, Plaintiffs' Exh. 8 at p. 8) (bracketed material inserted by plaintiffs) (emphasis added by the court).  The next sentence of paragraph 2 of the contract states:  "This will be calculated based on each individual file billed and payment received for that file." Record Doc. No. 120-4, Plaintiffs' Exh. 8 at p. 8 (emphasis added).

Based on the underlined language above in paragraph 2 of the contract, Worley denies that this paragraph applies to the work performed by the plaintiffs on the BP project.  Worley asserts that the adjusters were not working on insurance claims, but on third-party claims, and therefore they were not paid on a per file or percentage basis.

Plaintiffs allege that, pursuant to the contracts between BP and Worley, BP paid Worley at a daily rate based on the number of hours that each adjuster worked for Worley.  Plaintiff's Exhs. 7, 9, 10.[3]  Worley paid the adjusters between $350 and $550

---

[3]These three exhibits were designated confidential by defendants and filed under seal by plaintiffs.  Plaintiffs redacted from their memorandum the specific dollar amounts that were taken from the sealed exhibits.  Record Doc. Nos. 118, 119, 121, 122, 123, 124.  Defendants then moved to maintain the exhibits under seal.  Record Doc. Nos. 130, 149.  The parties conferred and reached an agreement that only very limited portions of the exhibits (including pricing information) should remain under seal.  Pursuant to that agreement, Worley provided the court with new, minimally redacted versions of the exhibits.  The court ordered that the redacted exhibits be filed into the record and substituted for the formerly sealed Plaintiffs' Exhibits 7, 9 and 10.  Record Doc. No. 179.

per day (depending on whether they worked on large or small loss claims and when they worked on the project).  Plaintiffs argue that the fixed daily rates Worley paid to each adjuster were less than 65% of the amount Worley received per adjuster per day from BP, in alleged breach of the individual employment agreements between Worley and the adjusters.

Thus, on behalf of themselves and the putative class, plaintiffs seek the difference between 65% of the amounts that Worley received from BP for each adjuster's work and the amounts Worley actually paid each adjuster.  Depending on each adjuster's rate of pay, the unpaid difference allegedly owed by Worley to each adjuster would not amount to more than a few hundred dollars per day, and might be as little as a few tens of dollars per day.  According to the adjusters' affidavits attached to plaintiffs' motion, several of them were employed by Worley for only a few months, beginning no earlier than May 2010 and ending in September 2010, when many of the adjusters were laid off.  One plaintiff, Andrew Frarraccio, states that he worked as an adjuster from June 2010 until November 23, 2010, when "Worley gave [him] a supervisor title and some supervisory duties, but did not change [his] pay structure."  He resigned in March 2011.  Defendant's evidence shows that another plaintiff, John Tatum, also worked as both an adjuster and a supervisor, and that three plaintiffs (Christopher Conly, Denise Miller and Donald

Pipping) are still employed by Worley.  Declaration under penalty of perjury of Allen Carpenter, Record Doc. No. 157-1, ¶ 9.

In their motion, plaintiffs contend that they meet the four threshold requirements of Rule 23(a) and that a class can be certified either under Rule 23(b)(1), 23(b)(2) or 23(b)(3).  Worley responds that plaintiffs cannot carry their burden to show that all of the requirements of Rule 23(a) or any subpart of Rule 23(b) are satisfied.

A.      Plaintiffs Fail to Carry Their Burden to Prove the Existence of All Four Prerequisites of Rule 23(a)

1.      Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs attached to their reply memorandum a verified copy of a Stipulation of Facts, signed by counsel for both Worley Catastrophe Response, LLC and Worley Catastrophe Services, LLC, which was filed in a similar putative class action that is pending in Louisiana state court against those defendants. The stipulation states that "'[a]pproximately 1,200 adjusters, on or after April 20, 2010, signed employment agreements in substantially the same form and substance as the Agreement attached hereto as Exhibit A [attaching the same contract at issue in this action] in connection with their deployment to perform adjusting services for claims arising from the oil spill following the explosion of the Deepwater Horizon offshore oil

rig.'"  Plaintiffs' reply memorandum, Record Doc. No. 169, at p. 1 (quoting Plaintiff's Exh. 31, Record Doc. No. 169-1, Stipulation of Facts filed June 14, 2011 in Michael Sullivan et al. v. The Worley Companies, et al., Docket No. C599055, 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana) (bracketed insertion by plaintiffs).  Exhibit A to the stipulation appears to be the same contract that plaintiffs have filed in the instant action as Plaintiffs' Exhibit 8.

