# EXHIBIT

# A

## elaws˙ - FLSA Overtime Security Advisor

### Compensation Requirements

**Salary Basis or Fee Basis**

An employee who meets the duties tests for the **executive** exemption must be paid on a salary basis of at least $455 per week. An employee who meets the duties tests for the **administrative** or **professional** exemption must be paid on a salary or fee basis of at least $455 per week. An employee in certain **computer-related occupations** who meets the duties tests may be paid either on a salary or fee basis of at least $455 per week or on an hourly basis of at least $27.63 for each hour worked.

To qualify for exemption, employees generally must meet certain tests regarding their job duties and meet certain compensation requirements. Job titles do not determine exempt status. You should also review the other sections of this Advisor for help in determining whether the employee meets the duties tests for exemption.

What is meant by salary?

What does "exclusive of board, lodging or other facilities" mean?

What is meant by fee basis?

How does one determine whether payment on a fee basis will be at least $455 per week?



Can payments computed or calculated on an hourly rate, day rate or shift rate ever qualify as a salary?

What if the payday is not weekly?

Does the exempt employee have to be paid the full salary if he or she works less than the full week?

Do certain payroll practices such as recording of hours and taking deductions from leave accounts violate the salary basis test?

Are there any exceptions to the minimum salary requirement?

### What is meant by salary?

A salary is a predetermined amount of pay that constitutes all or part of the employee's compensation for the pay period. This predetermined amount is a fixed amount and may not be reduced based on the quality or quantity of the work performed. A salary is generally expressed as an amount paid per week, per month or per year.

To qualify for exemption under the Regulations, Part 541, an employee must earn the minimum required salary of $455 per week exclusive of "board, lodging or other facilities."

[Back to Top]

### What does "exclusive of board, lodging or other facilities" mean?

The phrase "exclusive of board, lodging or other facilities" means "free and clear" or independent of any claimed credit for non-cash items of value that an employer may provide to an employee. Thus, the costs incurred by an employer to provide an

employee with board, lodging or other facilities may not count towards the minimum salary amount required for exemption. The term "other facilities" refers to items similar to board and lodging, such as meals furnished at company restaurants or cafeterias or by hospitals, hotels or restaurants to their employees; meals, dormitory rooms and tuition furnished by a college to its student employees; merchandise furnished at company stores or commissaries, including articles of food, clothing and household effects; housing furnished for dwelling purposes; and transportation furnished to employees for ordinary commuting between their homes and work. Learn more about board, lodging and other facilities.

[Back to Top]

### What is meant by fee basis?

A fee basis is an agreed amount for a single job regardless of the time required to complete the job. Payments on a fee basis resemble piece work payments with the important distinction that a fee is generally paid for the kind of job that is unique rather than for a series of jobs repeated indefinitely and for which payment on an identical basis is made over and over. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

[Back to Top]

### How does one determine whether payment on a fee basis will be at least $455 per week?

To test whether a fee payment meets the minimum required amount for exemption, consider the time worked to complete the job and determine if the payment is at a rate that would yield at least $455 per week if the employee worked 40 hours. For example, an artist paid $250 to paint a portrait that took 20 hours to complete meets the minimum required amount since the rate would yield $500 if 40 hours were worked.

[Back to Top]

### Can payments computed or calculated on an hourly rate, day rate or shift rate ever qualify as a salary?

Yes, under limited circumstances. However, the employment arrangement must first include a guarantee of at least the minimum weekly required amount of at least $455 per week, **paid on a salary basis**, regardless of the number of hours, days or shifts worked. In addition, a reasonable relationship must exist between the guaranteed amount and the amount actually earned.

The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. The reasonable relationship test only applies if the employee's pay is computed on an hourly, daily or shift basis. The test does not apply, for example, if the employee is paid only commissions with a guarantee of a minimum salary. In all cases however, the employee must receive the full amount of salary in any week he or she works, even if the number of hours (or days or shifts) worked (or the amount of commissions earned) is not enough for the employee to make the guaranteed salary.



For example, if a manager whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the $455 minimum salary level required. In any week in which the manager

Case 2:11-cv-00241-JCW Document 234-1 Filed 09/22/11 Page 4 of 50

performed any work for the employer, the manager would receive at least the guaranteed amount of pay.

[Back to Top]

### What if the payday is not weekly?

The employee must receive the full salary of at least $455 per week if paid on a weekly basis. If the employee is paid every two weeks (bi-weekly), the minimum salary required is $910.00. If the employee is paid twice a month (semi-monthly), the minimum salary required is $985.83. If the employee is paid monthly, the minimum salary required is $1,971.66.

[Back to Top]

### Does the exempt employee have to be paid the full salary if he or she works less than the full week?

Generally speaking, if the exempt employee performs any work during the workweek, he or she must be paid the full salary amount. An employer may not make deductions from an exempt employee's pay for absences caused by the employer or by the operating requirements of the business. If the exempt employee is ready, willing and able to work, deductions from the employee's pay may not be made when no work is available.

If the employee does not work a full workweek in the first or last week of employment, his or her employer may pay the proportionate part of the employee's salary. The employer is not required to pay an employee for any week in which the employee performs no work.

There are a few more exceptions to the general rule that the exempt employee must be paid his or her full salary in a week in which he or she performs any work. To learn about these exceptions, explore:

Absence under the Family and Medical Leave Act (FMLA)
Deductions
Disciplinary Deductions
Jury Duty, Military Leave and Serving as a Witness
Sick Leave and Disability Leave
Vacation and Personal Time

[Back to Top]

### Do certain payroll practices such as recording of hours and taking deductions from leave accounts violate the salary basis test?

A number of common payroll and recordkeeping practices are allowed that do not call into question whether an employee is paid on a salary basis. For example, the following practices do not violate the salary basis test:

- Taking deductions from an exempt employee's accrued leave account to cover an absence subject to the leave policy (See also Sick Leave and Disability Leave and Vacation and Personal Time);

- Requiring an employee to record his or her hours of work;

- Requiring an employee to work a specified schedule; and

- Implementing bona fide, across the board schedule changes.

[Back to Top]

Case 2:11-cv-00241-JCW    Document 234-1    Filed 09/22/11    Page 5 of 50

## Are there any exceptions to the minimum salary requirement?

These compensation requirements do not apply to outside sales employees, teachers, lawyers or doctors. Employees in certain computer-related occupations may be paid either the minimum required salary or on an hourly basis of at least $27.63.

The minimum required salary (or fee basis) required to be paid to an employee working in American Samoa for an employer other than the Federal government is $380 per week.

An employee working in the motion picture industry who meets the duties tests for exemption as an executive, administrative or professional employee is not required to be paid on a salary basis provided that the employee is paid a base rate of at least $695 per week or a proportionate amount (based on a week of not more than six days) if the employee does not work a full workweek for any reason. A daily rate may be paid to an employee in a job category for which no weekly base rate is provided and the daily rate paid would yield at least $695 if six days were worked or to an employee in a job category with a base weekly rate of at least $695 and the daily base rate is at least one-sixth (1/6) of the weekly base rate.

[Back to Top]

Compensation Requirements

FLSA Overtime Security Advisor Main Menu | Wage and Hour Division

# EXHIBIT

# B

communicated policy that prohibits improper pay deductions and includes a complaint mechanism will not lose the exemption for any employee if the employer reimburses employees for the improper deductions after receiving employee complaints and makes a good faith commitment to comply in the future. This rule applies, moreover, regardless of the reasons for the improper pay deductions. The safe harbor is available both for improper deductions made because there is no work available and for improper deductions made for reasons other than lack of work. If the employer fails to reimburse the employees for improper deductions or continues to make improper deductions after receiving employee complaints, final subsection (d) clarifies that "the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."

