## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL.<br>Individually and on behalf of all others<br>similarly situated, | ) ) ) | Civil Action No. 11-00241<br>(Consolidated With:<br>Civil Action No. 11-00242) |
| | ) | |
| Plaintiffs, | ) | COLLECTIVE ACTION |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WORLEY CATASTROPHE | ) | JOSEPH C. WILKINSON, JR. |
| RESPONSE, LLC, | ) | |
| WORLEY CATASTROPHE | ) | Reference:  11-00241 |
| SERVICES, LLC, and | ) | |
| DEFENDANTS X, Y & Z, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## (NOT PAID ON A "SALARIED BASIS")
## [FILED UNDER SEAL PER AGREED PROTECTIVE ORDER]

# TABLE OF CONTENTS

COVER PAGE.................................................................................................i

TABLE OF CONTENTS .............................................................................. ii

TABLE OF AUTHORITIES ........................................................................iv

I.    INTRODUCTION TO DEFENDANTS' FLSA VIOLATIONS ..............1

II.   PROCEDURAL HISTORY AND SUMMARY JUDGMENT ISSUES .................2

III.  LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT ................3

IV.   PLAINTIFFS WERE NOT PAID ON A "SALARIED BASIS" ...........................4

      A.    The "Salary" Basis Requirement ................................................4

      B.    The Universal Evidence Is That Plaintiffs Were Paid On A Day Rate Basis
            Without Any Guarantee ................................................................5

            1.    Bob Simon's Testimony ...............................................5
            2.    Charlie Bilbe's Testimony.............................................6
            3.    David Harvey's Testimony.............................................7
            4.    Eddie Landrum's Testimony ..........................................8
            5.    Defendants' Interrogatory Responses................................9

      C.    The Minimum Guarantee Regulation ............................................9

            1.    Defendants' allegations................................................9
            2.    The Text of the Regulation ..........................................10
            3.    DOL Interpretive Guidance ..........................................11
            4.    Relevant DOL Comments and Opinion Letter ................12
            5.    The Third Circuit's *Brock* Opinion..............................13
            6.    It Is Undisputed There Was No Minimum Guarantee.................14

V.    THE WHITE COLLAR OVERTIME EXEMPTIONS CANNOT BE SATISFIED
      WITHOUT PAYMENT ON A SALARIED BASIS...........................................15

      A.    Salaried Basis Requirement For The Executive Exemption.......................16

B.    Salaried Basis Requirement For The Administrative Exemption................16

C.    Salaried Basis Element For The Highly-Compensated Exemption.............17

VI.   CONCLUSION .................................................................................................17

DOL GUIDANCE ON "SALARIED BASIS" ......................................................Exhibit A
LEGISLATIVE HISTORY FOR MINIMUM GUARANTEE REG ....................Exhibit B
1998 DOL OPINION LETTER ..............................................................................Exhibit C
DOL FACT SHEET FOR "SALARIED BASIS" ..................................................Exhibit D
DOL FACT SHEET FOR EXECUTIVE EXEMPTION .......................................Exhibit E
DOL FACT SHEET FOR ADMINISTRATIVE EXEMPTION............................Exhibit F
DOL FACT SHEET FOR HIGHLY-COMPENSATED EXEMPTION ..............Exhibit G

DEPOSITION TESTIMONY OF DAVID HARVEY, JR [Filed Under Seal]. .....Exhibit 1
DEPOSITION TESTIMONY OF EDDIE LANDRUM [Filed Under Seal]..........Exhibit 2
DEPOSITION TESTIMONY OF BOB SIMON, SR. [Filed Under Seal] ............Exhibit 3
DEPOSITION TESTIMONY OF CHARLIE BILBE [Filed Under Seal] .............Exhibit 4
ORIENTATION OUTLINE [Filed Under Seal] ....................................................Exhibit 5
PAYSTUBS & TIME SHEETS OF PLAINTIFF JAMES SELLERS ..................Exhibit 6
DEFENDANTS' INITIAL DISCLOSURES...........................................................Exhibit 7
WCS'S INTERROGATORY RESPONSES .........................................................Exhibit 8
AFFIDAVIT OF MICHAEL A. STARZYK .......................................................Exhibit 9

# TABLE OF AUTHORITIES

<u>**Cases:**</u>

*Brock v. Claridge Hotel & Casino,*
    846 F.2d 180, *cert. denied*, 488 U.S. 925 (1988)....................................13, 14

