IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN J. ALTIER, ET AL. Individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 11-00241 (Consolidated With: Civil Action No. 11-00242) |
| Plaintiffs, | ) ) | COLLECTIVE ACTION |
| v. | ) ) ) | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |
| WORLEY CATASTROPHE RESPONSE, LLC, WORLEY CATASTROPHE SERVICES, LLC, and DEFENDANTS X, Y & Z, | ) ) ) ) ) ) | Reference: 11-00241 |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT (DEFENDANTS'
"GOOD FAITH DEFENSE" TO LIQUIDATED DAMAGES)

## TABLE OF CONTENTS

COVER PAGE ................................................................................................................. i

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

I.   LIQUIDATED DAMAGES FOR FLSA VIOLATIONS ..................................... 1

II.  WORLEY CANNOT ESTABLISH A "GOOD FAITH" DEFENSE TO
     LIQUIDATED DAMAGES .................................................................................. 2

     A.   The "Good Faith" Defense to Liquidated Damages ................................... 2

          1.   Absent the defense, liquidated damages are mandatory ................... 2
          2.   Employer's burden of proof ............................................................... 3
          3.   A difficult defense to prove ............................................................... 3

     B.   The Two-Part Test ....................................................................................... 4

          1.   Both subjective and objective good faith .......................................... 4
          2.   A pure heart and a full head .............................................................. 4
          3.   Proof requires plain and substantial evidence ................................... 5
          4.   Apathetic ignorance kills the defense ................................................ 5
          5.   The defense is subject to summary disposition ................................ 5

     C.   The Undisputed Facts Destroy Any Good Faith Defense ........................... 6

          1.   "It was just what we've always done in the past" ............................. 6
          2.   Worley did not seek legal advice ....................................................... 7
          3.   No DOL guidance ............................................................................... 8
          4.   Worley obviously knew that the adjusters/evaluators were entitled to
               overtime .............................................................................................. 8
          5.   There is no FLSA training at Worley ................................................ 9
          6.   Worley passed a portion of its employment tax obligations onto the
               Plaintiffs ........................................................................................... 10
          7.   Worley did not change its compensation plan after the 1099 issue
               came up or after this action was filed in early February, 2011 ........ 11

8. Worley's top brass believes that: "[I]f you agree on something [for pay], then that should be it" ............................................................ 12

III. CONCLUSION ................................................................................................ 13

Bob Simon, Sr. Deposition Testimony .................................................................Exhibit 1
Michael Charlie Bilbe Deposition Testimony.......................................................Exhibit 2
Altier Employment Agreement .............................................................................Exhibit 3
Michael Worley Memo Re 1099 Issue...................................................................Exhibit 4
Affidavit of Michael A. Starzyk.............................................................................Exhibit 5

# TABLE OF AUTHORITIES

**Cases:**

*Barcelona v. Tiffany English Pub, Inc.*,
   597 F.2d 464 (5th Cir. 1979)..................................................................... 4, 5, 7

*Bernard v. IBP, Inc. of Neb.*,
   154 F.3d 259 (5th Cir. 1998)............................................................................ 4

*Bolick v. Management by Skylane, LLC*,
   2008 WL 4589961 (S.D. Tex. Oct. 14, 2008)................................................ 4, 6

*D.A. Schulte, Inc. v. Gangi*,
   328 U.S. 108 (1946)......................................................................................... 3

*Dalheim v. KDFW-TV*,
   712 F. Supp. 533 (N.D. Tex. 1989)................................................................ 3, 4

*Duplessis v. Delta Gas, Inc.*,
   640 F. Supp. 891 (E.D. La. 2005).................................................................. 5, 7

*Heidtman v. County of El Paso*,
   171 F.3d 1038 (5th Cir. 1999)......................................................................... 12

*Johnson v. Big Lots Stores, Inc.*,
   604 F. Supp. 2d 903 (E.D. La. 2009)................................................................ 7

*Laffey v. Northwest Airlines, Inc.*,
   567 F.2d 429 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978) ................. 3

*LeCompte v. Chrysler Credit Corp.*,
   780 F.2d 120 (5th Cir. 1986)............................................................. 4, 5, 11, 12

