# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN J. ALTIER, ET AL.** | ) | Civil Action No. 11-00241 |
| **Individually and on behalf of all others** | ) | (Consolidated With: |
| **similarly situated,** | ) | Civil Action No. 11-00242) |
| | ) | |
| Plaintiffs, | ) | **COLLECTIVE ACTION** |
| | ) | |
| v. | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **WORLEY CATASTROPHE** | ) | **JOSEPH C. WILKINSON, JR.** |
| **RESPONSE, LLC,** | ) | |
| **WORLEY CATASTROPHE** | ) | Reference:  11-00241 |
| **SERVICES, LLC, and** | ) | |
| **DEFENDANTS X, Y & Z,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT (NOT PAID ON A "SALARIED BASIS")</u>**

Worley's opposition reeks of red herring. In an effort to mislead the Court and divert attention away from the *undisputed* facts *established by defense witnesses* and the *relevant* law related to *payment via a day rate* (which together definitively establish that Plaintiffs were not paid on a salaried basis), Worley files an excessively long brief that waxes endlessly about issues having nothing to do with Plaintiffs' Motion. Indeed, Worley does not even address the Regulation that is at the core of the issue of whether Plaintiffs were paid on a salaried basis until page 19 of its brief.

## I.   A FLAT DAY RATE DEMANDS SUMMARY JUDGMENT.

Worley has admitted that initially "adjusters were paid a day rate of either $450 or $550," and that Plaintiffs were paid "based on a rate of $425 per day" starting in February 2011. (Rec. Doc. 264-3, p. 9.) Worley's executives admitted that no other computation or guarantee entered into the formula for calculating pay for class members. (Rec. Doc. 234-4, pp. 5-9.) Payment of a "flat sum for a day's work … without regard to the number of hours worked in the day," necessitates overtime compensation. 29 C.F.R. § 778.112. Courts have held that summary judgment is appropriate under these exact circumstances. *Lee v. Vance Executive Prot., Inc.*, 7 Fed. Appx. 160 (4th Cir. 2001) ("The primary issue in this case is whether the Agents are paid a day rate. Resolution of this issue then dictates the proper result under the FLSA. . . . Unquestionably, Vance Agents are paid a flat sum for a day's work . . . without regard to the number of hours worked in the day. . . . We reverse the district court on this matter and remand for the entry of summary judgment in favor of the Agents.") (citations omitted); *Cunningham v. Faerber's Bee Window, Inc.*, 2005 WL 1123534 at *3 (S.D. Ind. Apr. 19, 2005)

("Maskell was paid per day of work . . . . Hence, Maskell's request for summary judgment on the issue that he was not a salaried employee is GRANTED.").

## II.   WORLEY PAID A FLAT DAY RATE WITHOUT ANY GUARANTEES.

Worley hinges its entire defense on a regulation which states that an employee can be paid a daily rate on a salary basis only "if the employment arrangement also includes a **guarantee** of at least the minimum weekly required amount [$455] **paid on a salary basis**, regardless of the number of hours, days, or shifts worked." 29 C.F.R. § 541.604(b) (emphasis added).

### A.   An Expectation Is Not A Guarantee.

Worley admitted time and again that evaluators were not paid a minimum guarantee each week.  Instead, they contend their employees "could expect" to receive at least $455 a week.  (Rec. Doc. 264-3, Ex. 8)  An "expectation" is NOT equivalent to a guarantee under the most liberal interpretation of the word, not to mention under the narrow interpretation FLSA exemptions require.  *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 526 (5th Cir. 2004) ("An employer claiming an exemption bears the burden of proving its exempt status, and exemptions are to be narrowly construed against the employer").

Worley's attempt to prove that Plaintiffs *received* at least $455 under their compensation system does not constitute a guarantee.  In *Prakash*, a Plaintiff who was paid in amounts ranging from $2,083.33 to $8,118.40 each pay period ultimately won summary judgment on the issue that he was not paid on a salary basis, because there was no guarantee.  *Prakash v. Savi Technologies, Inc.*, 2011 WL 2414349 at *3-4 (W.D.