Plaintiffs contend that the stipulated group of approximately 1,200 potential class members satisfies the numerosity requirement of Rule 23(a).  Defendants argued in their opposition memorandum that plaintiffs did not meet their burden to show that there are a sufficient number of putative class members with standing, i.e., adjusters who "have written employment agreements similar in form and substance with [Worley Catastrophe Services]."  However, defendants' stipulation in Sullivan satisfies plaintiffs' burden to show numerosity in this case.

"To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'  'The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite.'"  Myers, 2009 WL 2341983, at *10 n.7 (quoting Pederson v. La. State Univ., 213 F.3d 858, 868 (5th Cir. 2000); Fleming v. Travenol Labs., Inc., 707 F.2d 829, 833 (5th Cir. 1983)).

13

However, the numerosity requirement does not require plaintiffs to establish the exact number of potential class members.  Relevant factors to consider include (1) the geographical dispersion of the class, (2) the ease with which class members may be identified, (3) the nature of the action and (4) the size of each plaintiff's claim.  Chauvin v. Chevron Oronite Co., 263 F.R.D. 364, 368, 369 (E.D. La. 2009) (Lemelle, J.) (citing Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981)); Braud, 2009 WL 2208524, at *7 (citing Mullen v. Treasure Chest Casino, L.L.C., 186 F.3d 620, 624 (5th Cir. 1999)).

In the instant case, a group of 1,200 putative class members easily satisfies the numeric threshold.  The Fifth Circuit has held that 100 to 150 members generally would be "within the range that satisfies the numerosity requirement."  Mullen, 186 F.3d at 625; see also In re Superior Offshore Int'l, Inc. Secs. Litig., No. H-08-0687, 2010 WL 2305742, at *2 (S.D. Tex. June 8, 2010) ("hundreds, if not thousands, of" putative members satisfied numerosity requirement); Braud, 2009 WL 2208524, at *7 ("Numerically speaking, a class of over one hundred members is sufficient . . . ."); Street v. Diamond Offshore Drilling, No. 00-1317, 2001 WL 568111, at 4 (E.D. La. May 25, 2001) (Duval, J.) (363 potential class members satisfied numerosity requirement).

As for the other numerosity factors to be considered, plaintiffs assert that, by the time their motion to certify was filed, the 57 claims adjusters who have joined this action

14

reside in twelve different states.  Because the class members are former and/or current employees of defendant, they should be easy to identify.  For those putative members who only worked for Worley for a short period of time and who are potentially owed only an additional few tens of dollars per day, their claims are for small amounts that may not justify the expense of individual lawsuits.  These factors also tend to satisfy the numerosity test.

Accordingly, I find that the numerosity requirement has been met.

2.  <u>Commonality</u>

To demonstrate commonality, plaintiffs must show that there are questions of law or fact common to the class.

> The test for commonality is not demanding. . . .  All that is required for each class is that there is one common question of law or fact:  The interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.  Therefore, the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality.

<u>James v. City of Dallas</u>, 254 F.3d 551, 570 (5th Cir. 2001) (quotations omitted).  "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do . . . ."  <u>Dukes</u>, 131 S. Ct. at 2556 (quotation and citation omitted).

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . .  This does not mean merely

15

that they have all suffered a violation of the same provision of law. . . .
Their claims must depend upon a common contention–for example [in a
Title VII case], the assertion of discriminatory bias on the part of the same
supervisor.  That common contention, moreover, must be of such a nature
that it is capable of classwide resolution–which means that determination
of its truth or falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke.

       What matters to class certification . . . is not the raising of common
"questions"–even in droves–but, rather the capacity of a classwide
proceeding to generate common <u>answers</u> apt to drive the resolution of the
litigation.  Dissimilarities within the proposed class are what have the
potential to impede the generation of common answers.

<u>Id.</u> at 2551 (quotations, citations and footnote omitted).