*Fourth*, the NAM, Policy Association, the U.S. Chamber of Commerce, the National Association of Chain Drug Stores and others ask the Department to allow employers a reasonable amount of time to investigate after receiving an employee complaint to determine whether the deductions were improper, to take action to fix any improper deductions, and to correct any improper deductions. We have not changed the text of the regulation in response to this suggestion because the Department views it as self-evident that, before reimbursing the employee or taking other corrective action, an employer will need a reasonable amount of time to investigate an employee's complaint that an improper deduction was made. The amount of time it will take to complete the investigation will depend upon the particular circumstances, but employers should begin such investigations promptly. The mere fact that other employee complaints are received by the employer before timely completion of the investigation should not, by itself, defeat the safe harbor.

*Finally*, a number of commenters, such as the Food Marketing Institute, ask the Department to clarify the burdens of proof. We do not intend to modify the burdens that courts currently apply. *See Schaefer* v. *Indiana Michigan Power Co.*, 358 F.3d 394 (6th Cir. 2004) (employer has the burden to show employee was paid on a salary basis); *Yourman* v. *Giuliani*, 229 F.3d 124 (2nd Cir. 2000) (employee has the burden to show actual practice of impermissible deductions), *cert. denied*, 532 U.S. 923 (2001).

**Section 541.604  Minimum Guarantee Plus Extras**

Under proposed section 541.604, an exempt employee may receive additional compensation beyond the minimum amount that is paid as a guaranteed salary. For example, an employee may receive, in addition to the guaranteed minimum paid on a salary basis, extra compensation from commissions on sales or a percentage of the profits. An exempt employee may also receive additional compensation for extra hours worked beyond the regular workweek, such as half-time pay, straight time pay, or a flat sum. Proposed section 541.604(b) provided that an exempt employee's salary may be computed on an hourly, daily or shift basis, if the employee is given a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and "a reasonable relationship exists between the guaranteed amount and the amount actually earned." The reasonable relationship requirement is satisfied where the weekly guarantee is "roughly equivalent" to the employee's actual usual earnings. Thus, for example, the proposal stated that where an employee is guaranteed at least $500 per week, and the employee normally works four or five shifts per week and is paid $150 per shift, the reasonable relationship requirement is satisfied.

The final rule does not make any substantive changes to the proposed rule, but does make a number of clarifying changes. The reasonable relationship requirement incorporates in the regulation Wage and Hour's long-standing interpretation of the existing salary basis regulation, which is set forth in the agency's Field Operations Handbook and in opinion letters. The courts also have upheld the reasonable relationship requirement. *See, e.g., Brock* v. *Claridge Hotel & Casino*, 846 F.2d 180, 182–83 (3rd Cir.) (salary basis requirement not met where employees are paid by the hour and the guarantee is "nothing more than an illusion"), *cert. denied*, 488 U.S. 925 (1988). Some commenters, although not a significant number, object to the reasonable relationship requirement or question the clarity of the regulatory text, while others ask for additional specificity about the various types of additional compensation that may be paid above and beyond the guaranteed salary. The Department has made minor wording changes in response to the comments to clarify this provision.

The National Association of Manufacturers (NAM) suggests that the

Department list the range of compensation options, such as cash overtime in any increment, compensatory time off, and shift or holiday differentials, that employers may provide in addition to the guaranteed salary without violating the salary basis requirement. NAM gave the specific example of an employer who allows an exempt worker to take a day off as a reward for hours worked on a weekend outside the employee's normal schedule. The proposed regulation provided some examples and stated that additional compensation "may be paid on any basis." We agree that the examples described above would not violate the salary basis test. However, we have not and could not include in the regulations every method employers might use to provide employees with extra compensation for work beyond their regular workweek. Thus, we have added only one of the examples NAM suggests regarding compensatory time off.

The National Technical Services Association states that it was unclear whether the reasonable relationship requirement applies in all cases to employees who receive a salary and additional compensation. We have clarified that this requirement applies when an employee's actual pay is computed on an hourly, daily or shift basis. Thus, for example, if an employee receives a guaranteed salary plus a commission on each sale or a percentage of the employer's profits, the reasonable relationship requirement does not apply. Such an employee's pay will understandably vary widely from one week to the next, and the employee's actual compensation is not computed based upon the employee's hours, days or shifts of work.

A few commenters, including the National Association of Convenience Stores, the Fisher & Phillips law firm and the American Council of Engineering Companies, advocate the elimination of the reasonable relationship test. They question whether it was appropriate for the Department to require a reasonable relationship between the guaranteed salary and the employee's actual usual compensation when the payments are based on the employee's quantity of work, when the Department does not have such a requirement for salaries plus commissions or other similar compensation. They state that, so long as the employee also is guaranteed compensation of not less than the minimum required amount, it ought to be irrelevant how an employee's pay is computed. Moreover, they state that the terms "reasonable relationship" and

"roughly equivalent" are uncertain and will be subject to litigation. Fisher & Phillips also states that the first sentence of proposed section 541.604(a) is ambiguous because it suggests that the extra compensation must somehow be paid consistent with the salary basis requirements. The Department does not agree with the comments suggesting the elimination of the reasonable relationship requirement. If it were eliminated, an employer could establish a pay system that calculated exempt employees' pay based directly upon the number of hours they work multiplied by a set hourly rate of pay; employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employees for partial day absences). Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion. We believe that the proposed regulation provided clear guidance about the reasonable relationship requirement. The Department has never suggested a particular percentage requirement in prior opinion letters, and this issue has rarely arisen in litigation over the years. The proposed rule clarified these terms by stating that an employee who is guaranteed compensation of "at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per shift consistent with the salary basis requirement." Therefore, we have not made any changes to the proposal in this regard. However, we have modified the introductory sentence to clarify that the extra compensation does not have to be paid on a salary basis.

One commenter states that the "minimum guarantee plus extras" concept allows too much flexibility and essentially allows an employer to circumvent the prohibition against docking for absences due to a lack of work. The commenter gives the example of registered nurses whose average pay is $30 per hour, who would earn the guaranteed minimum in two shifts. The commenter believes that the entire balance of the workweek could be compensated as "extra compensation." Thus, the commenter expresses concern that a nurse could be paid for all additional shifts on a straight time basis, with no overtime, and if the hospital had a lack of work, the nurse might not receive more than the two shifts required to earn the minimum guarantee. This commenter views such a system as effectively converting a

nurse into an hourly employee not paid overtime, or a salaried employee whose pay was reduced due to variations in the quantity of work performed. However, under the final rule, if an employee is compensated on an hourly basis, or on a shift basis, there must be a reasonable relationship between the amount guaranteed per week and the amount the employee typically earns per week. Thus, if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the minimum salary required by the regulation.

Another commenter states that allowing an exempt employee to be paid based on an hourly computation is inconsistent with the general requirement that exempt employees must be paid on a salary basis. This comment does not take account of the fact that the employees affected by the reasonable relationship requirement must receive a salary guarantee that applies in any week in which they perform any work. The tolerance for computing their actual pay on an hourly, shift or daily basis is for computation purposes only; it does not negate the fact that such employees must receive a salary guarantee that will be in effect any time the employer does not provide sufficient hours or shifts for them to reach the guarantee. We believe that the reasonable relationship requirement, which has been a Wage and Hour Division policy for at least 30 years (see FOH § 22b03), ensures that the salary guarantee for such employees is a meaningful guarantee rather than a mere illusion.

### Section 541.605   Fee Basis

Proposed section 541.605 simplified the fee basis provision in the current rule, but made no substantive change. Thus, the proposed rule provided that administrative and professional employees may be paid on a fee basis, rather than a salary basis: "An employee may be paid on a 'fee basis' within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion." Generally, a "fee" is paid for a unique job. "Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis."