*Cheatham v. Allstate Ins. Co.,*
    465 F.3d 578 (5th Cir. 2006)................................................................15

*Chevron U.S.A. Inc. v. NRDC,*
    467 U.S. 837 (1984)............................................................................4

*Liger v. New Orleans Hornets NBA Ltd. Partnership,*
    565 F. Supp. 2d 680 (E.D. La. 2008)....................................................15

*Long Island Care at Home, Ltd. v. Coke,*
    551 U.S. 158 (2007)............................................................................4

*National Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005)............................................................................4

*Tullous v. Texas Aquaculture Processing Co.,*
    579 F. Supp. 2d 811 (S.D. Tex. 2008)..................................................15

*U.S. v. Mead Corp.,*
    533 U.S. 218 (2001)............................................................................4

<u>**Statutes and Regulations:**</u>

FED. R. CIV. P. 56(a)............................................................................3, 4

29 C.F.R. § 541.100 ..........................................................................4, 16

29 C.F.R. § 541.200 ..........................................................................4, 17

29 C.F.R. § 541.601 ..........................................................................4, 17

29 C.F.R. § 541.602 ....................................................................4, 5, 16, 17

29 C.F.R. § 541.604 ..........................................................................9, 11

29 C.F.R. § 778.112 ...............................................................................1, 2, 9, 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL. | ) | Civil Action No. 11-00241 |
| Individually and on behalf of all others | ) | (Consolidated With: |
| similarly situated, | ) | Civil Action No. 11-00242) |
| | ) | |
| Plaintiffs, | ) | COLLECTIVE ACTION |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WORLEY CATASTROPHE | ) | JOSEPH C. WILKINSON, JR. |
| RESPONSE, LLC, | ) | |
| WORLEY CATASTROPHE | ) | Reference: 11-00241 |
| SERVICES, LLC, and | ) | |
| DEFENDANTS X, Y & Z, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NOT PAID ON A "SALARIED BASIS")
[FILED UNDER SEAL PER AGREED PROTECTIVE ORDER]

## I.   INTRODUCTION TO DEFENDANTS' FLSA VIOLATIONS.

Defendants Worley Catastrophe Response, LLC ("WCR") and Worley Catastrophe Services, LLC ("WCS") (collectively "Defendants" or "Worley") have violated, and continue to violate, the Fair Labor Standards Act ("FLSA") by paying their claims adjusters (a/k/a claims evaluators) (the "Plaintiffs") a *per diem* wage without any overtime for providing services related to business and property damages arising from the 2010 explosion at the Deepwater Horizon offshore drilling rig operated by BP Corporation North America, Inc. (the "BP Oil Spill Project").

Pursuant to 29 C.F.R. § 778.112 (the "Day Rate Regulation"): "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the

number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek**." 29 C.F.R. § 778.112 (emphasis added).

It is **undisputed** that Worley paid Plaintiffs **flat day rates** of either $550 (for "Large Loss Unit" evaluators) or $450 (for "General Loss Unit" evaluators) per day before February 1, 2011 for their standard twelve-hour shifts.   Effective February 1, 2011, Worley reduced all Plaintiffs' flat day rate to $425 a day when their standard shifts were reduced from twelve- to ten-hours a day.   In violation of the FLSA, Worley failed to pay Plaintiff **any** overtime premiums over and above their regular day rates for their work over 40 hours a week on the BP Oil Spill Project.[1]   Because Plaintiffs were required to work twelve-hour (before February 1, 2011) and ten-hour (after February 1, 2011) workdays and typically worked seven-day workweeks, they typically logged between 72-84 hour workweeks – equating to 32-44 hours of unpaid overtime premiums per week.

## II.     PROCEDURAL HISTORY AND SUMMARY JUDGMENT ISSUES.

On July 11, 2011, the Court granted Plaintiffs' motion for certification of this case as a collective action under the FLSA. (Rec. Doc. 171.)   On August 22, 2011, the court-approved Notices of the collective action were distributed, with the 60-day opt-in period scheduled to close on October 21, 2011. (*See* Rec. Doc. 191.)

---

[1] *See, e.g.,* Rec. Doc. 146, Defendants' Answer and Affirmative Defenses, ¶ 75 ("Defendants admit Plaintiffs and others allegedly similarly situated were not paid overtime . . . ."); ¶ 76 (same).