*Mireles v. Frio Foods, Inc.*,
   899 F.2d 1407 (5th Cir. 1990)........................................................................ 3, 4

*Sinclair v. Automobile Club of Okla., Inc.*,
   733 F.2d 726 (10th Cir. 1984)........................................................................... 5

*Singer v. City of Waco, Tx.*,
    324 F.3d 813 (5th Cir. 2003) ............................................................................. 3, 4

*Solis v. Hooglands Nursery, LLC*,
    372 Fed. Appx. 528 (5th Cir. 2010) ........................................................................ 5

*Wajcman v. Investment Corp. of Palm Beach*,
    620 F. Supp. 2d 1353 (S.D. Fla. 2009) .................................................................... 8

*Walton v. United Consumers Club, Inc.*,
    786 F.2d 303 (7th Cir. 1986) ................................................................................... 4

**Statutes and Regulations:**

29 U.S.C. § 260 ............................................................................................................ 3, 4, 5

29 C.F.R. § 778.310 ............................................................................................................ 8

29 C.F.R. § 790.22 .............................................................................................................. 3

**Secondary Sources:**

II Schneider & Stine, *Wage and Hour Law: Compliance & Practice*, § 21:03 ................. 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN J. ALTIER, ET AL.<br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORLEY CATASTROPHE<br>RESPONSE, LLC,<br>WORLEY CATASTROPHE<br>SERVICES, LLC, and<br>DEFENDANTS X, Y & Z,<br><br>Defendants. | Civil Action No. 11-00241<br>(Consolidated With:<br>Civil Action No. 11-00242)<br><br>COLLECTIVE ACTION<br><br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR.<br><br>Reference: 11-00241 |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT (DEFENDANTS'
"GOOD FAITH DEFENSE" TO LIQUIDATED DAMAGES)

I.   LIQUIDATED DAMAGES FOR FLSA VIOLATIONS.

As set forth in detail in the Motion for Partial Summary Judgment (Not Paid on a "Salaried Basis") that Plaintiffs previously filed on September 22, 2011 (Rec. Doc. 234), it is **undisputed** that Defendants Worley Catastrophe Response, LLC and Worley Catastrophe Services, LLC ("Worley" or "Defendants") paid Plaintiffs **flat day rates** and that Worley failed to pay Plaintiffs **any** overtime premiums over and above their regular

day rates for their work over 40 hours a week on the BP Oil Spill Project.[1] Because Plaintiffs were required to work twelve-hour (before February 1, 2011) and ten-hour (after February 1, 2011) workdays and typically worked six or seven-day workweeks, they typically logged between 60-84 hour workweeks – equating to 20-44 hours of unpaid overtime premiums per week.

The FLSA provides for recovery of (and Plaintiffs have pled a right to recover)[2] liquidated damages in an amount equal to the unpaid overtime compensation. 29 U.S.C. § 216(b) ("An employer who violates the provisions of section 206 or 207 of this title shall be liable to the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Worley has alleged as its seventh affirmative defense that it "conducted itself with good faith and had reasonable grounds for believing that any alleged action or omission was not in violation of the FLSA." (Rec. Doc. 146, p. 23.) As set forth in this Motion, the undisputed material facts demonstrate that Worley cannot possibly establish a "good faith" defense to the imposition of liquidated damages. The Court should render summary judgment in Plaintiffs' favor dispensing of Worley's alleged "good faith" defense to liquidated damages.

## II. WORLEY CANNOT ESTABLISH A "GOOD FAITH" DEFENSE TO LIQUIDATED DAMAGES.

### A. The "Good Faith" Defense To Liquidated Damages.

#### 1. *Absent the defense, liquidated damages are mandatory.*

---

[1] *See, e.g.,* Rec. Doc. 146, Defendants' Answer and Affirmative Defenses, ¶ 75 ("Defendants admit Plaintiffs and others allegedly similarly situated were not paid overtime . . . ."); ¶ 76 (same).
[2] Rec. Doc. 110, Second Amended Individual and Collective Action Complaint, ¶ 1.