Wash. June 10, 2011). *Prakash* "could expect" much more than $455 per week and he received more than $455 per week, but in the end he was guaranteed nothing, making summary judgment appropriate. *Id*.

### B. Worley Never Paid A "Predetermined Amount" To Plaintiffs.

Even if Worley's line of reasoning that a guarantee is equivalent to an expectation was legally sound, Worley still cannot prove that it paid a "predetermined amount" to any of the Plaintiffs on a weekly basis, regardless of the number of days worked. 29 C.F.R. § 541.602. Worley spends much of its brief focusing on what a Plaintiff "regularly receives" under the salary basis regulation, but completely ignores the fact that Plaintiffs must receive a "**predetermined amount**" for their pay to constitute a salary. (Rec. Doc. 266, pp. 19-20.) Despite 29 pages of smoke and mirrors, Worley cannot meet its burden of proving it paid any predetermined amount. Worley's day rate does not suffice as a predetermined amount no matter what amount an average Plaintiff ultimately received. *Prakash*, 2011 WL 2414349 at *3-4 (granting summary judgment when Plaintiff was paid well above $455 per week but not paid a predetermined amount).

### C. A Salary Must Be Computed On A Weekly Or Less Frequent Basis.

By computing any potential guarantee based on the number of days worked, Worley has failed yet another part of the salary basis test. A guarantee that a person will be paid for a day or hour of work does not comply with the salary basis requirements. *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 519 n.1 (5th Cir. 1989); *Cunningham*, 2005 WL 1123534 at *3. The hallmark of a salary is that it is computed on a weekly or

less frequent basis, not based on the number of days or hours worked. 29 C.F.R. 541.602; *Cunningham*, 2005 WL 1123534 at *3.

### D. <u>Worley Violates The Rough Equivalence Test</u>.

Assuming arguendo that Worley paid a guarantee, of a predetermined amount (its top executives say there was no guarantee of any amount), and that a day rate computation can constitute payment on a salary basis (salaries must be paid on a weekly or **less** frequent basis), Worley fails to make a guarantee (presumably $455) that is "**roughly equivalent**" to the compensation Plaintiffs earned in a normal workweek as required by 29 C.F.R. § 541.604(b). **Defendants admit in their own briefing that Plaintiffs earned between $2550 and $3850 a week, amounts exponentially greater than $455**. (Rec. doc. 266, p.15 n.3.) The DOL has clearly stated in its own interpretations that $1500 is not roughly equivalent to $455. (Rec. Doc. 234-4, Ex. A).

In the face of these extreme inequalities between the alleged "guarantee" and the amount earned in a normal workweek, Worley desperately claims that the regulation **it** has relied on throughout the case is not entitled to deference. (Rec. Doc. 266, p.26-27.) The Fifth Circuit has deferred to DOL regulations if they are "based on a permissible construction of the statute." *Chevron U.S.A Inc., v. Natural Res. Def. Council Inc.*, 467 U.S. 842-843 (1984); *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001). The DOL upholds the rough equivalence test in its 2004 regulation and states that without this protection, employers could get around its prohibition on partial day deductions. (Rec. Doc. 234-4, Ex. B.) Furthermore, the DOL's interpretation of its regulation "is controlling unless plainly erroneous or inconsistent with the regulation." *Auer v.*

4

*Robbins*, 519 U.S. 452, 461 (1997). Worley cites authorities that declined to follow the rough equivalence test before 2004 when it became a regulation, but fails to cite any authority holding the rough equivalence regulation or any other DOL regulation invalid. (Rec. Doc. 266, pp. 26-27.)