In the instant case, plaintiffs allege that they all signed the same contract, that
Worley paid them all a daily wage between $350 and $550, and that Worley uniformly
failed to pay them according to the contract's terms.  Worley does not dispute that all
members of the proposed class were paid in the same fashion, but it argues that all class
members did not enter into the same written employment agreement, or in some cases
any written agreement, with it.  As previously discussed, however, the class definition
precludes from class membership any adjusters who did not sign a substantially identical
agreement.  The Stipulation of Facts that defendants signed and filed in the <u>Sullivan</u> class
action in state court supports a finding that all putative class members signed the same
contract and suffered the same alleged injury:  they were not paid in accordance with the

contract's payment terms.  Determination of the terms of the contract is a question common to all class members.

Therefore, plaintiffs have satisfied the undemanding commonality requirement.

      3.    <u>Typicality</u>

To meet the typicality requirement, the claims of the representative plaintiffs must be typical of the claims of the class.

> Like commonality, the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.  Typicality does not require a complete identity of claims.  Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

<u>James</u>, 254 F.3d at 571 (quotations and citations omitted).

Here, the named plaintiffs argue that their claims are typical of the claims of all class members because they are based factually on the same underlying contract and legally on the same theory of breach of contract.  Worley again relies on its argument that a few named plaintiffs did not sign the same contract and argues that, with respect to those adjusters who did sign the same form of contract, individualized issues preclude

a finding of typicality. For the same reasons stated above in connection with commonality, defendant's arguments do not defeat typicality.

I find that plaintiffs have sufficiently shown that their claims are typical of the class claims.

### 4.   Adequacy of Representation

Finally, Rule 23(a) requires that the representative plaintiffs fairly and adequately protect the interests of the class.

> This requirement is essential to due process, because a final judgment in a class action is binding on all class members.  To meet the adequacy requirement, the class representatives, their counsel, and the relationship between the two [must be] adequate to protect the interests of absent class members.  The Court must be satisfied that class representatives, and not their counsel, are directing the litigation.  Thus they must show themselves sufficiently informed about the litigation to manage the litigation effort.

In re OCA, Inc. Secs. & Derivative Litig., No. 05-2165, 2008 WL 4681369, at *8 (E.D. La. Oct. 17, 2008) (Vance, J.) (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940); Unger v. Amedisys Inc., 401 F.3d 316, 321 (5th Cir. 2005); Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002); In re Am. Med. Sys., Inc., 75 F.3d 1069, 1083 (6th Cir. 1996)) (quotations omitted).

> The long-established standard for the adequacy determination . . . requires an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]  In addition to determining the proposed class counsel's zeal

and competence and the proposed class representative's willingness and ability, the district court's adequacy inquiry also serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.

Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 130-31 (5th Cir. 2005) (citing Berger v. Compaq Computer Corp., 257 F.3d 475, 482-83 (5th Cir. 2001); Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470 (5th Cir. 1982)) (quotations omitted) (brackets in original)

In the instant case, the named plaintiffs argue that their interests are the same as those of the putative class because the interests of each are based on the same legal theories. They have submitted affidavits from their counsel, which they contend demonstrate that their attorneys are experienced in class actions and will diligently pursue and protect the interests of the class.

Worley argues that the class is "fraught with internal conflicts of interest," again noting that some plaintiffs have no written employment agreements. Defendant's opposition memorandum, Record Doc. No. 157 at p. 24. Because any persons without written employment contracts are not class members, they present no conflict.

Worley also asserts that some plaintiffs who claim to have written contracts have no evidence of such contracts, while other plaintiffs (six of whom are identified) signed "different" contracts, none of which have been provided to the court. Defendant contends that the interests of these two groups conflict and that the class attorneys would

be forced to choose which group's arguments to advance, at the expense of the other group's interests.

In the absence of any "different" contracts in evidence, the court cannot determine that the contracts conflict at all, much less whether they conflict in any way that would impact the adequacy of the named plaintiffs' representation.  Moreover, defendants admitted in their stipulation filed in the <u>Sullivan</u> state court action that approximately 1,200 adjusters signed contracts substantially identical to the ones submitted to this court and relied on by the plaintiffs in this action.  On this record, I cannot find substantial conflicts of interest between the named plaintiffs and the putative class members.