The final rule does not make any changes to the proposed rule. Very few comments were submitted on this provision. The Fisher & Phillips law firm notes that the Sixth Circuit in

[Tack]well v. *University Hospitals Home* [Ca]re Services, 276 F.3d 832 (6th Cir. [200]2), held that a compensation plan th[at] combines fee payments and hou[rs] d[o]es not qualify as a fee basis bec[aus]e it ties compensation, at lea[st in] part, to the number of hours or day[s] work[ed] and not on the accomplish[ment] of a gi[ven] single task. It asks the Depart[me]nt to amend the rule to [pe]rmit combini[ng] the payment of a fee [wi]th additio[n] non-fee-based compe[n]sation. The Depa[rtm]ent has decided n[ot] to change th[e l]ong-standing fee ba[s]is rule because th[e on]ly appellate de[cis]ion that addresses t[he] issue accepted the "fee-only" requir[em]ent, and Fish[er] & Phillips conc[lud]ed that this a[n "a]rcane and rarely-use[d] provision." [We] continue to be[lie]ve that pa[ym]ent of a fee is best underst[ood] to precl[ud]e payment of additional su[m] based [on] the number of days or hours [wo]rked. [An]other commenter asks [the] Dep[art]ment to revise the rule to [el]imin[ate] the necessity for "employers to t[r]ack [ho]urs on a project or assignme[nt in] order to determine the exem[pt sta]tus of employees." Howev[er, a]s in the current rule, the final rule re[aso]nably prescribes that in determining [the a]dequacy of a fee payment, referen[ce sho]uld be made to a standard workw[eek] of 40 hours. Thus, "[t]o determin[e w]hether the fee payment meets the [min]im[u]m amount of salary required fo[r exem]p[ti]on under these regulations [the am]o[un]t paid to the employee [may] b[e teste]d by determining th[e tim]e work[ed] on the job and whether th[e f]ee paym[ent i]s at a rate that would am[oun]t to at lea[st $]455 per week if the em[pl]oyee worke[d 4]0 hours."

### Section 541.6[06] Board, Lod[gin]g or Other Facili[ties]

Proposed [se]ction 541.606 de[fin]ed the terms, "boa[rd,] lodging or other facilities." [Th]e Department did [no]t receive su[bs]tantive comments o[n thi]s section, a[nd] has made no chang[e in] the final rul[e].

### Subpart [I] Definitions and Miscell[an]eous Provisions

### Sectio[n 5]41.700   Primary Duty

Pro[po]sed section 541.700 define[d the] term [p]rimary duty" as "the princip[al,] ma[in,] major or most important duty [th]at the [em]ployee performs." The propos[ed] rul[e s]tated that a determination of an [e]mp[lo]yee's primary duty "must be ba[sed] o[n al]l the facts in a particular case," a[nd] se[ts] forth four nonexclusive factors to [c]onsider: "the relative importance of th[e ex]empt duties as compared with other [ty]pes of duties; the amount of time [s]pent performing exempt work; the [e]mployee's relative freedom from direct

# EXHIBIT

# C

Westlaw.

1998 WL 1147746 (DOL WAGE-HOUR)                                                    Page 1

1998 WL 1147746 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

December 30, 1998

**\*\*\***

This is in response to your letter requesting an opinion concerning whether your client's proposed pay arrangement complies with the salary basis provisions under Regulations, 29 CFR Part 541.

Your client provides contract services for other companies. Among these services are high-level recruiting services. It employs individuals to perform these services and pays them between $60,000 and $100,000 per year. You ask that we assume, for the purpose of this opinion letter, that the services rendered on behalf of the client are such that the employees meet the administrative or professional duties test under the upset salary provisions of the Regulations.

The employment contract states that the employees will be paid an amount equal to the number of billable hours actually billed to the client's customers multiplied by a rate determined in the contract. The billable hours do not equate with hours worked and are similar to billable hours in a law or accounting firm in which the hours billed to a customer represent only a portion of the hours worked by an employee rendering the services. The contract also provides that employees will receive at least $250 in compensation in any week in which they perform any work. Your client believes that its proposed compensation plan is similar to a piece-rate or fee basis of payment in that it is not based upon actual hours worked but on amounts actually billed to the customers.

As you know, section 13(a)(1) of the FLSA provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in Regulations, 29 CFR Part 541 (copy enclosed). An employee may qualify for exemption if all of the pertinent tests relating to duties, responsibilities and salary, as discussed in the appropriate section of the Regulations, are met. An employee is paid on a salary basis if he or she regularly receives each pay period a predetermined amount constituting all or part of his or her compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. This salary must not be less than that required by the Regulations.

Section 541.118(b) explains that a "salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment." It is our longstanding position that extra compensation paid for additional hours worked does not defeat the exempt status of an otherwise exempt employee. However, the guaranteed salary must bear a "reasonable relationship" to the employee's actual weekly compensation, calculated on an hourly basis. This "reasonable relationship" requirement is satisfied if the weekly guarantee is **roughly equivalent** to the employee's total earnings at the hourly rate for his or her normal workweek.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1998 WL 1147746 (DOL WAGE-HOUR)                                              Page 2

Based on the information provided, it appears that there is no "reasonable relationship" between the guaranteed salary and the hourly wages paid to your client's employees. Therefore, it is our opinion that your client's proposed pay arrangement would not qualify as payment on a "salary or fee basis" as described in the Regulations.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have also represented that this opinion is not sought on behalf of a client or firm which is under investigation by the Wage and Hour Division, or which is in litigation with respect to, or subject to the terms of any agreement or order applying, or requiring compliance with, the provisions of the FLSA.

We trust that this information is responsive to your inquiry.

Sincerely,
Daniel F. Sweeney
Office of Enforcement Policy Fair Labor Standards Team

Enclosure

1998 WL 1147746 (DOL WAGE-HOUR)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT

# D

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2008)

# Fact Sheet #17G:  Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information on the exemption from <u>minimum wage</u> and <u>overtime pay</u> provided by Section 13(a)(1) of the Fair Labor Standards Act as defined by Regulations, <u>29 CFR Part 541</u>.

The <u>FLSA</u> requires that most employees in the United States be paid at least the <u>federal minimum wage</u> for all hours worked and <u>overtime pay</u> at time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

However, Section 13(a)(1) of the FLSA provides an exemption from both <u>minimum wage</u> and <u>overtime pay</u> for employees employed as bona fide executive, administrative, professional and outside sales employees. Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees. To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week. Job titles do not determine exempt status. In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

See other fact sheets in this series for more information on the exemptions for <u>executive</u>, <u>administrative</u>, <u>professional</u>, <u>computer</u> and <u>outside sales</u> employees.

**Salary Basis Requirement**
To qualify for exemption, employees generally must be paid at not less than $455 per week on a salary basis. These salary requirements do not apply to outside sales employees, teachers, and employees practicing law or medicine. Exempt computer employees may be paid at least $455 on a salary basis *or* on an hourly basis at a rate not less than $27.63 an hour.

Being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a weekly, or less frequent, basis. The predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work. Subject to exceptions listed below, an exempt employee must receive the full salary for any week in which the employee performs any work, regardless of the number of days or hours worked. Exempt employees do not need to be paid for any workweek in which they perform no work. If the employer makes deductions from an employee's predetermined salary, i.e., because of the operating requirements of the business, that employee is not paid on a "salary basis." If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

**Circumstances in Which the Employer May Make Deductions from Pay**
Deductions from pay are permissible when an exempt employee: is absent from work for one or more full days for personal reasons other than sickness or disability; for absences of one or more full days due to sickness or disability if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for salary lost due to illness; to offset amounts employees receive as jury or witness fees, or for military pay; for penalties imposed in good faith for infractions of safety rules of major significance; or for unpaid disciplinary suspensions of one or more full days imposed in good faith for workplace conduct rule infractions. Also, an employer is not required to pay the full salary in the initial or terminal week of employment, or for weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act.