In the meantime, Plaintiffs have taken the depositions of several high-ranking defense witnesses and obtained significant written discovery responses and documents from Defendants from which it unmistakably appears that there are no material factual disputes concerning several issues relevant to the ultimate disposition of this action.[2] Plaintiffs have filed the within Motion for Partial Summary Judgment requesting the Court rule upon five distinct issues at this juncture:

1. Plaintiffs were not paid on a **"salaried basis"** under the FLSA;

2. Plaintiffs did not qualify for the **administrative employee exemption** from overtime, because they were not paid on a salaried basis;

3. Plaintiffs did not qualify for the **executive employee exemption** from overtime, because they were not paid on a salaried basis; and

4. Plaintiffs did not qualify for the **highly-compensated workers exemption** from overtime, because they were not paid on a salaried basis.

## III.   LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT.

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."   FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is

---

[2] Plaintiffs request that this Memorandum and its Exhibits 1-5 be accepted under Seal pursuant to the parties' Stipulated FRCP 26(c) Protective Order (the "APO"). (Rec. Doc. 105-1 & 108.) The APO provides that, "In the case of depositions or other pretrial testimony, the designation of 'Confidential Information' shall be made by written notice to all parties within fourteen (14) days after receipt of the transcript of the testimony. All transcripts shall be considered 'Confidential Information' and subject to this Protective Order until expiration of such fourteen (14) day period, and such protection shall continue as to any portions of the transcript so designated within that time." (Rec. Doc. 105-1, APO, ¶ 4.) Plaintiffs do not intend to designate any of the cited pages of Messrs. Simon, Bilbe, Harvey, or Landrum's testimony (i.e., Exhibits 1-4) as "Confidential," but must treat these pages as "Confidential" until the 14-day period designation period for Defendants has elapsed. Additionally, Defendants specifically designated Exhibit 5 (the Orientation Outline) as "Confidential" under the parties' APO.

3

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The 2010 amendments to Rule 56(a) were intended to "make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." FED. R. CIV. P. 56(a), 2010 Notes of Advisory Committee. While Rule 56 was revised in 2010 to "improve the procedures for presenting and deciding summary-judgment motions and to make the procedure more consistent with those already used in many courts," the "standard for granting summary judgment remains unchanged." *Id.*

## IV.   PLAINTIFFS WERE NOT PAID ON A "SALARIED BASIS."

### A.   The "Salary Basis" Requirement.

To qualify for exemption from overtime pay under the FLSA, employees generally must be paid on a "salary basis" at not less than $455 per week. *See* 29 C.F.R. § 541.602(a) (salary basis: "[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."); § 541.100 (executive exemption requires compensation "on a salary basis at a rate of not less than $455 per week"); § 541.200 (administrative exemption requires compensation "on a salary or fee basis at a rate of not less than $455 per week"); § 541.601 (highly-compensated employee exemption requires that total annual compensation must "include at least $455 per week paid on a salary or fee basis").[3]

---

[3] Pursuant to Congress's express delegation of rulemaking authority, the U.S. Secretary of Labor issued revised regulations after notice and comment that "define and delimit" the FLSA's overtime exemptions. *See* 69 Fed. Reg. 22,122 (Apr. 23, 2004). As such, they are entitled to controlling deference. *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843-44 (1984); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165-68 & 171-74 (2007); *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005); *U.S. v. Mead Corp.*, 533 U.S. 218, 229-30 (2001).

4

Being paid on a salary basis means that an employee regularly receives a predetermined amount of compensation each pay period and that the predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work. 29 C.F.R. § 541.602(a) ("An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.").

### B.   The Universal Evidence Is That Plaintiffs Were Paid On A Day Rate Basis Without Any Guarantee.

#### 1.   *Bob Simon's Testimony.*

Defendants' Director of Operations and second man in command at the company, Bob Simon Sr., testified on September 7, 2011 that the adjusters/evaluators on the BP project were paid $450 a day for their services and **there was no guaranteed minimum weekly pay**:

> "Q.   Did you have an understanding that if they did not work, these adjusters/evaluators did not work any part of the day that they would not be paid?
>
> **A.   I think that's our company position, if you don't work that day, you don't get paid.**
>
> Q.   All right.   And likewise, again, from the prior testimony, it's my understanding that there were no guarantees or promises made to these adjusters/evaluators that they would be paid for a certain number of days even if they worked less than that.   Is that your understanding?
>
> **A.   That's correct.**
>
> Q.   And so – in other words, if I were an adjuster/evaluator working on this project, and for whatever reason I only worked, say, one or two days during the week, I would not – I was not guaranteed to be paid, say, four or five days of that work week?