2

Prior to the Portal to Portal Act of 1947 (which amended the FLSA), the award of an equal amount of liquidated damages in a wage suit was mandatory. *See, e.g., D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946); *Singer v. City of Waco, Tx.*, 324 F.3d 813, 822 (5th Cir. 2003) ("At one time, this liquidated damages assessment was mandatory."). Now, 29 U.S.C. § 260 provides employers with the opportunity to present a "good faith" defense to award a lesser amount of liquidated damages or none at all. 29 U.S.C. § 260; 29 C.F.R. § 790.22; *Singer,* 324 F.3d 822-23 ("[T]he district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA.").

### 2. *Employer's burden of proof.*

Unless the employer proves its good faith defense, the award of liquidated damages is mandatory. 29 U.S.C. § 260; 29 C.F.R. § 790.22; *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 536 (N.D. Tex. 1989). If the employer proves the defense, the court nevertheless retains the discretion to award liquidated damages. 29 C.F.R. § 790.22; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990).

### 3. *A difficult defense to prove.*

"The predicate for the . . . imposition [of liquidated damages] is the reality that '[t]he retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 463 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978). "The burden [of the good faith defense] is a difficult one to meet; double damages are the

3

norm, single damages the exception." *Dalheim,* 712 F.Supp. at 536; *Singer,* 324 F.3d at 823 ("We have held that an employer 'faces a "substantial burden"' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.") (citing *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)) (quoting *Mireles,* 899 F.2d at 1415)).

### B. The Two-Part Test.

#### 1. *Both subjective and objective good faith.*

The defense of "good faith" is a two-prong test: (1) the employer's acts or omissions were made in good faith (*subjective* good faith); and (2) the employer had reasonable grounds to believe it was in compliance with the FLSA (*objective* good faith). *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 466 (5th Cir. 1979); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 120, 1263 (5th Cir. 1986) ("[I]n order to be relieved of liability for liquidated damages, an employer must demonstrate both good faith and reasonable grounds for believing that it was not violating the Act. The district court incorrectly applied a test of willfulness rather than the specific standards in § 260.").

#### 2. *A pure heart and a full head.*

The defense has been described as requiring both a "pure heart" and a "full head." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986) ("a good heart but an empty head does not produce a defense" to liquidated damages) (cited by the Fifth Circuit with approval in *Bernard*, 154 F.3d at 267); *Bolick v. Management by Skylane, LLC*, 2008 WL 4589961, *2 (S.D. Tex. Oct. 14, 2008) (quoting *Walton*). Both prongs

must be satisfied. *Sinclair v. Automobile Club of Okla., Inc.*, 733 F.2d 726, 730 (10th Cir. 1984); *see also LeCompte,* 780 F.2d at 1263 (noting the "dual burden under § 260").

### 3. *Proof requires plain and substantial evidence.*

"The good faith defense requires **plain and substantial evidence** of at least an honest intention to ascertain the requirements of the Act **and** comply with those requirements." II Schneider & Stine, *Wage and Hour Law: Compliance & Practice*, § 21:03 (emphasis added); *see also Barcelona,* 597 F.2d at 468 ("We understand the language of section 11 of the Portal-to-Portal Act to impose upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.").

### 4. *Apathetic ignorance kills the defense.*

The Fifth Circuit has stated that "[a]pathetic ignorance is never the basis of a reasonable belief." *Barcelona,* 597 F.2d at 469; *see also Duplessis v. Delta Gas, Inc.*, 640 F. Supp. 891, 896 (E.D. La. 2005) (Carr, J.) ("An employer cannot satisfy the burden of proving good faith and reasonableness under the Portal-to-Portal Pay Act [29 U.S.C. § 260] solely by suggesting that lower-level employees are responsible for the violations or by professing ignorance of the requirements of the Act.") (citing *LeCompte*).

### 5. *The defense is subject to summary disposition.*

The defense can be decided in a plaintiff's favor on motion for summary judgment. *See Solis v. Hooglands Nursery, LLC*, 372 Fed. Appx. 528, 530 (5th Cir. 2010)

5

(affirming summary judgment for employees on good faith defense to liquidated damages, stating: "After reviewing the record, the district court correctly held that Appellants 'ha[ve] submitted no evidence that [their] reliance on a bookkeeper with no managerial authority to ensure [their] compliance with the FLSA was reasonable'") (bracketed alterations in original); *Bolick*, 2008 WL 4589961 at * 2 (affirming summary judgment for employees on good faith defense to liquidated damages).