### III. THE CONTRACT CASE DOES NOT AFFECT THIS MOTION.

#### A. The Outcome Of The Contract Case Will Not Change The Fact That Plaintiffs Were Paid Via A Day Rate.

While the outcome of the contract case could affect the *amount* of Plaintiffs' regular rate, it does *not* change the fundamental fact that Plaintiffs were not paid any guaranteed, predetermined set weekly amount of pay without regard to the hours worked in the week. Under both theories of liability, Plaintiffs contend that they were paid for all recorded straight time. Regardless of whether their rate of pay is determined on an hourly or job rate under their employment contracts, or a day rate if the contract is held to be inapplicable, plaintiffs are entitled to half-time overtime compensation and thus summary judgment.[1] 29 C.F.R. § 778.112 (day/job rate); 29 C.F.R. § 778.110 (hourly rate). Defendants demonstrated their awareness that the analysis is identical by failing to provide any relevant authority on how the contract claims would alter the overall overtime analysis. (Rec. Doc. 266, p. 26.)

---

[1] The employment contracts set forth job rate compensation based on a percentage of hourly billings. This form of compensation could be characterized as a job rate or hourly rate. *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1312 (S.D. Fla. 2007) (holding that pay of a fixed percentage of gross revenue is a job rate). The characterization of these payments is ultimately irrelevant to the summary judgment, since both methods come to the same liability results as the day rate.

### B.     The FLSA And Contract Cases Do Not Identically Overlap.

Additionally, while Worley repeatedly misstates that the FLSA case involves only 91 Plaintiffs, in reality, the third-party class action administrator (A.B. Data) has received 332 opt-in forms as of October 17, and the additional class members still have until October 21 to return their opt-in forms.  (Rec. Doc. 274, Ex. C, ¶ 6.)  The 91 current Plaintiffs that Worley references are those adjusters/evaluators who contacted Plaintiffs' counsel directly to join this action.  Thus, while 91 Plaintiffs have consented to joinder in both the FLSA and contract case, there are an additional 241 Plaintiffs who have joined only the FLSA case through their return of the opt-in form to A.B. Data.

## IV.    WORLEY'S MISCELLANEOUS SMOKE AND MIRROR ARGUMENTS.

### A.     Plaintiffs' Motion Does Not Rest On Improper Deductions.

In its school of red herring, Worley's biggest fish are their arguments related to deductions that were made to certain Plaintiffs' pay.  Where an employee is paid on a salaried basis and principally has exempt duties, an employer may nonetheless lose an overtime exemption if it has a practice of making improper deductions from the employee's salary.  29 C.F.R. § 541.603(a) (an "employer who makes improper deductions from salary shall lose the exemption").  However, Plaintiffs' Motion is ***not*** based on any claim that Worley made improper deductions to a (phantom) weekly salary; rather, Plaintiffs' point is that, fundamentally, they were never paid a weekly salary to begin with.  Thus, all of Worley's arguments trying to defend any deductions as "isolated

6

or inadvertent" and asking for further discovery on "any question about deductions" miss the proverbial boat.[2]

### B. FLSA's Overtime Requirements Cannot Be Ignored Simply Because A Person Receives A High Wage.

Worley repeatedly bangs the drum that Plaintiffs were high wage earners. The obvious intent is to suggest that Plaintiffs should not be awarded any more income because they were already paid enough. However, an employer cannot dismiss the *laws concerning overtime requirements* based merely on an argument that it pays its employees well. *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) ("[E]mployees are not deprived of the benefits of the [FLSA] simply because they are well paid or because they are represented by strong bargaining agents."); *Prakash*, 2011 WL 2414349 at *4 ("The purported fact that Prakash earned an annual salary of $120,000 may make him an unsympathetic plaintiff who falls outside of the class of persons the FLSA was designed to protect. However, it does not change the fact that defendants have failed to demonstrate that Prakash 'regularly receive[d] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation.'") (quoting 29 C.F.R. §