However, the representative plaintiffs have presented <u>no evidence</u> to demonstrate that they are directing the litigation, are sufficiently informed about it to manage the litigation effort or have the willingness and ability to take an active role and protect the interests of absentee class members.  In the absence of such evidence, plaintiffs have not carried their burden to demonstrate adequacy of representation.  The absence of this type of evidence, as well as the absence of any trial plan (as discussed below regarding Rule 23(b)(3)), also undercuts plaintiffs' argument that their counsel are skilled at prosecuting class actions.  Therefore, I find that plaintiffs have <u>not</u> established adequacy of representation.

Plaintiffs' failure to prove all four prerequisites of Rule 23(a) defeats their motion for class certification.  Even assuming, however, that they could establish adequacy of representation if given yet another opportunity to submit evidence, their proposed class fails to satisfy any of the Rule 23(b) categories, as discussed below.

B.      Plaintiffs Fail to Carry Their Burden Under Rule 23(b)

Plaintiffs argued in their original memorandum that a class should be certified under any one of the three subcategories of Rule 23(b).  In their reply memorandum, they respond only to defendant's arguments concerning Rule 23(b)(3).  It appears that they have (prudently) abandoned their arguments that a class could be certified under either Rule 23(b)(1) or 23(b)(2).  Nonetheless, I address all three categories to make clear why this action is inappropriate for class certification under any category.

1.      Rule 23(b)(2)

Plaintiffs do not qualify for class certification under either Rule 23(b)(1) or 23(b)(2), both of which implicate injunctive relief.  Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that <u>final injunctive relief or corresponding declaratory relief</u> is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  Although plaintiffs argue that they seek injunctive relief, their Second Amended Complaint does <u>not</u> seek any such relief.  Their prayer seeks only "an order declaring"

that Worley breached the contract and was unjustly enriched, for which plaintiffs seek compensatory and punitive damages.   Record Doc. No. 111, Second Amended Complaint, at p. 13.  A declaration that Worley breached the contract does not amount to "declaratory relief" when the only relief sought in connection with such a finding is damages.  Furthermore, the only mention of injunctive relief in the Second Amended Complaint is a conclusory allegation that Rule 23(b)(2) certification is appropriate because, "[i]n the absence of appropriate injunctive relief, Defendants will continue to operate without authorization." Id. at p. 4.  Neither plaintiffs' complaint nor their motion to certify specifies any type of "appropriate injunctive relief."

In Caruso v. Allstate Ins. Co., No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007), Chief Judge Vance of this court reviewed the Fifth Circuit's precedents and explained why neither Rule 23(b)(2) nor 23(b)(1) certification is appropriate when the complaint primarily seeks money damages.  Beginning with an analysis of Rule 23(b)(2), she stated:

> In Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998), the Fifth Circuit discussed when certification under Rule 23(b)(2) is appropriate.  The court explained that although Rule 23(b)(2) is silent as to whether monetary remedies may be sought in conjunction with injunctive or declaratory relief, the Advisory Committee Notes on Rule 23 state that class certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  The court found that this commentary implies that the drafters of Rule 23 intended that at least some form or amount of monetary relief

22

would be permissible in a Rule 23(b)(2) class action.  The court determined that monetary relief may be obtained in a Rule 23(b)(2) class action as long as the predominant relief sought is injunctive or declaratory.

Monetary relief predominates in Rule 23(b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.  Incidental damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.  <u>See</u> . . . Fed. R. Civ. P. 23(b)(2) (referring only to relief appropriate "with respect to the class as a whole").  "Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations."

<u>Caruso</u>, 2007 WL 2265100, at *2-3 (quoting <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d at 411, 415) (internal citation omitted).

The United States Supreme Court in <u>Dukes</u> recently clarified that Rule 23(b)(2) does not authorize a class action when individualized claims for monetary relief predominate.

One possible reading of [Rule 23(b)(2)] is that it applies <u>only</u> to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all.  We need not reach that broader question in this case, because we think that, at a minimum, claims for <u>individualized</u> relief (like the backpay at issue here) do not satisfy the Rule.  The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted–the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a <u>different</u> injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class

23

certification when each class member would be entitled to an individualized award of monetary damages.

<u>Dukes</u>, 131 S. Ct. at 2557 (quotation and citation omitted).