**Effect of Improper Deductions from Salary**

The employer will lose the exemption if it has an "actual practice" of making improper deductions from salary. Factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting deductions; the time period during which the employer made improper deductions; the number and geographic location of both the employees whose salary was improperly reduced and the managers responsible; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. If an "actual practice" is found, the exemption is lost during the time period of the deductions for employees in the same job classification working for the same managers responsible for the improper deductions.

Isolated or inadvertent improper deductions will not result in loss of the exemption if the employer reimburses the employee for the improper deductions.

**Safe Harbor**

If an employer (1) has a clearly communicated policy prohibiting improper deductions and including a complaint mechanism, (2) reimburses employees for any improper deductions, and (3) makes a good faith commitment to comply in the future, the employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing the improper deductions after receiving employee complaints.

**Fee Basis**

Administrative, professional and computer employees may be paid on a "fee basis" rather than on a salary basis. If the employee is paid an agreed sum for a single job, regardless of the time required for its completion, the employee will be considered to be paid on a "fee basis." A fee payment is generally paid for a unique job, rather than for a series of jobs repeated a number of times and for which identical payments repeatedly are made. To determine whether the fee payment meets the minimum salary level requirement, the test is to consider the time worked on the job and determine whether the payment is at a rate that would amount to at least $455 per week if the employee worked 40 hours. For example, an artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement since the rate would yield $500 if 40 hours were worked.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

When the state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**

# EXHIBIT

# E

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2008)

# Fact Sheet #17B:  Exemption for Executive Employees Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information on the exemption from <u>minimum wage</u> and <u>overtime pay</u> provided by Section 13(a)(1) of the Fair Labor Standards Act as defined by Regulations, <u>29 CFR Part 541</u>.

The <u>FLSA</u> requires that most employees in the United States be paid at least the <u>federal minimum wage</u> for all hours worked and <u>overtime pay</u> at time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

However, Section 13(a)(1) of the FLSA provides an exemption from both <u>minimum wage</u> and <u>overtime pay</u> for employees employed as bona fide executive, administrative, professional and outside sales employees.  Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees.  To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week.  Job titles do not determine exempt status.  In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

See other fact sheets in this series for more information on the exemptions for <u>administrative</u>, <u>professional</u>, <u>computer</u> and <u>outside sales</u> employees, and for more information on the <u>salary basis</u> requirement.

**Executive Exemption**

To qualify for the executive employee exemption, all of the following tests must be met:

- The employee must be compensated on a <u>salary basis</u> (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;
- The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and
- The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

**Primary Duty**

"Primary duty" means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

**Management**

Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity

and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

## Department or Subdivision

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function.

## Customarily and Regularly

The phrase "customarily and regularly" means greater than occasional but less than constant; it includes work normally done every workweek, but does not include isolated or one-time tasks.

## Two or More

The phrase "two or more other employees" means two full-time employees or their equivalent. For example, one full-time and two half-time employees are equivalent to two full-time employees. The supervision can be distributed among two, three or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. For example, a department with five full-time nonexempt workers may have up to two exempt supervisors if each supervisor directs the work of two of those workers.

## Particular Weight

Factors to be considered in determining whether an employee's recommendations as to hiring, firing, advancement, promotion or any other change of status are given "particular weight" include, but are not limited to, whether it is part of the employee's job duties to make such recommendations, and the frequency with which such recommendations are made, requested, and relied upon. Generally, an executive's recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include occasional suggestions. An employee's recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

## Exemption of Business Owners

Under a special rule for business owners, an employee who owns at least a bona fide 20-percent equity interest in the enterprise in which employed, regardless of the type of business organization (e.g., corporation, partnership, or other), and who is actively engaged in its management, is considered a bona fide exempt executive.

## Highly Compensated Employees

Highly compensated employees performing office or non-manual work and paid total annual compensation of $100,000 or more (which must include at least $455 per week paid on a salary or fee basis) are exempt from the FLSA if they customarily and regularly perform at least one of the duties of an exempt executive, administrative or professional employee identified in the standard tests for exemption.

**Where to Obtain Additional Information**

For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).

When the state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees.  Links to your state labor department can be found at www.dol.gov/esa/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

1-866-4-USWAGE
TTY: 1-866-487-9243
Contact Us

# EXHIBIT

# F

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2008)

# Fact Sheet #17C:  Exemption for Administrative Employees Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information on the exemption from <u>minimum wage</u> and <u>overtime pay</u> provided by Section 13(a)(1) of the Fair Labor Standards Act as defined by Regulations, <u>29 CFR Part 541</u>.

The <u>FLSA</u> requires that most employees in the United States be paid at least the <u>federal minimum wage</u> for all hours worked and <u>overtime pay</u> at time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

However, Section 13(a)(1) of the FLSA provides an exemption from both <u>minimum wage</u> and <u>overtime pay</u> for employees employed as bona fide executive, administrative, professional and outside sales employees.  Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees.  To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week.  Job titles do not determine exempt status.  In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

See other fact sheets in this series for more information on the exemptions for <u>executive</u>, <u>professional</u>, <u>computer</u> and <u>outside sales</u> employees, and for more information on the <u>salary basis</u> requirement.

## Administrative Exemption

To qualify for the administrative employee exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
- The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

## Primary Duty

"Primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

## Directly Related to Management or General Business Operations

To meet the "directly related to management or general business operations" requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line or selling a product in a retail or service establishment.  Work "directly related to management or general business operations" includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, Internet and database administration; legal and regulatory compliance; and similar activities.

**Employer's Customers**
An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, employees acting as advisors or consultants to their employer's clients or customers — as tax experts or financial consultants, for example — may be exempt.

**Discretion and Independent Judgment**
In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term must be applied in the light of all the facts involved in the employee's particular employment situation, and implies that the employee has authority to make an independent choice, free from immediate direction or supervision. Factors to consider include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval, and other factors set forth in the regulation. The fact that an employee's decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.

**Matters of Significance**
The term "matters of significance" refers to the level of importance or consequence of the work performed. An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

**Educational Establishments and Administrative Functions**
The administrative exemption is also available to employees compensated on a salary or fee basis at a rate not less than $455 a week, or on a salary basis which is at least equal to the entrance salary for teachers in the same educational establishment, and whose primary duty is performing administrative functions directly related to academic instruction or training in an educational establishment. Academic administrative functions include operations directly in the field of education, and do not include jobs relating to areas outside the educational field. Employees engaged in academic administrative functions include: the superintendent or other head of an elementary or secondary school system, and any assistants responsible for administration of such matters as curriculum, quality and methods of instructing, measuring and testing the learning potential and achievement of students, establishing and maintaining academic and grading standards, and other aspects of the teaching program; the principal and any vice-principals responsible for the operation of an elementary or secondary school; department heads in institutions of higher education responsible for the various subject matter departments; academic counselors and other employees with similar responsibilities. Having a primary duty of performing administrative functions directly related to academic instruction or training in an educational establishment includes, by its very nature, exercising discretion and independent judgment with respect to matters of significance.