5

> **A.    That's correct."**

(Ex. 3, Simon Depo., 7:20-9:5; 10:7-20 & 11:14-12:12 [Filed Under Seal].)

> ### 2.    *Charlie Bilbe's Testimony.*

Defendants' Director of Environmental Services, Michael Charlie Bilbe, similarly

testified at his September 8, 2011 deposition that the adjusters/evaluators working the BP

Oil Spill Project are paid a **flat day rate for each day worked without any guaranteed**

**weekly minimum pay:**[4]

> "Q.    Like Mr. Heath, is it your understanding that Mr. Meseke would
>        have been on a day rate on the BP project as well?
> **A.    Mr. Meseke would have been on a day rate for the BP project.**
> Q.    No salary?
> **A.    No salary.**
> Q.    And on the BP project, no guaranteed minimum amount of pay per
>        week other than the days he worked?
> **A.    Days he worked, he got paid for the days he worked.**
> Q.    So no guarantee of an amount more than that?
> **A.    Well, I think there was – you know, when they agreed to come
>        onboard for the project, they were told what their work
>        schedule would be and the rate of pay that they would receive.**
> Q.    Was anyone, that you understand, guaranteed a minimum amount of
>        pay per week regardless of the number of days they worked in that
>        week?
> **A.    Can you repeat that again?**
> Q.    Yeah.  If someone worked one day, they were paid for one day,
>        correct?
> **A.    That is correct.**
> Q.    If they worked two days, they were paid for two days day rate,
>        correct?
> **A.    That is correct.**
> Q.    And if they worked three days, they were paid for three day rates,
>        correct?
> **A.    That is correct.**

---

[4] Defendants' Rule 26 Initial Disclosures identify both Bilbe and Landrum (discussed below) as having "knowledge of the agreed method of compensating adjusters on non-insurance claims projects, such as the BP project." (Ex. 7, Initial Disclosures, p. 2.)

6

> Q.   Are you aware of any agreement where they were guaranteed they
>       would be paid more than the day rate for the number of days they
>       worked in a week?
> A.   **I'm not aware of that.**
> Q.   . . . Have you heard of anyone else saying there was a guarantee, a
>       guaranteed minimum of pay, at Worley for the adjusters or
>       evaluators working on the BP project?
> A.   **No, I have not.**"

(Ex. 4, Bilbe Depo., 9:19-21; 30:14-34:15 & 70:14-17 [Filed Under Seal].)

### 3.   *David Harvey's Testimony.*

David Harvey, Jr. ("Harvey") conducted the vast majority of the orientation
programs for the adjusters/evaluators hired to work on the BP Oil Spill Project and is
now employed by Defendants as a "Regional Liaison" responsible for managing five
offices, as well as a travel team, on the Project. (Ex. 1, Harvey Depo., 25:12-26:7; 31:1-
25; 62:6-24; 67:19-68:9 & 69:13-70:1 [Filed Under Seal].) Harvey, likewise, told the
Plaintiffs they would be paid a **simple day rate** and would be **paid only for the days
they worked.** (Ex. 1, Harvey Depo., 105:3-18 [Filed Under Seal]; *see also id.* 107:10-
108:4 & 114:19-115:5 [Filed Under Seal]; Ex. 5 (Orientation Outline) [Filed Under
Seal].) And at his deposition, Harvey **disclaimed** having made any representations to
the adjusters/evaluators about **any alleged guaranteed amount of pay per week**, stating:

> "Q.   Did you tell them in any of these orientations that they were
>        guaranteed a – a certain number of days paid regardless of how
>        many days they actually worked?
> A.   **No, I didn't tell them that there was a – a guarantee, but I just –
>        you know, they were told that they would earn $450 and could
>        expect to make that seven days a week.**
> Q.   If they worked those seven days?
> A.   **Yes.**

\* \* \*

7

Q.  . . . Even though he only worked one day during that week, he was –
there was no guarantee in place that he would have been paid, say,
three days or four days. He got what he worked, right?