### C. The Undisputed Facts Destroy Any Good Faith Defense.

Worley cannot establish a defense of "good faith" to the imposition of liquidated damages.

#### 1. *"It was just what we've always done in the past."*

Defendants' Director of Operations and second man in command at the company, is Bob Simon Sr. (who has worked for Worley since 1996). (Ex. 1, Simon Depo., 46:20-47:5.) Mr. Simon testified on September 7, 2011 that only he and Charlie Bilbe (Defendants' Director of Environmental Services) discussed how the Plaintiffs would be paid for their work on the BP Oil Spill Project and they simply paid them by a day rate as they had "[h]istorically" done on "all the events that we had under ESIS:"

> "Q. All right. Did you make that decision on your own, that they should be paid the 450?
> A. **I did not make that decision on my own. It was just what we've always done in the past. Historically, all the events that we had under ESIS, as far as I'm aware of when I – since I've been there, they were paid this same way.**"

(Ex. 1, Simon Depo., 7:20-9:5; 10:7-20; 11:14-12:12 & 124:14-126:15.)

6

Mr. Bilbe similarly testified at his September 8, 2011 deposition that the pay structure of $450 per day – split $350 per day subject to payroll tax withholdings and reported on an IRS Form W-2 and $100 per day without any tax withholdings and reported on an IRS Form 1099 (the impropriety of which is discussed further below) – had been in place at Worley for a "time prior to the BP spill." (Ex. 2, Bilbe Depo., 18:18-19:19 ("The day rate is a regular procedure that we use in the environmental department."); 85:13-19 & 89:4-14.)

"Good faith" requires **some duty to investigate** potential liability under the Act. *Barcelona,* 597 F.2d at 468-69 ("Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws. Apathetic ignorance is never the basis of a reasonable belief."); *Duplessis,* 640 F. Supp. at 896. Here, Worley paid the adjusters/evaluators a day rate without overtime simply because that is the way they have always done it.

### 2. *Worley did not seek legal advice.*

Before venturing into the BP Oil Spill Project (the largest project in the company's 30 year history), Worley did not seek any legal advice to make sure that its compensation plan for the adjusters/evaluators was lawful. (Ex. 1, Simon Depo., 9:12-10:6; 126:20-127:16.) Moreover, even where a defendant has consulted with legal counsel about its compensation structure (which Worley did not do), a good faith defense to the imposition liquidated damages does not necessarily follow. *See Johnson v. Big Lots Stores, Inc.,* 604 F. Supp. 2d 903, 926 (E.D. La. 2009) (Vance, J.) (liquidated

damages assessed where defendant made some efforts to determine compliance, including among other things, discussing the plaintiffs' position with its legal counsel); *Wajcman v. Investment Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1358-60 (S.D. Fla. 2009) (even when a party consults an attorney and reviews the FLSA, their good faith compliance with the FLSA can be found objectively unreasonable).

### 3. *No DOL guidance.*

Nor did Worley contact anyone with the Department of Labor to ask them if the manner in which they were going to be compensating the adjusters/evaluators was in accordance with the law. (Ex. 1, Simon Depo., 127:17-129:1.)

### 4. *Worley obviously knew that the adjusters/evaluators were entitled to overtime.*

Worley obviously **knew** that the adjusters/evaluators were entitled to overtime pay, because it *attempts*[3] to classify a percentage of adjuster/evaluator base pay as covering overtime in its standard Employment Agreement. (Ex. 3, Altier Employment Agreement, ¶ 2 ("Employee agrees to receive 40% for regular pay consideration plus 25% for overtime consideration making a total commission of 65% of the total fee amount of the invoice billed to the insurance carrier, upon receipt by Worley, of payment from carrier for work performed.").)

---

[3] Notably, however, an employer may not pay a fixed sum for varying amounts of overtime. 29 C.F.R. § 778.310 ("A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis... The reason for this is clear. If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked.").