---

[2] Similarly, though Worley tries to bolster the duties element of its exemption defenses by repeatedly arguing that Plaintiffs "consist of highly skilled professional claims adjusters," Plaintiffs' Motion simply does not involve the duties tests of Worley's exemption defenses, because the prerequisite salaried basis element is not satisfied. (Quoting Rec. Doc. 264-3, p. 15.) Moreover, Worley grossly exaggerates the credentials and work of the adjusters/evaluators on the BP Oil Spill Project in its attempt to engage Plaintiffs' in an irrelevant side battle concerning the duties test – as the defense witnesses have universally testified that to work on the BP Project you do not have to be a licensed claims adjuster or even have any prior claims adjusting experience. (*E.g.,* Carpenter Depo. (in related, State *Sullivan* case), 19:7-20:15; Simon Depo., 172:1-173:10; Landrum Depo., 112:4-8; Bilbe Depo., 92:23-94:25.)

7

541.602(a)). Whether Plaintiffs were paid poorly or handsomely for their services is a total red herring.[3]

Moreover, Worley does not even accurately describe the Plaintiffs' income. Worley focuses on Plaintiffs' earnings "annualized" earnings. (*See, e.g.,* Rec. Doc. 264-3, p. 1, arguing at the outset of their Brief in bolded typeface that the Plaintiffs' "annualized earnings on the project ranged from **a low of $132,600 to a high of $200,200**") (underlined emphasis added).) The nature of Plaintiffs' employment as catastrophe adjusters is, however, not "annual." Rather, as Worley itself recently stressed in opposition to Plaintiffs' motion concerning its retaliation threats to class members, "All catastrophe projects are temporary and come to a close when the time for filing claims expires and/or as claims are resolved, which is the nature of the industry." (Rec. Doc. 240-5, Decl. of Allen Carpenter, ¶ 7.) Catastrophe adjusters can go for many months without work and when they are on assignment it is typically far from their homes and families, so the transient nature of their work assignments is naturally factored into their earnings, otherwise nobody would want to work in the industry.

It remains undisputed that Plaintiffs worked lots of overtime hours (20-44 per week) without any additional overtime pay over and above their day rate – which clearly

---

[3] Furthermore, the social policy behind the concept of additional pay for overtime was not based upon the view that an individual should receive more pay for working harder. Rather, the FLSA was passed during the Great Depression as a motivation to encourage employers to hire more people in their workforce. *See, e.g., Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577 (1942) (superseded by statute on other grounds as stated in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)). Thus, premium pay was not placed in the law as a reward to employees, but rather as a deterrent to employers working people longer hours (i.e., instead of working one man 84 hours, hire two men to work around 40 hours each). Worley knew they needed exorbitant man hours to service the BP Oil Spill Project and chose to work people 84 hours a week (without paying the overtime premiums required by the FLSA) instead of helping to prop up the economy by hiring additional workers.

violates the FLSA. 29 C.F.R. § 778.112 ("If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek**.") (Emphasis added.) The Court should not be persuaded by Worley's plaintive cry to disregard the law because the Plaintiffs were "well-paid."

### C. Payment For A Partial Day Is A Quintessential "Day Rate."

Worley repeatedly points out that it paid Plaintiffs for partial days, including specifically Sandra Brennan and Latasha Anders. This just underscores the fact that Plaintiffs were paid *via a day rate*, which is one of Plaintiffs' principal points. 29 C.F.R. § 778.112 (defining a day rate as being paid "a flat sum for a day's work . . . without regard to the number of hours worked in the day"). Worley is obviously trying to *confuse* the critical issue of whether Plaintiffs were paid a *set weekly* amount without regard to the number of hours worked in the *week* (which the undisputed facts show they were *not*) with the separate issue of whether Plaintiffs were paid a *set daily* amount without regard to the number of hours worked in the *day* (which simply shows they were paid a quintessential "day rate").