The Court found that the structure of Rule 23(b) makes "it clear that individualized monetary claims belong in Rule 23(b)(3)," not in Rule 23(b)(2).

> The procedural protections attending the (b)(3) class–predominance, superiority, mandatory notice, and the right to opt out–are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary <u>to a (b)(2) class</u>.  When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.  Predominance and superiority are self-evident.  But with respect to each class member's individualized claim for money, that is not so–which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class.  Similarly, (b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause.  In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process.  While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.

<u>Id.</u> at 2558-59 (citation omitted).

Plaintiffs in the instant case primarily seek monetary damages for the alleged breaches of their employment contracts.  Notably, in their motion for class certification, they also seek approval of a notice to be sent to the putative class members, with a 90-

day period to opt out of the class, which, as the Supreme Court indicated, is indicative of a class that seeks predominantly monetary relief.

Furthermore, plaintiffs have presented no evidence that injunctive relief is appropriate.  A party who seeks declaratory or injunctive relief must "'demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.'"  Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383, 388 (5th Cir. 2003) (quoting Soc'y of Separationists, Inc. v. Herman, 959 F.2d 1283, 1285 (5th Cir. 1992)).  Of the 55 named plaintiffs, only three still work for Worley.  There are no existing relationships between Worley and the other 52 named plaintiffs (or any other putative class members who no longer work for Worley) that would require any declaration of the rights and obligations of the parties, 28 U.S.C. § 2201(a), and no ongoing actions by Worley that could be enjoined.  Dukes, 131 S. Ct. at 2560.  Plaintiffs have an adequate remedy at law for Worley's alleged past conduct:  damages for breach of contract.  Under no reading of plaintiffs' Second Complaint can it be said that they seek primarily declaratory or injunctive relief for themselves or the putative class.  Just as in Caruso, plaintiffs in the instant case

> do not state what declaratory or injunctive relief they seek.  It is clear that to the extent such relief is mentioned, it is incidental to the monetary relief, which is the focus of plaintiffs' class petition.  Moreover, there is no allegation that the purported class members seek a uniform monetary remedy.  See Doiron v. Conseco Health Ins. Co., 240 F.R.D. 247, 254

(M.D. La. 2007)[, rev'd on other grounds, 279 F. App'x 313 (5th Cir. 2008)] (finding certification of a proposed class inappropriate under Rule 23(b)(2) where plaintiffs primarily sought monetary damages).

Caruso, 2007 WL 2265100, at *3.

Most importantly, plaintiffs' breach of contract allegations "will require highly individualized determinations" of the damages each plaintiff sustained.  Id.  Plaintiffs allege that the contracts at issue provide that each adjuster will receive "65% of the total fee amount of the invoice billed to" BP or its designees, "upon receipt by Worley, of payment from carrier for work performed."  Employment agreements, Record Doc. No. 120-4, Plaintiffs' Exh. 8 at p. 8  Even if plaintiffs can prove that this provision applied to their work and was breached on a class-wide basis, the calculation of damages will require individual determinations of the particular files on which each adjuster worked, the dates worked on each file, the amount that Worley billed to BP per adjuster per file for those dates, the amount that BP paid to Worley per adjuster per file, the amounts Worley paid to each adjuster (which ranged between $350 and $550 per day, depending on whether the adjusters worked on large or small loss claims and when they worked on the project), and a calculation of the difference between what each plaintiff was paid per day worked and 65% of the amount that defendant received for the particular files on which the adjuster worked.

26

In addition, a claim for punitive damages requires a focus on individualized issues to comply with constitutional protections.  <u>Allison</u>, 151 F.3d at 419; <u>see</u> <u>BMW v. Gore</u>, 517 U.S. 559, 574-75 (1996) (punitive damages awards must comport with "[e]lementary notions of fairness enshrined in our constitutional jurisprudence" and must be based on considerations such as the degree of reprehensibility of defendant's actions; the disparity between the harm or potential harm suffered by each plaintiff and the punitive damages awarded; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases).

Therefore, plaintiffs' motion to certify a Rule 23(b)(2) class is denied.