**Highly Compensated Employees**
Highly compensated employees performing office or non-manual work and paid total annual compensation of $100,000 or more (which must include at least $455 per week paid on a salary or fee basis) are exempt from the

FLSA if they customarily and regularly perform at least one of the duties of an exempt executive, administrative or professional employee identified in the standard tests for exemption.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

When the state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**

# EXHIBIT

# G

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2008)

# Fact Sheet #17H:  Highly-Compensated Workers and the Part 541-Exemptions Under the Fair Labor Standards Act (FLSA)

The FLSA requires that most employees in the United States be paid at least the federal minimum wage for all hour worked and overtime pay at time and one-half the regular rate of pay for all hours worked over 40 in a workweek.  However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees.  Section 13(a)(1) and Section 13(a)(17) also exempts certain computer employees.  To qualify for exemption, employees must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week.

### Highly-Compensated Workers

The regulations contain a special rule for "highly-compensated" workers who are paid total annual compensation of $100,000 or more.  A highly compensated employee is deemed exempt under Section 13(a)(1) if:

1. The employee earns total annual compensation of $100,000 or more, which includes at least $455 per week paid on a salary basis;
2. The employee's primary duty includes performing office or non-manual work; and
3. The employee customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt executive, administrative or professional employee.

Thus, for example, an employee may qualify as an exempt highly-compensated executive if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements in the standard test for exemption as an executive.

### Total Annual Compensation

The required total annual compensation of $100,000 or more may consist of commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period, but does not include credit for board or lodging, payments for medical or life insurance, or contributions to retirement plans or other fringe benefits.

### Make-up Payments and Prorating

There are special rules for prorating the annual compensation if employees work only part of the year, and which allow payment of a single lump-sum, make-up amount to satisfy the required annual amount at the end of the year and similar make-up payments to employees who terminate before the year ends.

### Customarily and Regularly

"Customarily and regularly" means greater than occasional but may be less than constant, and includes work normally and recurrently performed every workweek but does not include isolated or one-time tasks.

**Where to Obtain Additional Information**

For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
<u>Contact Us</u>

# EXHIBIT

# 6

*** Duplicate Pay Stub ***

Worley Catastrophe Services, LLC

Sellers, James K.
927 Medford Avenue

Pensacola                    FL   32507

| | Employee ID: | 6213 |
|---|---|---|
| | SSN: | 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 |
| | Check Number: | DD000000000000041879 |
| | Check Date: | 11/11/2010 |

* * * V O I D E D * * *

| Code | Description | Pay Rate | Hours | Current Amount | Year-To-Date Hours | Amou |
|---|---|---|---|---|---|---|
| C57DR | C57DR GCCF Florida | $900.00 | 0.00 | $900.00 | 0.00 | 19,250. |
| **GROSS PAY** | | | | **$900.00** | | **$71,747.** |
| | Federal Tax | | | $91.68 | | 10,565. |
| | FICA Social Security Tax | | | $55.80 | | 3,230. |
| | FICA Medicare Tax | | | $13.05 | | 755. |
| **TAXES WITHHELD** | | | | **$160.53** | | **$14,727.** |
| **NET PAY** | | | | **$739.47** | | **$71,981.** |

| Direct Deposit Information | | Amount | Time Off Balance | Hours |
|---|---|---|---|---|
| Bank | Account | | Vacation Balance | 0.00 |
| 264181574 | 1190000068615 | $739.47 | Sick Balance | 0.00 |



# ⚡WORLEY

## GCCF TIME SHEET

| LAST NAME: | FIRST NAME: | POSITION: | Worley Adjuster Number | |
|---|---|---|---|---|
| SELLERS | JAMES KEVIN | Evaluator | | 6213 |

LOCATION: Pensacola, FL

| DAY | MONTH DATE YEAR | TIME IN | TIME OUT | LESS LUNCH PERIOD | TOTAL HOURS |
|---|---|---|---|---|---|
| SUNDAY | 10/24/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| MONDAY | 10/25/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| TUESDAY | 10/26/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| WEDNESDAY | 10/27/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| THURSDAY | 10/28/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| FRIDAY | 10/29/10 | 0:00 am | 0:00 am | 1:00 HR | 0.00 |
| SATURDAY | 10/30/10 | 7:00 am | 8:00 pm | 1:00 HR | 12.00 |
| For week ending  Saturday | 10/30/10 | | Total Hours | | 12.00 |

Employee Signature: *[signature]*   Date 10/30/10

Approval Signature: *[signature]*   Date 10-30-10

# ⚡WORLEY

## GCCF TIME SHEET

| LAST NAME: | FIRST NAME: | POSITION: | Worley Adjuster Number | |
|---|---|---|---|---|
| SELLERS | JAMES KEVIN | Evaluator | | 6213 |

LOCATION: Pensacola, FL

| DAY | MONTH DATE YEAR | TIME IN | TIME OUT | LESS LUNCH PERIOD | TOTAL HOURS |
|---|---|---|---|---|---|
| SUNDAY | 10/31/10 | | | 1:00 HR | |
| MONDAY | 11/01/10 | | | 1:00 HR | |
| TUESDAY | 11/02/10 | | | 1:00 HR | |
| WEDNESDAY | 11/03/10 | | | 1:00 HR | |
| THURSDAY | 11/04/10 | | | 1:00 HR | |
| FRIDAY | 11/05/10 | | | 1:00 HR | |
| SATURDAY | 11/06/10 | 7:00 am | 8:00 pm | 1:00 HR | 12.00 |
| For week ending Saturday | 11/06/10 | | Total Hours | | 12.00 |

Employee Signature: *[signature]*    Date 11/06/10

Approval Signature: *[signature]*    Date 11/06/10

# EXHIBIT

# 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL., And Others Similarly Situated, | * * * | CIVIL ACTION NO. 11-CV-00241 |
| Plaintiffs, | * * | C/W 11-CV-00242 |
| versus | * * | (REFERS TO 11-0241) |
| WORLEY CATASTROPHE RESPONSE, LLC, BP CORPORATION NORTH AMERICA, INC., AND DEFENDANTS X, Y & Z | * * * * * | Section J/2  MAG. JOSEPH C. WILKINSON, JR. (BY CONSENT) |
| Defendants. | * | |

## INITIAL DISCLOSURES OF DEFENDANTS

Defendants, Worley Catastrophe Response, LLC ("WCR") and Worley Catastrophe Services, LLC ("WCS"), provide the following Initial Disclosures in the above-styled lawsuit, in accordance with Federal Rule of Civil Procedure 26(a)(1) based upon information presently known:

A.    **IDENTITY OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT DEFENDANT MAY USE TO SUPPORT ITS CLAIMS AND DEFENSES.**

1.    Allen Carpenter
Manager – Corporate Compliance
303 Timber Creek
Hammond, Louisiana 70403
Phone: (985) 542-2364

Allen Carpenter has knowledge of the agreed method of compensating adjusters on non-insurance claims projects, such as the BP project.  As a manager for Defendants, any communications to Mr. Carpenter must be directed to Defendants' counsel.

2.    Steve Castleberry
Catastrophe Coordinator

303 Timber Creek
Hammond, Louisiana 70403
Phone: (985) 542-2364

Steve Castleberry has knowledge of the agreed method of compensating adjusters on non-insurance claims projects, such as the BP project. As a manager for Defendants, any communications to Mr. Castleberry must be directed to Defendants' counsel.

3.   Eddie Landrum
     Director of Marketing
     303 Timber Creek
     Hammond, Louisiana 70403
     Phone: (985) 542-2364

Eddie Landrum has knowledge of the agreed method of compensating adjusters on non-insurance claims projects, such as the BP project. As a manager for Defendants, any communications to Mr. Landrum must be directed to Defendants' counsel.