**A.  Right. I mean he – he could expect – if he would have worked
the seven days, to be paid those seven days, but if he only
worked the one day, then he would only be compensated for the
one day.**

Q.  Right. There were no guarantees in place that guaranteed somebody
like Mr. Sellers, say, four days pay even though he only worked one
day?

**A.  Right. There are no guarantees, but, you know, there were
expectations if you wanted to – to work those –**

Q.  Right.

**A.  – amount of days, yeah.**

* * *

Q.  Again, he would not have been paid any kind of guarantee, like for
four days of work because there were no guarantees. He had to
work it to earn it, right?

**A.  Right."**

(Ex. 1, Harvey Depo., 106:23-107:9 & 121:8-125:21 [Filed Under Seal]; Ex. 6 (paystubs

and timesheets of Plaintiff James Sellers).)

### 4.  *Eddie Landrum's Testimony.*

Deponent Eddie Landrum was one of only a couple men tasked with calling

people to recruit them to come work for Worley as an adjuster/evaluator on the BP Oil

Spill Project.  (Ex. 2, Landrum Depo., 15:12-16:25 & 18:10-19:21 [Filed Under Seal];

Ex. 3, Simon Depo., 17:16-18:3 (Eddie Landrum, Steve Castleberry, and George Allen

made the recruiting calls) [Filed Under Seal]; Ex. 4, Bilbe Depo., 15:5-16:24 (same)

[Filed Under Seal].)  He told them the pay would be "**450 a day**" and that **you did not**

**get paid for a day if you did not work the day**, such that: "If you work one day, we're

going to pay you one day. If you work seven days, you're going to get paid seven days."

(Ex. 2, Landrum Depo., 92:10-94:1 [Filed Under Seal].)

8

### 5.   *Defendants' Interrogatory Responses.*

Defendants' verified Interrogatory Responses also dispel any notion of any minimum weekly guaranteed pay amount for the BP adjusters/evaluators.  When asked to identify the minimum amounts of pay that Plaintiffs were "guaranteed" each workweek in which they performed any work (regardless of the total hours worked), Defendant WCS gave a largely non-responsive answer about the Plaintiffs' **typical weekly work schedules** (i.e., 6-7 days a week) and how Plaintiffs **"could expect"** to earn at least $455 per week **if they actually worked their schedule** (which simply is not the legal standard in the Minimum Guarantee Regulation discussed in detail below) and how they **"could expect"** to earn a full week's usual earnings at the day rate **if they actually worked the whole schedule**.  (Ex. 8, Responses to Interrogatory Nos. 1-4.)

### C.   **The Minimum Guarantee Regulation.**

### 1.   *Defendants' Allegations.*

In their Answer and Affirmative Defenses to Plaintiffs' Second Amended Individual and Collective Action Complaint, Defendants admitted that Plaintiffs' compensation structure "included a day rate," but they then specifically denied that Plaintiffs were paid on a day rate basis pursuant to 29 C.F.R. § 778.112 (the Day Rate Regulation) and affirmatively alleged that there "was a minimum guarantee" – as if to suggest that Plaintiffs were instead paid pursuant to 29 C.F.R. § 541.604 (the "Minimum

Guarantee Regulation"). (Rec. Doc. 146, ¶¶ 64-65;[5] *see also* Rec. Doc. 95, ¶¶ 47-48 (Defendants' Answer and Affirmative Defenses to Plaintiffs' First Amended Individual and Collective Action Complaint).)

## 2.   *The Text of the Regulation.*

To qualify as a "salary" under the Minimum Guarantee Regulation, an employee must be (1) guaranteed a minimum weekly amount of pay regardless of the number of hours/days actually worked, and (2) the weekly guarantee must be "roughly equivalent" to the employee's usual earnings in a normal scheduled workweek.   The Minimum Guarantee Regulation reads, in relevant part, as follows:

> "An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, **if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.   The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.**
>
> [¶] Thus, for example, an exempt employee guaranteed compensation of at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per

---

[5] In particular, paragraphs 64-64 of Defendants' Answer and Affirmative Defenses, reads:

> "64.   Defendants admit that the compensation structure for Plaintiffs who worked on the 2010 oil spill claims and allegedly similarly situated adjusters/evaluators **included a day rate** as expressly allowed for exempt employees under the FLSA.   Defendants **deny** that Plaintiffs and allegedly similarly situated adjusters/evaluators were **paid pursuant to 29 C.F.R. § 778.112** as alleged in Paragraph 64 of the Second Amended Complaint.
>
> 65.   The allegations in Paragraph 65 of Plaintiffs' Second Amended Complaint are denied, except to admit that **there was a minimum guarantee.**"

(Rec. Doc. 146, ¶¶ 64-65 (emphasis added).)

shift without violating the salary basis requirement. The reasonable
relationship requirement applies only if the employee's pay is computed
on an hourly, daily or shift basis. It does not apply, for example, to an
exempt store manager paid a guaranteed salary of $650 per week who also
receives a commission of one-half percent of all sales in the store or five
percent of the store's profits, which in some weeks may total as much as,
or even more than, the guaranteed salary."

29 C.F.R. § 541.604 (emphasis added).

### 3. *DOL Interpretive Guidance.*

On its website, the U.S. Department of Labor ("DOL") publishes guidance
concerning what it means to be paid on a "salaried basis." This guidance includes further
insight into the Minimum Guarantee Regulation. A copy of this DOL publication is
attached as Exhibit A (hereafter, the "DOL Guidance"). In it, the DOL explains that a
day rate may qualify as a salary only "**under limited circumstances**." (Ex. A, DOL
Guidance (emphasis added).) In particular, "the employment arrangement must first
**include a guarantee** of at least the minimum weekly required amount of at least $455
per week, paid on a salary basis, regardless of the number of hours, days or shifts
worked." (*Id.* (emphasis added).) "**In addition**, a **reasonable relationship** must exist
between the guaranteed amount and the amount actually earned," and the reasonable
relationship test is met "if the weekly guarantee is **roughly equivalent** to the employee's
usual earnings at the assigned hourly, daily or shift rate for the employee's normal
scheduled workweek." (*Id.* (emphasis added).) The DOL stresses that "[i]n all cases
however, the employee must receive the full amount of salary in any week he or she
works, even if the number of hours (or days or shifts) worked . . . is not enough for the
employee to make the guaranteed salary." (*Id.*)

11

The DOL also offers the example of an exempt employee whose actual compensation is determined on a shift or hourly basis and usually earns $1,200 per week. (*Id.*) In such an example, the "amount guaranteed must be roughly equivalent to $1,200," and the employer "could not guarantee such an employee only the $455 minimum salary level required." (*Id.*)

### 4.   *Relevant DOL Comments and Opinion Letter.*

Plaintiffs are not aware of any court opinions addressing the "rough equivalence" element of the Minimum Guarantee Regulation, which was enacted in 2004. In the DOL's notes related to the enactment of the Regulation (attached as Exhibit B, as published in the Federal Register), the DOL explains that the reasonable relationship test comes from a "long-standing interpretation" of the salary basis requirement contained in its own Field Operations Handbook. (Ex. B, 69 Fed. Reg. at 22183 (Apr. 23, 2004).) The DOL further explains that the reasonable relationship test, "which has been a Wage and Hour Division policy for at least 30 years," is necessary to "ensure[] that the salary guarantee for such employees is a meaningful guarantee rather than a mere illusion." (*Id.* at 22184.)

There is a 1998 DOL Opinion Letter that addresses this long-standing interpretation of reasonable proportionality, a copy of which is attached as Exhibit C. The Opinion Letter addresses a scenario involving hourly workers who were guaranteed a minimum of $250 a week, but typically earn between $60,000 per year (i.e., $1,200 per week) and $100,000 per year ($2,000 per week). The DOL opined that such a compensation structure did *not* satisfy the reasonable relationship requirement, stating:

12

"It is our longstanding position that extra compensation for additional hours worked does not defeat the exempt status of an otherwise exempt employee. However, the guaranteed salary must bear a 'reasonable relationship' to the employee's actual weekly compensation, calculated on an hourly basis. This 'reasonable relationship' requirement is satisfied if the weekly guarantee is roughly equivalent to the employee's total earnings at the hourly rate for his or her normal workweek.

Based on the information provided, it appears that there is no 'reasonable relationship' between the guaranteed salary and the hourly wages paid to your client's employees. Therefore, it is our opinion that your client's proposed pay arrangement would not qualify as payment on a 'salary or fee basis' as described in the Regulations."

(Ex. C, 1998 DOL Opinion Letter.) Thus, the DOL has previously opined that a ratio of 4.8 to 1 between an employee's typical weekly earnings and guaranteed weekly pay would *not* satisfy the reasonable relationship test that is woven into the Minimum Guarantee Regulation.

### 5. *The Third Circuit's Brock Opinion.*

In enacting the Minimum Guarantee Regulation, the DOL specifically cited the Third Circuit's prior opinion in *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, *cert. denied*, 488 U.S. 925 (1988). *Brock* involved supervisorial employees who were guaranteed pay of $250 per week under a complicated compensation agreement that few high level managers, who were former supervisors, even understood. *Id.* at 182. The evidence showed only 12 instances where the guarantee actually came into play, out of up to 70,000 payments. *Id.* The district court rejected the employer's claim that the small guarantee meant the employees were paid on a "salary basis," and that all wages above that level were merely "additional compensation," stating: "Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too

13

masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transform the compensation scheme into a salary-based plan." *Id.* at 183. The Third Circuit affirmed finding the employer's argument "fundamentally incoherent," and that the notion that "a minimum guarantee unrelated to an employee's [actual] income is that employee's 'salary' stretches the common understanding of the term out of proportion." *Id.* at 184-85.

### 6.      *It Is Undisputed There Was No Minimum Guarantee.*

In the present case, it is **undisputed** that Plaintiffs received absolutely **no minimum weekly guaranteed pay amount** without regard to the hours/days actually worked. It is also **undisputed** that **Plaintiffs typically worked seven days a week**. Accordingly, their *usual* weekly earnings at their day rates would be, as follows:

7 x $550 (for Plaintiffs assigned to the Large Loss Unit before 2/1/11) = **$3,850**

7 x $450 (for Plaintiffs assigned to the General Loss Unit before 2/1/11) = **$3,150**

7 x $425 (for all Plaintiffs after 2/1/11) = **$2,975**

In order to satisfy the Minimum Guarantee Regulation, Defendants would have to guarantee Plaintiffs a weekly amount that was roughly equivalent to their usual earnings. Here, neither of the two elements of the Minimum Guarantee Regulation is met: (1) there was no minimum weekly guaranteed pay amount whatsoever; and (2) certainly no minimum weekly guaranteed pay amount that was "**roughly equivalent**" to the **$2,975-3,850 per week** that Plaintiffs **usually earned** at their day rates.

14

**V.     THE WHITE COLLAR OVERTIME EXEMPTIONS CANNOT BE SATISFIED WITHOUT PAYMENT ON A SALARIED BASIS.**

In their Answer and Affirmative Defenses, Defendants allege as their third affirmative defense that "Plaintiffs and others alleged to be similarly situated were at all pertinent times exempt from the overtime provisions of the FLSA under, including but not limited to, the provisions set forth at 29 U.S.C. § 213(a)(1)." (Rec. Doc. 146, p. 22, "Third Defense.") In their Opposition to Plaintiffs' Motion for Conditional Certification as a Collective Action, Defendants argued, more specifically, that Plaintiffs are exempt under the "executive, administrative, and/or the highly compensated exemptions." (Rec. Doc. 156, p. 14.) Each of these so-called white collar overtime exemptions requires that the employee is paid on a salaried basis. The DOL publishes a "Fact Sheet" (attached as Exhibit D) entitled "Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)" that explains this fundamental requirement. Defendants exemption defenses fail as a matter of law, because the undisputed facts show Plaintiffs were not paid on a salaried basis.

Courts must "narrowly" construe **against the employer** the limited exemptions that exist to the FLSA's overtime requirements, and it is ultimately the employer who bears the burden of proof in establishing that it is entitled to an exemption. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006); *Tullous v. Texas Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 817 (S.D. Tex. 2008). A FLSA plaintiff may obtain summary judgment on an employer's alleged exemption defense. *Liger v. New Orleans Hornets NBA Ltd. Partnership*, 565 F. Supp. 2d 680 (E.D. La. 2008) (Berrigan, J.) (granting plaintiff's summary judgment on two claimed exemptions).

15

## A.    Salaried Basis Requirement For The Executive Exemption.

The first essential element of the overtime exemption for executive employees is that they must be "[c]ompensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities." 29 C.F.R. § 541.100(a)(1). The executive exemption regulation further provides that the "phrase 'salary basis' is defined at § 541.602." 29 C.F.R. § 541.100(b). As previously noted above, section 541.602 requires that "an employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed," and that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a).

The DOL publishes a Fact Sheet concerning the executive exemption (attached as Exhibit E) that lists as the first requirement for the exemption that the employee "must be compensated on a salary basis (as defined in the regulations) at a rate not less than $455 per week," and further explains that "[i]n order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations." (Ex. E.)

## B.    Salaried Basis Requirement For The Administrative Exemption.

Similarly, an essential element of the overtime exemption for administrative employees is that they be "[c]ompensated on a salary or fee basis at a rate of not less than

16

$455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities." 29 C.F.R. § 541.200(a)(1). And as with the regulation for the executive exemption, the regulation for the administrative exemption cross-references section 541.602 for the meaning of the term "salary basis." 29 C.F.R. § 541.200(b). The DOL's Fact Sheet concerning the administrative exemption (attached as Exhibit F) also notes the requirement that "[t]he employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week." (Ex. F.)

### C.    Salaried Basis Element For The Highly-Compensated Exemption.

Finally, the exemption for "highly-compensated" employees – employees with total annual compensation of at least $100,000 – likewise makes clear that "'total annual compensation' must include at least $455 per week paid on a salary or fee basis." 29 C.F.R. § 541.601. Again, the DOL's Fact Sheet concerning this exemption (attached as Exhibit G) lists as the first element of the exemption that the employee's total annual compensation must "include[] at least $455 per week paid on a salary basis." (Ex. G.)

Defendants cannot satisfy any of the overtime exemptions for executive, administrative and/or highly-compensated workers because the undisputed facts demonstrate that they cannot ever meet the foundational element of showing that the Plaintiffs were paid on a salaried basis.

## VI.    CONCLUSION.

For these reasons, summary judgment should be entered for Plaintiffs holding (1) Plaintiffs were not paid on a "salaried basis" under the FLSA; (2) Plaintiffs did not

qualify for the administrative employee exemption from overtime, because they were not paid on a salaried basis; (3) Plaintiffs did not qualify for the executive employee exemption from overtime, because they were not paid on a salaried basis; and (4) Plaintiffs did not qualify for the highly-compensated workers exemption from overtime, because they were not paid on a salaried basis.

Respectfully Submitted,

J. P. Hughes, Jr.
LA Bar # 21302
**HUGHES BROWN, PLLC**
1300 Access Road
Suite 100
Oxford, MS 38655
L: (662) 234-6080
F: (800) 515-5446

**Michael A. Starzyk**
TX Bar # 00788461*
**April L. Walter**
TX Bar # 24052793*
**Raven Applebaum**
TX Bar # 24043644*
**Hessam Parzivand**
TX Bar # 24071157*
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road
Suite 300
The Woodlands, TX 77380
L:  (281) 364-7261
F:  (281) 364-7533

**Joseph E. Fieschko Jr.**
PA Bar # 28797*
**FIESCHKO AND ASSOCIATES, NC.**
2230 Koppers Building
Pittsburgh, PA 15219
L:  (412) 281-2204
F:  (412) 338-9169

18

**John R. Linkosky**
PA Bar # 66011*
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, PA 15106
T:  (412) 278-1280
F:  (412) 278-1282

*Admitted Pro Hac Vice*

**Counsel for Plaintiffs JOHN J.
ALTIER, ET AL., and All Others
Similarly Situated**

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2011, I served the foregoing

Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment (Not Paid

on a "Salaried Basis") [Filed Under Seal Per Agreed Protective Order] on the following

in accordance with the Federal Rules of Civil Procedure:

**Jennifer L. Anderson**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809-7000
E-mail: janderson@joneswalker.com
**[Via E-mail]**

**James R. Lewis**
**Mary G. Erlingson**
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana 70801
E-mail: jlewis@crawford-lewis.com
E-mail: merlingson@crawford-lewis.com
**[Via E-mail]**

**Counsel for Defendant**
**Worley Catastrophe Response, LLC**

**Mary Margaret Spell**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
E-mail: mspell@joneswalker.com
**[Via E-mail]**

Michael A. Starzyk

20