8

While Worley doggedly argues in both the *Altier* Plaintiffs' companion and consolidated case for breach of contract and the related, State-court *Sullivan* class action for breach of contract, that the contract —which all adjusters/evaluators had to sign at the outset of their deployment on the BP Oil Spill Project – did not actually apply to work on the BP Project, the fact that Worley's standard Employment Agreement tries to set a fixed amount for the payment of overtime demonstrates that **Worley knows that overtime premiums must be paid**. Nevertheless, Worley admittedly[4] did not pay the adjusters/evaluators working on the BP Oil Spill Project any overtime over and above their flat day rates. *See Duplessis*, 640 F. Supp. at 896 ("lack of good faith is demonstrated when an employer 'knows, or has reason to know' that his conduct is *governed* by the [Act]") (original emphasis; bracketed alteration in original).

### 5. *There is no FLSA training at Worley.*

Worley's second-man-in-command also testified that Worley does not offer any training for its managers on FLSA compliance:

> Q. Have you ever received any training on the Fair Labor Standards Act or anything dealing with payment of overtime to employees?
> **A. No.**
>
> \* \* \*
>
> [Q.] . . . [I]s there any training that is done or received of by folks at Worley regarding the Fair Labor Standards Act or overtime?
> A. **I don't think there's been any training or anything like that. I know the people there in – in the office gets overtime."**

(Ex. 1, Simon Depo., 192:9-193:24.) And the fact that Worley pays some of its office personnel overtime further confirms that the company was on notice of its obligation to

---

[4] *See, e.g.,* Rec. Doc. 146, Defendants' Answer and Affirmative Defenses, ¶ 75 ("Defendants admit Plaintiffs and others allegedly similarly situated were not paid overtime . . . ."); ¶ 76 (same).

9

comply with the FLSA and should have investigated the issue with respect to the roughly 1,300 adjusters/evaluators hired to work great amounts of overtime hours on the BP Oil Spill Project.

### 6. *Worley passed a portion of its employment tax obligations onto the Plaintiffs.*

Until October 1, 2010, Worley improperly allocated $100 per day of the Plaintiffs' pay to a Form 1099 (as opposed to a Form W-2) without making the necessary employer and employee tax withholdings – and thereby left the **Plaintiffs** wholly responsible for **Worley's share** of employment taxes. (Ex. 1, Simon Depo., 106:10-109:18; Ex. 4, Memo from Michael Worley Re 1099 Issue.) Even though Worley had been making these improper tax allocations for years, Worley did not inform the Plaintiffs in their recruiting calls that the 1099/W-2 split would be made to their day rate, and Simon did not even know the splits were being made until he learned of the IRS investigation. (Ex. 1, Simon Depo., 106:10-109:18, 114:2-115:25 & 117:10-118:21.)

Further demonstrating Worley's bad faith in its payment of wages to the Plaintiffs, even after the IRS investigated Worley for this, Worley did **nothing** to square up with the Plaintiffs to cover the **employer's** share of the payroll tax obligations for the $100 per day it had previously misclassified as "1099" earnings, and Worley did not even advise Plaintiffs that they were going to face extra tax consequences on their 2010 tax returns because of the improper 1099 reporting that had made in the period between April-September, 2010. (Ex. 1, Simon Depo., 118:22-121:10.)

### 7. *Worley did not change its compensation plan after the 1099 issue came up or after this action was filed in early February, 2011.*

After the 1099 issue arose, Worley did not reexamine its compensation structure for Plaintiffs other than to stop the improper 1099 tax reporting. (Ex. 1, Simon Depo., 134:9-136:14.) Mr. Bilbe testified that before this lawsuit, there were no plans to change the compensation plan for claims adjusters/evaluators working on environmental catastrophes. (Ex. 2, Bilbe Depo., 18:18-21:8.)

Plaintiffs filed this action on February 4, 2011. (Rec. Doc. 1.) Since then, Worley has done nothing to change its illegal compensation structure for the adjusters/evaluators working on the BP Oil Spill Project, and defense counsel would not allow Simon to answer whether there were any plans to change the compensation structure after this litigation is over. (Ex. 1, Simon Depo., 136:15-139:16; *see also* Ex. 2, Bilbe Depo., 18:18-20:9 (testifying he would not be able to answer whether there were any plans to change the compensation structure without revealing attorney-client communications).)