### D. No Further Discovery Is Needed On The Admitted Fact There Was No Guaranteed Predetermined Weekly Amount Of Pay.

Worley contends in its opposing brief and in its separate Motion Pursuant to Rule 56(D) (Rec. Doc. 263) that it needs additional time to conduct discovery to effectively

9

rebut Plaintiffs' Motion for Partial Summary Judgment. It is, however, a false premise to claim further discovery is needed "from Plaintiffs as to the reasons why there were absent, whether any reasons may they may have provided are the real reasons, and when and in what amount any alleged deductions occurred"[4] when, as noted above, Plaintiffs' Motion does not rest on any improper deductions to kill an exemption defense. Instead, Plaintiffs' Motion depends on the **testimony of Worley's own top executives,**[5] who uniformly admitted that there is no guaranteed, predetermined set weekly pay amount for the adjusters/evaluators working on the BP Oil Spill Project (i.e., no payment on a "salaried basis"); rather, Plaintiffs were admittedly paid on a day rate basis. Plaintiffs further incorporate herein by reference their additional arguments and authorities cited in opposition to Worley's Motion Pursuant to Rule 56(D).

## IV.   CONCLUSION.

For these reasons, summary judgment should be entered for Plaintiffs holding Plaintiffs were not paid on a "salaried basis" under the FLSA, and that accordingly, Plaintiffs do not qualify for either the administrative, executive, or highly-compensated workers overtime exemptions.

> Respectfully Submitted,
>
> */s/ Michael A. Starzyk*
> _____
> **J. P. Hughes, Jr.**

---

[4] Quoting Rec. Doc. 264-3, p. 28.

[5] By start contrast, in the *Arceneaux v. U.S. Postal Service*, 2003 WL 1936402, * 7 (E.D. La. 2003) (Wilkinson, J.) case previously before this Court that Worley discusses, the plaintiffs moved for summary judgment on liability and damages (not partial summary judgment of an affirmative defense) and their motion rested on a joint affidavit from the plaintiffs that contained "many conclusory statements . . . not supported by competent summary judgment evidence" and was disputed by a declaration from a defense witness. *Id.* at *8. Here, Plaintiffs' Motion for Partial Summary Judgment rests on Defendants' own testimony.

LA Bar # 21302
**HUGHES BROWN, PLLC**
1300 Access Road
Suite 100
Oxford, MS 38655
L: (662) 234-6080
F: (800) 515-5446

**Michael A. Starzyk**
TX Bar # 00788461*
**April L. Walter**
TX Bar # 24052793*
**Hessam Parzivand**
TX Bar # 24071157*
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road
Suite 300
The Woodlands, TX 77380
L:  (281) 364-7261
F:  (281) 364-7533

**Joseph E. Fieschko Jr.**
PA Bar # 28797*
**FIESCHKO AND ASSOCIATES, NC.**
2230 Koppers Building
Pittsburgh, PA 15219
L:  (412) 281-2204
F:  (412) 338-9169

**John R. Linkosky**
PA Bar # 66011*
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, PA 15106
T:  (412) 278-1280
F:  (412) 278-1282

*Admitted Pro Hac Vice*

**Counsel for Plaintiffs JOHN J. ALTIER, ET AL., and All Others Similarly Situated**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2011, I served the foregoing Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (Not Paid on a "Salaried Basis") on the following in accordance with the Federal Rules of Civil Procedure:

**Jennifer L. Anderson**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809-7000
E-mail: janderson@joneswalker.com

**Mary Margaret Spell**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
E-mail: mspell@joneswalker.com

**James R. Lewis**
**Mary G. Erlingson**
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana 70801
E-mail: jlewis@crawford-lewis.com
E-mail: merlingson@crawford-lewis.com

**Counsel for Defendant**
**Worley Catastrophe Response, LLC and**
**Worley Catastrophe Services, LLC**

*/s/ Michael A. Starzyk*
_____
Michael A. Starzyk