2.    <u>Rule 23(b)(1)</u>

A class may be certified under Rule 23(b)(1) if

(1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Plaintiffs make only conclusory arguments, unsupported by any evidence, that their proposed class falls within Rule 23(b)(1).  They assert that prosecution of separate actions could result in incompatible standards of conduct being applied to Worley "going forward" because some class members are still employed by Worley.  As previously noted, defendant has identified only three named plaintiffs who still work for it. Plaintiffs also reiterate that they are seeking unspecified injunctive relief.  They admit that Rule 23(b)(1) "is best suited to lawsuits seeking declaratory or injunctive relief." Record Doc. No. 120-1, plaintiffs' memorandum at p. 10.

Because monetary relief predominates in plaintiffs' complaint, certification under Rule 23(b)(1) must be denied.  As Chief Judge Vance explained in <u>Caruso</u> and as the Supreme Court discussed in <u>Dukes</u>, due process concerns inform whether a Rule 23(b)(1) class can be certified when claims for individual monetary damages predominate.

> In the context of a proposed Rule 23(b)(1)(A) class certification, the Fifth Circuit recently instructed a district court to "consider the extent to which the due process concerns inherent in <u>Allison</u> apply to a (b)(1)(A) class and whether a (b)(1)(A) class can be maintained if damages are the primary remedy sought."  The court added that "resolution of these issues is still uncertain in the Fifth Circuit."
>
> In <u>Allison</u>, discussed supra, the Fifth Circuit determined that monetary relief may be obtained in a Rule 23(b)(2) class action as long as the predominant relief sought is injunctive or declaratory.  The court stated that "monetary relief 'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less

28

of a group remedy and instead depends more on the varying circumstances and merits of each class member's case." Id. at 414.  The court explained:

> [T]he drafters of Rule 23 found it unnecessary to provide (b)(1) and (b)(2) class members with the absolute right to notice or to opt-out of the class-procedural safeguards made mandatory under (b)(3) for class members who might wish to pursue their claims for money damages in individual lawsuits and to not be bound by membership in a class action. Providing these rights exclusively to (b)(3) classes demonstrates concern for the effect of monetary claims on class cohesiveness.  Monetary remedies are often related directly to the disparate merits of individual claims.  As a result, a class seeking substantial monetary remedies will more likely consist of members with divergent interests.
>
> . . . . In Allison, the court implicitly stated that class certification is inappropriate under Rule 23(b)(1)(A) for individualized damage claims akin to those presented in this case.  ("Given the individual-specific nature of the plaintiffs' claims for compensatory and punitive damages, we perceive no risk of inconsistent adjudications or incompatible standards of conduct in having those claims adjudicated separately.") (emphasis in original).

Caruso, 2007 WL 2265100, at *3-4 (quoting Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 318 (5th Cir. 2007); Allison, 151 F.3d at 411, 412-13, 421 n.16).

In the instant case, as in Caruso,

> [h]aving considered Allison [and Dukes], the Court finds that certification of a class under Rule 23(b)(1)(A) is inappropriate here.  Plaintiffs predominantly seek monetary relief, in the form of damages for breach of contract . . . .  Moreover, plaintiffs have not alleged an entitlement to any type of class-wide recovery.  Further, plaintiffs make no request for specific declaratory or injunctive relief.  Plaintiffs thus have not demonstrated that defendants would face incompatible standards of conduct if the Court does not certify the proposed class.  Given the type and predominance of

monetary damages requested, the Court concludes that it is improper to certify the class under Rule 23(b)(1)(A).

Likewise, the Court finds certification of the proposed class under Rule 23(b)(1)(B) inappropriate.  The Fifth Circuit has stated:  "The rule necessarily contemplates the allocation of a limited resource . . . for only where the class members' interests are to some degree mutually exclusive will the individuals' litigation 'substantially impair' the others' rights." Where, as here, plaintiffs seek monetary damages, "the paradigm is of a 'limited fund' to be distributed for the class members' benefit."  Because plaintiffs have not identified, and the Court does not find, any such limited resource that is affected by plaintiffs' lawsuit, certification under Rule 23(b)(1)(B) is improper.

Id. at *4 (quoting In re Asbestos Litig., 134 F.3d 668, 672 n. 7 (5th Cir. 1998)).

Accordingly, plaintiffs' motion to certify a class under Rule 23(b)(1) is denied.