4.   Charlie Bilbe
     Director of Environmental Division
     303 Timber Creek
     Hammond, Louisiana 70403
     Phone: (985) 542-2364

Charlie Bilbe has knowledge of the agreed method of compensating adjusters on non-insurance claims projects, such as the BP project. As a manager for Defendants, any communications to Mr. Bilbe must be directed to Defendants' counsel.

**B.   IDENTIFICATION OF RELEVANT DOCUMENTS THAT DEFENDANT MAY USE TO SUPPORT ITS CLAIMS AND DEFENSES.**

1.   Agreement between John J. Altier and Worley Catastrophe Services, LLC [D-0001 to D-00004, 11-0242]

2.   Agreement between George Barton and Worley Catastrophe Services, LLC [D-00005 - D-00008, 11-0242]

3.   Agreement between Jennifer Bell and Worley Catastrophe Services, LLC [D-00009 - D-00012, 11-0242]

4.   Agreement between Lorrie Beno and Worley Catastrophe Services, LLC [D-00013 - D-00016, 11-0242]

5.   Agreement between Sandra Brennan and Worley Catastrophe Services, LLC [D-00536 - D-00539, 11-0242]

6.   Agreement between Michael Cambre and Worley Catastrophe Services, LLC [D-00017 - D-00020, 11-0242]

7.    Agreement between Billy Cannon and Worley Catastrophe Services, LLC [D-00021 - D-00024, 11-0242]

8.    Agreement between Vicky Cassady and Worley Catastrophe Services, LLC [D-00523 - D-00526, 11-0242]

9.    Agreement between Nywanna Collins and Worley Catastrophe Services, LLC [D-00025 - D-00028, 11-0242]

10.   Agreement between Roy DeMauney and Worley Catastrophe Services, LLC [D-00029 - D-00032, 11-0242]

11.   Agreement between Andrew Fraraccio and Worley Catastrophe Services, LLC [D-00033 - D-00036, 11-0242]

12.   Agreement between Maurice Green and Worley Catastrophe Services, LLC [D-00038 - D-00041, 11-0242]

13.   Agreement between Teresa Hamilton and Worley Catastrophe Services, LLC [D-00042 - D-00045, 11-0242]

14.   Agreement between James Harris and Worley Catastrophe Services, LLC [D-00046 - D-00049, 11-0242]

15.   Agreement between Phil Hays and Worley Catastrophe Services, LLC [D-00050 - D-00053, 11-0242]

16.   Agreement between Lee Hudson and Worley Catastrophe Services, LLC [D-00054 - D-00057, 11-0242]

17.   Agreement between Alba Lugo and Worley Catastrophe Services, LLC [D-00058 - D-00061, 11-0242]

18.   Agreement between Albert Lynn and Worley Catastrophe Services, LLC [D-00062 - D-00065, 11-0242]

19.   Agreement between Matthew Margetta and Worley Catastrophe Services, LLC [D-00066 - D-00069, 11-0242]

20.   Agreement between Paul Martello and Worley Catastrophe Services, LLC [D-00070 - D-00073, 11-0242]

21.   Agreement between Thomas McCloskey and Worley Catastrophe Services, LLC [D-00074 - D-00077, 11-0242]

22.   Agreement between Cathy Milstead and Worley Catastrophe Services, LLC [D-00078 - D-00081, 11-0242]

23. Agreement between Roberta Murphey and Worley Catastrophe Services, LLC [D-00082 - D-00085, 11-0242]

24. Agreement between Tami Peyton and Worley Catastrophe Services, LLC [D-00086 - D-00089, 11-0242]

25. Agreement between Donald Pipping and Worley Catastrophe Services, LLC [D-00545 - D-00548, 11-0242]

26. Agreement between Arthur Powell and Worley Catastrophe Services, LLC [D-00090 - D-00093, 11-0242]

27. Agreement between Maria Primera and Worley Catastrophe Services, LLC [D-00094 - D-00097, 11-0242]

28. Agreement between James Sellers and Worley Catastrophe Services, LLC [D-00098 - D-00101, 11-0242]

29. Agreement between Franz Shriner and Worley Catastrophe Services, LLC [D-00103 - D-00106, 11-0242]

30. Agreement between Cynthia Smith and Worley Catastrophe Services, LLC [D-00528 - D-00531, 11-0242]

31. Agreement between Ernie Smith and Worley Catastrophe Services, LLC [D-00107 - D-00110, 11-0242]

32. Agreement between Mary Sondgerath and Worley Catastrophe Services, LLC [D-00111 - D-00114, 11-0242]

33. Agreement between Olga Souders and Worley Catastrophe Services, LLC [D-00115 - D-00118, 11-0242]

34. Agreement between John Starkey and Worley Catastrophe Services, LLC [D-00119 - D-00122, 11-0242]

35. Agreement between Francine Stewart and Worley Catastrophe Services, LLC [D-00123 - D-00126, 11-0242]

36. Agreement between John Tatom and Worley Catastrophe Services, LLC [D-00127 - D-00130, 11-0242]

37. Agreement between Joyce Thomas and Worley Catastrophe Service, LLC [D-00532 - D-00535, 11-0242]

38. Agreement between John Thompson and Worley Catastrophe Services, LLC [D-00131 - D-00134, 11-0242]

39. Agreement between Marvin Uecker, Jr. and Worley Catastrophe Services, LLC [D-00135 - D-00138, 11-0242]

40. Agreement between Harold Windham and Worley Catastrophe Services, LLC [D-00139 - D-00142, 11-0242]

41. ESIS Catastrophe Services Vendor Contract with Worley Co. [D-00143 - D-00152, 11-0242]

42. Claims Services Agreement entered into by Worley Catastrophe Response, LLC and Worley Catastrophe Services, LLC, and BP Exploration & Production, Inc. [D-00153 – D-00183, 11-0242]

43. GCCF – Worley Claims Services Agreement [D-00184 - D-00302, 11-0242]

44. Time Sheets of Alba Lugo [D-00001 - D-00009, 11-0241]

45. Time Sheets of Albert Lynn [D-00010 – D-00018, 11-0241]

46. Time Sheets of Andrew (Andy) Fraraccio [D-00019 - D-00055, 11-0241]

47. Time Sheets of Arthur Powell [D-00056 - D-00070, 11-0241]

48. Time Sheets of Billy Cannon [D-00071 - D-00086, 11-0241]

49. Time Sheets of Cathy Milstead [D-00087 - D-00095, 11-0241]

50. Time Sheets of Christopher Conly [D-00096 - D00142, 11-0241]

51. Time Sheets of Christopher McDonald [D-00143 - D-00156, 11-0241]

52. Time Sheets of Clayton Campbell [D-00157 - D-00179, 11-0241]

53. Time Sheets of Cynthia Smith [D-00180 - D-00193, 11-0241]

54. Time Sheets of David Ducote [D-00194 - D-00195, 11-0241]

55. Time Sheets of Denise Miller [D-00196 - D-00244, 11-0241]

56. Time Sheets of Donald Pipping [D-00245 - D-00288, 11-0241]

57. Time Sheets of Ernest (Ernie) Smith [D-00289 - D-00311, 11-0241]

58. Time Sheets of Francine Stewart [D-00312 - D-00324, 11-0241]

59. Time Sheets of Franz Shriner [D-00325 - D-00339, 11-0241]

60. Time Sheets of George Barton [D-00349 - D-00360, 11-241]

61.   Time Sheets of Harold Windham [D-00361 - D-00375, 11-0241]

62.   Time Sheets of James (Jim) Thomas [D-00376 - D-00415, 11-0241]

63.   Time Sheets of James (Kevin) Sellers [D-00416 - D-00454, 11-0241]

64.   Time Sheets of James Harris [D-00455 - D-00469, 11-0241]

65.   Time Sheets of Jennifer Bell [D-00470 - D-00487, 11-0241]

66.   Time Sheets of John (Ruston) Asfar [D-00488 - D-00510, 11-0241]

67.   Time Sheets of John Altier [D-00511 - D-00523, 11-0241]

68.   Time Sheets of John Starkey [D-00524 - D-00536, 11-0241]

69.   Time Sheets of John Tatom [D-00537 - D-00563, 11-0241]

70.   Time Sheets of John Thompson [D-00564 - D-00578, 11-0241]

71.   Time Sheets of Joyce Thomas [D-00579 - D-00586, 11-0241]

72.   Time Sheets of Latasha Anders [D-00587 - D-00631, 11-0241]

73.   Time Sheets of Lee Hudson [D-00632 - D-00641, 11-0241]

74.   Time Sheets of Lorrie Beno [D-00642 - D-00650, 11-0241]

75.   Time Sheets of Maria (Linda) Primera [D-00651 - D-00659, 11-0241]

76.   Time Sheets of Marvin Uecker [D-00660 - D-00678, 11-0241]

77.   Time Sheets of Mary Sondgerath [D-00679 - D-00691, 11-0241]

78.   Time Sheets of Mathew Margetta [D-00692 - D-00700, 11-0241]

79.   Time Sheets of Maurice Green [D-00701 - D-00715, 11-0241]

80.   Time Sheets of Michael Cambre [D-00716 - D-00728, 11-0241]

81.   Time Sheets of Michael Jay [D-00729 - D-00744, 11-0241]

82.   Time Sheets of Michael Martin [D-00745 - D-00764, 11-0241]

83.   Time Sheets of Nywanna Collins [D-00765 - D-00777, 11-0241]

84.   Time Sheets of Olga Souders [D-00778 - D-00788, 11-0241]

85.   Time Sheets of Paul Martello [D-00789 - D-00802, 11-0241]

86.    Time Sheets of Phillip Hays [D-00803 - D-00810, 11-0241]

87.    Time Sheets of Roberta Murphey [D-00811 - D-00818, 11-0241]

88.    Time Sheets of Roy De Mauney [D-00819 - D-00831, 11-0241]

89.    Time Sheets of Sandra Brennan [D-00832 - D-00862, 11-0241]

90.    Time Sheets of Tami Peyton [D-00863 - D-00870, 11-0241]

91.    Time Sheets of Taneha Summers [D-00871 - D-00905, 11-0241]

92.    Time Sheets of Teresa Hamilton [D-00906 - D00925, 11-0241]

93.    Time Sheets of Terry Singleton [D-00926 - D-00931, 11-0241]

94.    Time Sheets of Thomas Berry [D-00932 - D-00944, 11-0241]

95.    Time Sheets of Thomas McCloskey [D-00945 - D-00953, 11-0241]

96.    Time Sheets of Tim Menius [D-00954 - D-00969, 11-0241]

97.    Time Sheets of Vickie Millsap [D-00970 - D-00985, 11-0241]

98.    Time Sheets of Vicky Cassady [D-00986 - D-01020, 11-0241]

## C.    COMPUTATION OF DAMAGES CLAIMED BY DISCLOSING PARTY.

Defendant maintains that Plaintiffs have not suffered any damages and are not entitled to any of the relief sought in this action. Defendants also maintain that Plaintiffs are liable to Defendants for costs incurred as a result of this action, which costs are ongoing and will be provided at the appropriate time.

## D.    INSURANCE AGREEMENT.

Defendant maintains Employment Practices Liability Insurance coverage, and a copy of the insurance agreement was previously produced to Plaintiffs, subject to the protective order agreed to by the parties and entered by the Court. *See* D-00303 – D-00522, 11-0242.

Respectfully submitted,

*Jennifer L. Anderson*

Jennifer L. Anderson (Bar No. 23620)
Jones, Walker, Waechter, Poitevent,
   Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

and

Mary Margaret Spell (Bar No. 32704)
Jones, Walker, Waechter, Poitevent,
   Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, LA  70170-5100
Telephone: (504) 582-8262
Facsimile: (504) 589-8262
E-mail: mspell@joneswalker.com

and

James R. Lewis (Bar No. 8844)
Mary G. Erlingson (Bar No.19562)
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, LA 70801
Telephone: (225) 343-5290
Facsimile: (225) 383-5508
E-mail: jlewis@crawford-lewis.com
E-mail: merlingson@crawford-lewis.com

***Attorneys for Defendant,***
***Worley Catastrophe Response, LLC***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of June, 2011, a copy of the above and foregoing pleading has been served on all counsel of record via U.S. mail.

*Jennifer L. Anderson*
Jennifer L. Anderson

# EXHIBIT

# 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL., | * | |
| | * | |
| And Others Similarly Situated, | * | CIVIL ACTION NO. 11-CV-00241 |
| | * | |
| Plaintiffs, | * | C/W 11-CV-00242 |
| | * | |
| versus | * | (REFERS TO ALL CASES) |
| | * | |
| WORLEY CATASTROPHE RESPONSE, | * | Section J/2 |
| LLC, BP CORPORATION NORTH | * | |
| AMERICA, INC., AND DEFENDANTS | * | MAG. JOSEPH C. WILKINSON, JR. |
| X, Y & Z | * | (BY CONSENT) |
| | * | |
| Defendants. | | |

### WORLEY CATASTROPHE SERVICES, LLC'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant, Worley Catastrophe Services, LLC (hereinafter referred to as "WCS"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, serves the following responses to the First Set of Interrogatories served by the Plaintiffs.

### INTERROGATORIES

1.      For each Plaintiff, identify the minimum amount(s) that he/she was guaranteed each workweek in which he/she performed any work (regardless of the total hours worked) during his/her employment with you related to the BP Oil Spill Project.

RESPONSE:

Defendant objects to this request to the extent it assumes that a minimum guarantee is not subject to permissible deductions. Subject to and without waiving this objection, Defendant responds that certain minimum levels of claims adjusting work were provided to professional claims adjusters hired by WCS to work on the BP Project, which levels changed over time based

{B0737353.2}
1

on client expectations and needs. Based on the minimum levels of work, professional claims adjusters worked one of the following schedules in effect at various times during the BP Project: (a) seven days per week; (b) seven days per week, with one day off every other week; or (c) six days per week. The minimum amount any claims adjuster could expect varied based upon his/her schedule and rate of pay. The rates of pay were either $425, $450, or $550 per day. Under these circumstances, claims adjusters could expect to receive at least $455 per week, and they also could expect to receive a minimum weekly amount bearing a reasonable relationship, or that is roughly equivalent, to the usual earnings at the assigned rate for the normal scheduled workweek. Claims adjusters who worked under schedules (a) or (b) could expect a minimum weekly amount of approximately $2,200 for those earning $550 per day and $1,800 for those earning $450 per day. Claims adjusters who worked under schedule (c) earned $425 per day, and could expect a minimum weekly amount of approximately $1,700.

2.    For each Plaintiff, identify his/her normal scheduled workweek during his/her employment with you related to the BP Oil Spill Project.

RESPONSE:

See Response to Interrogatory No. 1.

3.    Describe the compensation system(s) that determined each Plaintiff's pay during his/her employment with you related to the BP Oil Spill Project.

RESPONSE:

See Response to Interrogatory No. 1. In addition, professional claims adjusters were reimbursed for reasonable expenses such as lodging when applicable.

4.    Describe why you contend Plaintiffs were paid on a "salary basis" under the Fair Labor Standards Act.

RESPONSE:

See Response to Interrogatory No. 1. Plaintiffs could expect to receive at least $455 per week, and they also could expect to receive a minimum weekly amount bearing a reasonable relationship, or that is roughly equivalent, to the usual earnings at the assigned rate for the normal scheduled workweek.

5.     Identify the rate(s) that were invoiced to BP, ESIS, and/or GCCF for Plaintiffs' work on the BP Oil Spill Project.

RESPONSE:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, WCS refers Plaintiffs to the ESIS Catastrophe Services Vendor Contract (D-0143 to D-0152), the Claims Services Agreement (D-0153 to D-0183, D-0541 to D-0544) entered into with BP Exploration & Production Inc., and the GCCF-Worley Claims Services Agreement (D-0184 to D-0302) for the rates invoiced to ESIS, BP, and GCCF for Plaintiffs' work on the BP Oil Spill Project.

6.     Identify the person(s) and/or entity(s) that administered your payroll for the claims evaluators/adjusters working on the BP Oil Spill Project.  If an entity(s), please identify the primary representative(s) of that entity that handled your payroll for the claims evaluators/adjusters working on the BP Oil Spill Project.

RESPONSE:

Ray Jeanfreau, Comptroller, administered the payroll for professional claims adjusters employed on the BP Project.

7.     Identify all of your officers by name and title in the period from April 2010 to the present.

RESPONSE:

Michael Worley, CEO and President

8.    Identify any prior lawsuits filed against you under the Fair Labor Standards Act and investigations of you conducted by the U.S. Department of Labor ("DOL") under the Fair Labor Standards Act. For purposes of this Interrogatory, to "identify" means to state for each responsive lawsuit/investigation the following: (a) the court where the lawsuit was filed or DOL office conducting the investigation; (b) the date the lawsuit was filed or date you were given notice of the DOL investigation; (c) the parties involved; (d) the alleged claims/violations under the Fair Labor Standards Act; and (e) the end result of the lawsuit/investigation.

RESPONSE:

None.

Respectfully submitted,

Jennifer L. Anderson (Bar No. 23620)
Jones, Walker, Waechter, Poitevent,
    Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

and

Mary Margaret Spell (Bar No. 32704)
Jones, Walker, Waechter, Poitevent,
    Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, LA  70170-5100
Telephone: (504) 582-8262
Facsimile: (504) 589-8262
E-mail: mspell@joneswalker.com

{B0737353.2}                                    4

and

James R. Lewis (Bar No. 8844)
Mary G. Erlingson (Bar No.19562)
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, LA 70801
Telephone: (225) 343-5290
Facsimile: (225) 383-5508
E-mail: jlewis@crawford-lewis.com
E-mail: merlingson@crawford-lewis.com

*Attorneys for Defendants,*
*Worley Catastrophe Response, LLC and*
*Worley Catastrophe Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic mail, this 18th day of July 2011.

_____

{B0737353.2}                                        5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

JOHN J. ALTIER, ET AL.,              *
And Others Similarly Situated,     *    CIVIL ACTION NO. 11-CV-00241
                                      *
       Plaintiffs,                 *    C/W 11-CV-00242
                                      *
versus                               *    (REFERS TO ALL CASES)
                                      *
WORLEY CATASTROPHE RESPONSE,   *    Section J/2
LLC, BP CORPORATION NORTH       *
AMERICA, INC., AND DEFENDANTS    *    JUDGE CARL J. BARBIER
X, Y & Z                             *
                                      *    MAG. JOSEPH C. WILKINSON, JR.
       Defendants.                *

## VERIFICATION

Pursuant to 28 U.S.C. §1746, the undersigned, Allen Carpenter, declares under penalty of perjury:

1.     I am currently employed by Worley Catastrophe Services, as the Manager of Corporate Compliance.

2.     I have read the above and foregoing Worley Catastrophe Response, LLC's Responses to Plaintiffs' First Set of Interrogatories and Worley Catastrophe Services, LLC's Responses to Plaintiffs' First Set of Interrogatories.

4.     The information contained in the above and foregoing Worley Catastrophe Response, LLC's Responses to Plaintiffs' First Set of Interrogatories and Worley Catastrophe Services, LLC's Responses to Plaintiffs' First Set of Interrogatories are true and correct.

                                              7/20/11

                        ALLEN CARPENTER           Date

# EXHIBIT

# 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL. | ) | Civil Action No. 11-00241 |
| Individually and on behalf of all others | ) | (Consolidated With: |
| similarly situated, | ) | Civil Action No. 11-00242) |
| | ) | |
| Plaintiffs, | ) | COLLECTIVE ACTION |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WORLEY CATASTROPHE | ) | JOSEPH C. WILKINSON, JR. |
| RESPONSE, LLC, | ) | |
| WORLEY CATASTROPHE | ) | Reference:  11-00241 |
| SERVICES, LLC, and | ) | |
| DEFENDANTS X, Y & Z, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF MICHAEL A. STARZYK

Before me, the undersigned notary on this day personally appeared Michael A. Starzyk, who being by me duly sworn, deposed as follows:

1.    My name is Michael A. Starzyk.  I am over eighteen years of age, and am fully competent to make this Affidavit.  I have personal knowledge of the facts stated herein, and they are all true and correct.[1]

2.    I am an attorney with the law firm of Starzyk & Associates, P.C., counsel of record for Plaintiffs John J. Altier, et al. (collectively "Plaintiffs").

**Deposition Testimony:**

3.    **Exhibit 1** [Filed Under Seal] are true and correct copies of the relevant excerpts of the transcript from the August 23, 2011 **deposition of David Harvey, Jr.** ("Harvey"), who (according to his testimony) conducted the vast majority of the orientation programs for the adjusters/evaluators hired to work on the BP Oil Spill Project and is now employed by Defendants as a "Regional Liaison" responsible for managing five offices, as well as a travel team, on the Project.

---

[1] Note:  This Affidavit is submitted as Exhibit 9.

4.      **Exhibit 2** [Filed Under Seal] are true and correct copies of the relevant excerpts of the transcript from the August 24, 2011 **deposition of Eddie Landrum** ("Landrum"), who (according to his and other defense witnesses' testimony) was one of only a couple men tasked with calling people to recruit them to come work for Worley as an adjuster/evaluator on the BP Oil Spill Project.

5.      **Exhibit 3** [Filed Under Seal] are true and correct copies of the relevant excerpts of the transcript from the September 7, 2011 **deposition of Bob Simon, Jr.** ("Simon"), Defendants' Director of Operations and second in command at the company.

6.      **Exhibit 4** [Filed Under Seal] are true and correct copies of the relevant excerpts of the transcript from the September 8, 2011 **deposition of Michael Charlie Bilbe** ("Bilbe"), Defendants' Director of Environmental Services.

**Deposition Exhibits**:

7.      **Exhibit 5** [Filed Under Seal] is a true and correct copy of Deposition Exhibit 1 (Orientation Outline), which is discussed in the relevant excerpts of Mr. Harvey's deposition that are submitted as Exhibit 1.

8.      **Exhibit 6** is a true and correct copy of Deposition Exhibit 2 (paystubs and time sheets of Plaintiff James K. Sellers), which is discussed in the relevant excerpts of Mr. Harvey's deposition that are submitted as Exhibit 1.

**Written Discovery Responses**:

9.      **Exhibit 7** is a true and correct copy of the Rule 26 **Initial Disclosures of Defendants**.

10.     **Exhibit 8** is a true and correct copy of **Worley Catastrophe Services, LLC's Responses to Plaintiffs' First Set of Interrogatories**, together with Allen Carpenter's verification of same.

Further Affiant sayeth not.

Michael A. Starzyk

SUBSCRIBED AND SWORN TO BEFORE ME on September 21, 2011.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

JENNIFER M. HUDSON
Notary Public, State of Texas
My Commission Expires
February 03, 2013

3