Thus, even with Plaintiffs explicitly laying out how Worley has violated the FLSA, Worley continues to reap the benefit of the **20-44 hours of overtime each week** that class members are logging without paying the overtime premiums required under the FLSA. Worley's continued acceptance of such considerable overtime work without proper compensation is further evidence of its lack of good faith. *See LeCompte*, 780

F.2d at 1263[5]; *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999) ("Because employers cannot act in good faith on reasonable grounds when they suspect that they are out of compliance with the FLSA, it would have been an abuse of discretion if the district court had *not* awarded liquidated damages.")

> **8.   Worley's top brass believes that: "[I]f you agree on something [for pay], then that should be it."**

When Mr. Simon was asked for his opinion on the claims involved in this lawsuit, he testified essentially that whatever an employer and employee agree to with respect to pay should be binding without consideration of statutory requirements:

> "Q.   So can you tell the ladies and gentlemen of the jury what your opinion, developed on your own, is of the claims in this lawsuit?
> [Objections interposed by defense counsel.]
> **A.   I think the lawsuit itself – you know, if you – if you agree to pay somebody one thing and they agree to work for it – for that, that's an agreement between two people. An agreement between a company and an employee, be it a permanent employee or a temp employee, if you agree on something, then that should be it.**
> Q.   Regardless of what the law says?
> **A.   When my opinion was formulated, it was before I was aware of any kind of law."**

(Ex. 1, Simon Depo., 175:23-180:8.)

Under these facts, it is disingenuous for Worley to claim it acted in subjective and objective good faith. Worley's alleged "good defense" to the imposition of liquidated damages is ripe for summary adjudication in Plaintiffs' favor.

---

[5] Stating: "The [trial] court noted that Chrysler's Branch Manager, Heacock, attempted on several occasions to delete references to uncompensated overtime from letters of resignation submitted by certain plaintiffs. From such incidents, Heacock knew, or in the exercise of reasonable diligence should have known, that considerable overtime work was being required of accounts adjusters. Blissful ignorance also cannot be credited in view of the finding that the plaintiff employees worked an average of ten hours per man per week overtime throughout the period covered by the statute of limitations. The district court's refusal to award liquidated damages cannot be approved." *LeCompte*, 780 F.2d at 1263.

## III. CONCLUSION.

For these reasons, summary judgment should be entered for Plaintiffs on Defendants' alleged "good faith" defense to liquidated damages

Respectfully Submitted,

/s/ *Michael A. Starzyk*

**J. P. Hughes, Jr.**
LA Bar # 21302
**HUGHES BROWN, PLLC**
1300 Access Road
Suite 100
Oxford, MS 38655
L: (662) 234-6080
F: (800) 515-5446

**Michael A. Starzyk**
TX Bar # 00788461*
**April L. Walter**
TX Bar # 24052793*
**Raven Applebaum**
TX Bar # 24043644*
**Hessam Parzivand**
TX Bar # 24071157*
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road
Suite 300
The Woodlands, TX 77380
L: (281) 364-7261
F: (281) 364-7533

**Joseph E. Fieschko Jr.**
PA Bar # 28797*
**FIESCHKO AND ASSOCIATES, NC.**
2230 Koppers Building
Pittsburgh, PA 15219
L: (412) 281-2204
F: (412) 338-9169

John R. Linkosky
PA Bar # 66011*
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, PA 15106
T: (412) 278-1280
F: (412) 278-1282

*Admitted Pro Hac Vice*

**Counsel for Plaintiffs JOHN J. ALTIER, ET AL., and All Others Similarly Situated**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2011, I served the foregoing Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment (Defendants' "Good Faith Defense" to Liquidated Damages) on the following in accordance with the Federal Rules of Civil Procedure:

**Jennifer L. Anderson**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809-7000
E-mail: janderson@joneswalker.com

**Mary Margaret Spell**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
E-mail: mspell@joneswalker.com

**James R. Lewis**
**Mary G. Erlingson**
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana 70801
E-mail: jlewis@crawford-lewis.com
E-mail: merlingson@crawford-lewis.com

**Counsel for Defendant**
**Worley Catastrophe Response, LLC**
**and Worley Catastrophe Services, LLC**

/s/ Michael A. Starzyk
_____
Michael A. Starzyk