      3.    Rule 23(b)(3)

Before certifying a class under Rule 23(b)(3), the court must find (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

To predominate, "common issues must constitute a significant part of the individual cases."  Mullen, 186 F.3d at 626.  The predominance "requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation.'"  Unger, 401 F.3d at 320 (quoting Amchem Prods., 521

U.S. at 623-24).

> Determining whether the plaintiffs can clear the predominance hurdle set
> by Rule 23(b)(3) requires district courts to consider how a trial on the
> merits would be conducted if a class were certified.  This, in turn, entails
> identifying the substantive issues that will control the outcome, assessing
> which issues will predominate, and then determining whether the issues are
> common to the class, a process that ultimately prevents the class from
> degenerating into a series of individual trials.

Madison, 637 F.3d at 555 (quotations and citations omitted).  The district court abuses

its discretion if it certifies a Rule 23(b)(3) class without having "meaningfully

consider[ed] how Plaintiffs' claims would be tried."  Id. at 556.

Plaintiffs argue that common questions of law and fact predominate because they

all seek the same relief, i.e., the difference between the pay they received and the pay

they were allegedly owed under their written employment contracts, under the same

breach of contract theory.  They assert that the evidence will include the adjusters'

employment contracts, the contracts between Worley and BP, and evidence that each

adjuster was paid a day rate between $350 and $550, which was less than the amount

provided for in their contracts.  They allege that their damages are "subject to formulaic

treatment" and will present no individualized complications.  Record Doc. No. 120-1,

plaintiffs' memorandum at p. 12.

Plaintiffs have failed to carry their burden to prove that common issues of law or fact predominate over individual issues. Their mere assertion that each class member brings the same cause of action under the same type of contract is insufficient to establish predominance. <u>Caruso</u>, 2007 WL 2265100, at *5. They have failed to provide the court with any trial plan, which severely undermines their contention that common issues predominate.

As described above, this action will involve significant individualized damages issues. Just because the contracts provide a formula of "65% of the total fee amount of the invoice billed" does not mean that determining plaintiffs' damages will be merely formulaic. Damages will have to be calculated for each plaintiff on a per file basis, which will require correlating the dates when each adjuster worked on a particular file with the dates and the invoices when Worley billed for the work and the amounts Worley received for each adjuster's particular work, then determining how much the adjuster should have been paid for each file and the difference between those amounts and what Worley actually paid.

Other individualized evidentiary issues include whether there is a record of each class member's written contract; whether particular adjusters entered into a contract with Worley in connection with the BP project or a prior project; whether the prior contracts are substantially similar to the contracts submitted in connection with plaintiffs' motion

to certify; whether the prior contracts are applicable to the BP project and, if so, what the applicable terms of those contracts are; what each adjuster was told in advance about his or her compensation, see Miller v. Miller, 1 So. 3d 815, 817-18, 819 (La. App. 2d Cir. 2009) (parol or extrinsic evidence concerning the terms of a written contract may be admissible if the written expression of the parties' common intention is ambiguous); whether the work that each adjuster performed is subject to the contract provision on which plaintiffs rely; and whether particular adjusters may have waived any right to assert a breach of contract claim if they knowingly accepted Worley's performance without any objection to the rate of pay. Therefore, plaintiffs have failed show that common issues predominate over individual issues.

As to the second part of Rule 23(b)(3), "[t]he superiority requirement is simply that 'class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" Doiron, 279 F. App'x at 317 (quoting Fed R. Civ. P. 23(b)(3)). "Determining whether the superiority requirement is met requires a fact-specific analysis and will vary depending on the circumstances of any given case." Madison, 637 F.3d at 555 (citing 7AA Wright, Miller & Kane, Federal Practice & Procedure § 1783 (3d ed. 2005)).

Plaintiffs argue that a class action is superior here because it "would not present any managerial or administrative complexities," the class is well-defined, and there are

33

no unique jurisdictional, choice of law or liability issues.  Record Doc. No. 120-1, plaintiffs' memorandum at p. 12.  These purely conclusory assertions are wholly insufficient to carry plaintiffs' burden to establish superiority.

<u>CONCLUSION</u>

For all of the foregoing reasons, IT IS ORDERED that plaintiff's motion to certify a class action is DENIED.

New Orleans, Louisiana, this ____26th____ day of July, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE