UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN J. ALTIER                                    CIVIL ACTION

VERSUS                                            NO. 11-241 c/w 11-242

WORLEY CATASTROPHE                                MAGISTRATE JUDGE
RESPONSE, LLC ET AL.                              JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

In these consolidated cases, plaintiffs bring claims for unpaid overtime pay and liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and for breach of contract under Louisiana law.  Plaintiffs and the remaining defendants have reached a settlement of all claims and have filed a Joint Motion to Approve Settlement and for Conditional Dismissal in both consolidated actions.  Record Doc. No. 301.  Also pending before me is a Motion for Leave to File Petition in Intervention filed by five non-parties who seek to join these consolidated actions as plaintiffs solely to object, not to the settlement, but only to certain terms of the settlement agreement between the existing parties.  Record Doc. No. 298.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 138.

I.    PROCEDURAL BACKGROUND

Plaintiff, John J. Altier, brought Civil Action No. 11-241 as a putative collective and class action, pursuant to the FLSA and Fed. R. Civ. P. 23.  The original defendants were BP Exploration & Production Inc. ("BP"), Worley Catastrophe Response, LLC, and Worley Catastrophe Services, LLC (collectively "Worley").  After the April 2010 blowout in the Gulf of Mexico of BP's Deepwater Horizon offshore well and the subsequent catastrophic oil spill, Worley, which had a contract with BP, hired Altier and other claims adjusters to evaluate claims brought against BP by third parties.  Altier filed this action individually and on behalf of similarly situated persons to recover unpaid overtime wages and liquidated damages under the FLSA.  Altier alleges that he and similarly situated claims adjusters routinely worked more than 40 hours per work week and that defendants willfully violated the FLSA by improperly classifying the claims adjusters as employees who are exempt from the FLSA overtime provisions.

Altier also brought Civil Action No. 11-242 as a contract-based putative class action pursuant to Louisiana substantive law and Fed. R. Civ. P. 23 against a single defendant, Worley Catastrophe Response, LLC.  Additional plaintiffs joined in both actions.  A total of 98 plaintiffs filed consent forms to opt in to the FLSA collective action, while 56 of the same plaintiffs joined the contract action.

BP's motion to dismiss was granted in Civil Action No. 11-241 and plaintiffs' claims against BP in that matter were dismissed with prejudice.  Record Doc. Nos. 87, 107.  However, I denied BP's Motion for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b).  Record Doc. Nos. 125, 153.

Upon plaintiffs' motion in Civil Action No. 11-241, I conditionally certified a collective action for unpaid overtime under the FLSA.  Record Doc. No. 171.  Court-approved notices were sent to all members of the conditionally certified collective action. Record Doc. Nos. 189, 191.  I denied plaintiffs' motion for certification of a contract-based Rule 23 class action in consolidated Civil Action No. 11-242.  Record Doc. No. 187.

The parties engaged in extensive discovery and motion practice, including plaintiffs' opposed motions for partial summary judgment.  At counsel's request, I continued the hearings and submission dates on the summary judgment motions so that the parties could discuss settlement.  They did so extensively and with great effort, including preliminary negotiations, a thorough-going private mediation and several subsequent court-supervised settlement conferences with me, which ended in a settlement agreement.  The parties' proposed final agreement includes provision for payment of plaintiffs' attorney's fees and costs.

On December 22, 2011, plaintiffs and Worley filed a Joint Motion to Dismiss, Record Doc. No. 296, in which they also asked the court to approve their confidential settlement agreement. I denied the motion as premature because some provisions of the proposed agreement required amplification and clarification and because the motion was not supported by any evidence regarding the reasonableness of the agreed-upon attorney's fees and costs. I ordered the parties to file a revised motion with the additional information and clarification requested by the court. Record Doc. No. 299.

Five days _after_ the parties filed their Joint Motion to Dismiss, non-parties Michael Sullivan, Charles Baldwin, Johnny Knighten, Jimmy Phillips and Ron Dickerson (the "Sullivan Plaintiffs") filed a Motion for Leave to File Petition in Intervention. Record Doc. No. 298. The Sullivan Plaintiffs are the named plaintiffs in a separate class action that was filed in state court against Worley, Michael Sullivan et al. v. Worley Companies et al., No. 599,055, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, a few days after the instant federal consolidated actions were filed. In that state court class action brought under Louisiana law, the Sullivan Plaintiffs, individually and on behalf of a putative class of approximately 1,200 claims adjusters, allege that Worley breached its employment agreement with the putative class members and failed to pay them wages due. All of the plaintiffs in the FLSA action in this court are putative class members in the Sullivan litigation.

4

The state court granted the <u>Sullivan</u> Plaintiffs' motion to certify a class in that action on September 9, 2011.  The scope of the class has not yet been defined and no notices have been distributed to the putative class members.  Worley appealed the class certification order and that appeal is pending.  The <u>Sullivan</u> Plaintiffs seek to intervene as plaintiffs in the consolidated actions in this court as a matter of right under Fed. R. Civ. P. 24(a)(2) and Fed. R. Civ. P. 23(d)(1), solely to object to the settlement agreement (which they have not seen because it is confidential) and only to the extent it contains terms that waive and release any contractual claims that the members of the FLSA collective action might have against Worley.

Plaintiffs and Worley filed separate memoranda in opposition to the <u>Sullivan</u> Plaintiffs' motion to intervene.  Record Doc. Nos. 303, 308.  The <u>Sullivan</u> Plaintiffs received leave to file two reply memoranda in support of their motion.  Record Doc. Nos. 304, 305, 306, 309, 310, 311.

Plaintiffs and Worley filed in both consolidated actions their revised Joint Motion to Approve Settlement and for Conditional Dismissal, which is supported by affidavits and several exhibits.  Record Doc. No. 301.  They submitted their confidential settlement agreement to me for in camera review.  Although the <u>Sullivan</u> Plaintiffs' motion to intervene has <u>not</u> been granted and they are <u>not</u> yet parties to these actions, they filed a memorandum in opposition to the parties' Joint Motion to Approve Settlement and for

Conditional Dismissal.  Record Doc. No. 302.  I have considered their memorandum, which reiterates the arguments they make in their motion to intervene.

I continued without date the submission of and oral argument on the pending summary judgment motions, Record Doc. Nos. 234, 257 and 263, pending my review of the Joint Motion to Approve Settlement and for Conditional Dismissal.  Record Doc. No. 307.  A two-week jury trial in this matter is currently scheduled for August 20, 2012, with a final pretrial conference set for August 6, 2012.

Having reviewed the complaint, as amended, the record, the submissions of the parties and the proposed intervenors, and the applicable law, and for the following reasons, the court enters the following orders on all pending motions.

**IT IS ORDERED** that the <u>Sullivan</u> Plaintiffs' Motion for Leave to File Petition in Intervention, Record Doc. No. 298, is **DENIED**.

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Approve Settlement and for Conditional Dismissal, Record Doc. No. 301, is GRANTED, as provided herein.   **IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment, Record Doc. Nos. 234, 257 and Defendants' Motion Pursuant to Rule 56(d), Record Doc. No. 263, are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the court reconsiders sua sponte its previous order, Record Doc. No. 153, denying BP's Motion for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b), Record Doc. No. 125, and that BP's motion is **GRANTED**.

II.   THE SULLIVAN PLAINTIFFS' MOTION FOR LEAVE TO INTERVENE

   A.   The Undersigned Magistrate Judge Has Jurisdiction to Rule on the Motion

As a threshold matter, all <u>parties</u> in this matter have consented in writing to its referral to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c), but the proposed intervenors have <u>not</u> so consented. Although neither the existing parties nor the <u>Sullivan</u> Plaintiffs have questioned whether I have the authority to rule definitively on the pending Motion for Leave to File Petition in Intervention, I address the issue because it is jurisdictional.  <u>Barber v. Shinseki</u>, 660 F.3d 877, 879 (5th Cir. 2011).

Section 636(c)(1) provides that, "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." Compliance with the requirements of Section 636(c) "gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all

without district court review." Roell v. Withrow, 538 U.S. 580, 585 (2003); accord Hill v. City of Seven Points, 230 F.3d 167, 168-69 (5th Cir. 2000).

My research has located only two appellate courts that have addressed whether a magistrate judge may enter a final ruling on a motion to intervene in a consent case under Section 636(c), and those courts reached conflicting results. The Second Circuit found in N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 996 F.2d 21, 25 (2d Cir. 1993), that a magistrate judge lacks the authority to rule on a motion to intervene, despite the prior written consent of the existing parties under Section 636(c). The court emphasized the "critical role" of consent in Section 636(c) referrals because "the consent of each party is essential to the validity of the statutory system that allows a magistrate judge to make binding adjudications." Id. at 24. The appeals court held that, absent the consent of the proposed intervenors, "the magistrate judge was not authorized to enter a final order denying intervention; her decision on the motion is deemed to be a report and recommendation to the district judge." Id. at 25; see also Stackhouse v. McKnight, No. 05-0607-cv, 2006 WL 406292, at *2 (2d Cir. Feb. 22, 2006) ("[W]hen intervenors seek to join the litigation as named parties they are ordinarily seeking to protect interests adverse to the existing parties to the litigation. Therefore, intervenors have the right to have their motion heard in an Article III forum."). The Second Circuit did not analyze

in either of these opinions how a proposed intervenor, who is not yet a "party," falls

within the statutory language requiring "the consent of the <u>parties</u>."

     In <u>People Who Care v. Rockford Bd. of Educ.</u>, 171 F.3d 1083 (7th Cir. 1999), the

Seventh Circuit disagreed with the Second Circuit and held that a magistrate judge has

the authority to enter a final ruling on a motion to intervene in a consent case.

> Although the power of a magistrate judge to enter binding judgments
> depends on the consent of the parties, it would erode that power unduly if
> would-be intervenors had to consent as well.  If the motion to intervene
> were submitted to and granted by a district judge, the intervenors would
> become parties, and the case could not proceed to judgment by the
> magistrate judge without their consent. . . .  [If they did] not consent, . . .
> the entire case, or at least the parts of it on which their claims bore, would
> be shifted to a different adjudicator.  The consequences would be delay,
> confusion, duplication of effort, the possibility of inconsistent
> determinations, and a drain on judicial resources.   Some of these
> consequences would ensue even if the district judge denied the motion to
> intervene.  For to rule on the motion he would have to familiarize himself
> with a case pending before another adjudicator, and the case would be
> frozen, as a practical matter, while he was mulling over his ruling.

<u>Id.</u> at 1089 (citations omitted).  The Seventh Circuit

> conclude[d] that the power to rule on motions to intervene is a necessary
> and proper incident of the magistrate judge's power to decide the
> underlying case.  This conclusion does no violence to the language of §
> 636(c)(1), which requires only the consent of 'parties' to the magistrate
> judge's entering dispositive orders; an applicant for intervention is not a
> party, . . . – he wants to <u>become</u> a party.

<u>Id.</u> (citations omitted).

"[D]istrict courts faced with this same consent issue have acknowledged that authorities are split as to whether a proposed intervenor must consent to a magistrate judge's jurisdiction where the existing parties have already consented." Centrue Bank v. Golf Discount of St. Louis, Inc., No. 4:10CV16 TIA, 2010 WL 2802034, at *2 (E.D. Mo. July 15, 2010) (citing Natural Res. Defense Council v. Gutierrez, No. C 01-0421 JL, 2007 WL 1518359, at *2 (N.D. Cal. May 22, 2007); McWhorter v. Elsea, Inc., No. 2:00-cv-473, 2006 WL 3526405, at *1 (S.D. Ohio Dec. 6, 2006); United States v. 1731-1735 No. Fourth St., No. 2:04-cv-0764, 2006 WL 3793305, at *3 (S.D. Ohio Nov. 21, 2006); USCOC of N.H. RSA # 2, Inc. v. Town of Bow, No. 05-CV-327-JM, 2006 WL 624880, at *1 (D.N.H. Mar. 7, 2006); Perles, P.C. v. Kagy, 394 F. Supp. 2d 68, 71 (D.D.C. 2005)).

In the absence of any binding precedent in the Fifth Circuit, I find persuasive the reasoning of the Seventh Circuit in People Who Care and those district courts that have followed People Who Care in circuits where their own appellate court has not yet addressed the issue.  Centrue Bank, 2010 WL 2802034, at *2; Natural Res. Defense Council, 2007 WL 1518359, at *2; Perles, P.C., 394 F. Supp. 2d at 70-71.  Thus, I find that I have the authority to rule on the Sullivan Plaintiffs' motion to intervene.

In the alternative, I clearly have the authority to rule on this non-dispositive pretrial motion under 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1(A).

10

Section 636(b)(1)(A) provides:

> (b)(1) Notwithstanding any provision of law to the contrary–
>
>     (A) a judge may designate a magistrate judge to hear and <u>determine any pretrial matter</u> pending before the court, <u>except</u> a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A) (emphasis added).  A motion for leave to intervene is <u>not</u> one of the motions listed in the statute that a magistrate judge may not decide without the consent of the parties.

In implementing Section 636(b)(1)(A), Fed. R. Civ. P. 72 distinguishes between pretrial matters that are not dispositive of a party's claim or defense, which may be referred to a magistrate judge to decide and then appealed to the presiding district judge under a clearly erroneous or contrary to law standard, Fed. R. Civ. P. 72(a), and dispositive matters, which may be referred to a magistrate judge only for findings and recommendation, with a final decision reserved to the district judge upon de novo review of any objections.  Fed. R. Civ. P. 72(b).  Consistent with Fed. R. Civ. P. 72, this court's Local Rule 72.1(A) automatically refers for decision all contested motions for leave to

intervene to the magistrate judge to whom an action is allotted and allows for district court review under the clearly erroneous standard for non-dispositive motions.  WFK & Assocs., LLC v. Tangipahoa Parish, No. 06-6684, 2007 WL 1537633, at *1 (E.D. La. May 23, 2007) (Feldman, J.); Sunrise Shipping, Ltd. v. M/V Am. Chemist, No. 96-2849, 1997 WL 289349, at *1 (E.D. La. May 29, 1997) (Berrigan, J.).

      B.    The Sullivan Plaintiffs Are Not Entitled to Intervene

          1.    The Arguments of the Sullivan Plaintiffs

The Sullivan Plaintiffs seek to intervene in this matter solely to object to any term of the settlement agreement by which opt-in plaintiffs in the instant consolidated cases who wish to participate in the settlement will be required to waive and release all claims they have against Worley arising out of their employment by Worley.  Such a release would necessarily include all claims that the plaintiffs in the consolidated cases have against Worley for breach of contract and unpaid wages as putative class members in the Sullivan litigation.  The Sullivan Plaintiffs argue that "there is a substantial risk that such a waiver or release will not be made knowingly and with full knowledge of the consequences of such a waiver or release" and that the waiver or release "would prejudice or compromise . . . the claim of the class members, and plaintiffs [in the instant consolidated actions], being litigated in the" Sullivan litigation.  Record Doc. No. 298-1, at p. 2.  The Sullivan Plaintiffs contend that they are entitled to intervene of right under

Fed. R. Civ. P. 24(a) because their interest "in protecting their claim in the" <u>Sullivan</u> litigation is "directly related to the subject matter of the litigation pending before this court." <u>Id.</u> at p. 3.  Counsel for the <u>Sullivan</u> Plaintiffs argue that, as state court class counsel, they represent not just the five named <u>Sullivan</u> Plaintiffs in seeking to intervene, but that they represent all <u>Sullivan</u> class members, including plaintiffs in the instant FLSA action.  The <u>Sullivan</u> Plaintiffs assert that they have standing to intervene because class counsel have an obligation to protect the rights of the plaintiffs in this court to the extent that they are also members of the <u>Sullivan</u> class.

The <u>Sullivan</u> Plaintiffs' Motion for Leave to File Petition in Intervention cites Fed. R. Civ. P. 23(d)(1) and 24(a)(2) as bases for their alleged right to intervene.  However, Rule 23 governs only class actions.  The captioned consolidated cases are <u>not</u> Rule 23 class actions.  Instead, they are a conditionally certified collective action under the FLSA and its consolidated breach of contract action, in which the court has <u>denied</u> plaintiffs' motion for class certification under Rule 23.  Record Doc. No. 187.  Thus, only Rule 24 applies to the motion to intervene.

> ### 2.     Legal Standards for Allowing Intervention

As to intervention of right, Rule 24(a) states:

> On timely motion, the court must permit anyone to intervene who:  (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical

matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Thus, a party is entitled to an intervention of right if (1) the motion to intervene is timely; (2) the potential intervenor asserts a "direct, substantial [and] legally protectable" interest that is related to the property or transaction that forms the basis of the controversy in the case into which it seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect its interest; and (4) the existing parties do not adequately represent the potential intervenor's interest. In re Lease Oil Antitrust Litig., 570 F.3d 244, 247, 250 (5th Cir. 2009) (quotation omitted); Ross, 426 F.3d at 753; Heaton v. Monogram Credit Card Bank, 297 F.3d 416, 422 (5th Cir. 2002); Ford v. City of Huntsville, 242 F.3d 235, 239 (5th Cir. 2001); Edwards v. City of Houston, 78 F.3d 983, 1000 (5th Cir. 1996); Espy, 18 F.3d at 1204-05, 1207 (quoting Piambino v. Bailey, 610 F.3d 1306, 1321 (5th Cir. 1980)). "In the absence of any of these elements, intervention as of right must be denied." Graham v. Evangeline Parish Sch. Bd., 132 F. App'x 507, 511 (5th Cir. 2005) (citing United States v. Franklin Parish Sch. Bd., 47 F.3d 755, 758 (5th Cir. 1995)).

As to permissive intervention, Fed. R. Civ. P. 24(b) provides in pertinent part:

(1)   In General.   On timely motion, the court may permit anyone to intervene who:
      (A) is given a conditional right to intervene by a federal statute; or

> (B) has a claim or defense that shares with the main action a
> common question of law or fact.
>
> *   *   *
>
> (3) Delay or Prejudice.  In exercising its <u>discretion</u>, the court must consider
> whether the intervention will unduly delay or prejudice the adjudication of
> the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (3) (emphasis added).  "Federal courts should allow intervention

where 'no one would be hurt and greater justice could be attained.'"  <u>Ross v. Marshall</u>,

426 F.3d 745, 753 (5th Cir. 2005) (quoting <u>Sierra Club v. Espy</u>, 18 F.3d 1202, 1205 (5th

Cir. 1994).

Both permissive interventions and interventions of right may be permitted only

"upon timely application," Fed. R. Civ. P. 24(a), because "the requirement of timeliness

applies whether intervention is sought as a matter of right or as a matter of discretion."

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and</u>

<u>Procedure</u> § 1916 at 527-28 (3d ed. 2007).  The concept of "timeliness" in connection

with motions for leave to intervene is a flexible one, which is left to the sound discretion

of the trial court.  <u>Id.</u> at 529 (citing <u>Grubbs v. Norris</u>, 870 F.2d 343, 345 (6th Cir. 1989);

<u>Holland v. Sterling Enters., Inc.</u>, 777 F.2d 1288, 1293 (7th Cir. 1985); <u>McDonald v. E.J.</u>

<u>Lavino Co.</u>, 430 F.2d 1065, 1074 (5th Cir. 1970)); <u>accord</u> <u>In re Lease Oil Antitrust Litig.</u>,

570 F.3d at 248.  "'The requirement of timeliness is not a tool of retribution to punish the

tardy would-be intervenor, but rather a guard against prejudicing the original parties by

the failure to apply sooner.'"  <u>Heaton v. Monogram Credit Card Bank</u>, 297 F.3d 416, 422

(5th Cir. 2002) (quoting <u>Espy</u>, 18 F.3d at 1205).  "Th[is] analysis is contextual; absolute

measures of timeliness should be ignored."  <u>Espy</u>, 18 F.3d at 1205; <u>accord</u> <u>Heaton</u>, 297

F.3d at 422.  "A court should ignore 'how far the litigation has progressed when

intervention is sought[,] . . . the amount of time that may have elapsed since the

institution of the action . . . [, and] the likelihood that intervention may interfere with the

orderly judicial processes.'"  <u>Am. V Ships Ltd. v. Norica Eng'g Servs.</u>, 34 F. App'x 151,

2002 WL 496377, at *3 (5th Cir. 2002) (quoting <u>John Doe # 1 v. Glickman</u>, 256 F.3d

371, 376 (5th Cir. 2001)).

 "Recognizing these considerations, this court has fashioned a four-factor test for

determining whether a motion to intervene is timely."  <u>Id.</u>  Thus, when determining

whether a motion to intervene is timely, a court must consider  (1) how long the potential

intervenor knew or reasonably should have known of his stake in the case into which he

seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the

potential intervenor failed to intervene when he knew or reasonably should have known

of his stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if

the court does not let him intervene; and (4) any unusual circumstances that weigh in

favor of or against a finding of timeliness.   <u>In re Lease Oil Antitrust Litig.</u>, 570 F.3d at

247-48 (citing <u>Stallworth v. Monsanto Co.</u>, 558 F.2d 257, 263-66 (5th Cir. 1977));

<u>Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.</u>, 346 F.3d 552, 560-61 (5th Cir.

2003).  "These factors are not a formula for determining timeliness; instead, it should be determined based on all the circumstances."  Id. at 561 (quotation omitted).

> 3.     The Motion to Intervene Is Untimely

The Sullivan Plaintiffs' motion to intervene is untimely.  The two consolidated actions were filed in this court on February 4, 2011.  The Sullivan case was filed in state court three days later.  Counsel for Worley deposed two of the lead Sullivan Plaintiffs, Michael Sullivan and Johnny Knighten, in the state court lawsuit during the first week of July 2011, and both of them acknowledged that they were aware of the overtime lawsuit in federal court.  Defendants' Exhs. 2 and 3, Record Doc. Nos. 308-2 and 308-3. The record establishes that counsel for the Sullivan Plaintiffs has been "monitoring" the instant FLSA action since at least July 15, 2011, when counsel for plaintiffs in the instant case filed a Notice of Related Case in the Sullivan litigation.  Plaintiffs' Exh. A, Record Doc. No. 303-1, letter dated July 19, 2011 from counsel for the Sullivan Plaintiffs to plaintiffs' counsel.  Plaintiffs in the instant case also moved to intervene in the Sullivan litigation on July 22 and September 23, 2011.  Record Doc. No. 303-3 and 303-4, Plaintiff's Exhs. C and D.  All of the Sullivan Plaintiffs, who were also potential members of the FLSA collective action in this court, were individually notified of the collective action on August 22, 2011 when the Notice of Collective Action and Consent

to Become a Plaintiff form was sent to them.  Plaintiff's Exh. B, Record Doc. No. 303-2, declaration under penalty of perjury of Michelle M. La Count.

Thus, all <u>Sullivan</u> Plaintiffs and their counsel knew or reasonably should have known of their stake in this case at least by July 15, 2011, but certainly no later than the end of August 2011.  Despite that actual or constructive knowledge, they did not file their motion to intervene until December 27, 2011, after a settlement had been reached.  They argue that they did not become aware of the proposed settlement agreement until the parties filed their first Joint Motion to Dismiss, and then the <u>Sullivan</u> Plaintiffs decided to intervene.  This explanation is inadequate to excuse their untimely filing.  Obviously, "it is always a possibility that the present parties will settle a lawsuit." <u>Bush v. Viterna</u>, 740 F.2d 350, 358 (5th Cir. 1984); <u>accord</u> <u>Great Atl. & Pac. Tea Co. v. Town of East Hampton</u>, 178 F.R.D. 39, 44 (E.D.N.Y. 1998).

A release of all claims that the settling plaintiffs have against the settling defendant is extremely common in settlement agreements.  "'[T]he very nature of a general release is that the parties desire to settle all matters forever . . . [and a] general release . . . not only settles enumerated specific differences, but claims of every kind or character, known or unknown.'"  <u>DeHoyos v. Allstate Corp.</u>, 240 F.R.D. 269, 311-12 (W.D. Tex. 2007) (quoting <u>Zandford v. Prudential-Bache Sec., Inc.</u>, 112 F.3d 723, 727 (4th Cir. 1997)); <u>accord</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 106 (2d

Cir. 2005); <u>United States v. Allegheny-Ludlum Indus. Inc.</u>, 517 F.2d 826, 853 (5th Cir. 1975).  Such releases are enforceable because a "contrary result would not contribute significantly to the public policy of encouraging the settlement of differences and compromise of disputes in which the execution and exchange of releases is the common and legally accepted means of consummation."  <u>Ingram Corp. v. J. Ray McDermott & Co.</u>, 698 F.2d 1295, 1312 (5th Cir. 1983); <u>accord</u> <u>Newby v. Enron Corp.</u>, 394 F.3d 296, 305 n.15 (5th Cir. 2004).  Thus, the <u>Sullivan</u> Plaintiffs could and should have moved to intervene earlier if they believe that they have an interest to protect related to a potential settlement of the instant litigation, which could have happened at any time and in which Worley was almost certain to have required the release of all claims as a condition of any settlement agreement.

As to the second prong of the Rule 24 timeliness test, the existing parties will suffer serious prejudice because the potential intervenors failed to intervene when they knew or reasonably should have known of their purported stake in this case.  "The inquiry for this factor is whether other parties were prejudiced <u>by the delay</u>, not whether they would be prejudiced <u>by the addition of the claim</u> (obviously, in the sense that they may obtain less, existing parties are always prejudiced by new claims)."  <u>Effjohn Int'l Cruise Holdings, Inc.</u>, 346 F.3d at 561 (citation omitted).  Here, the existing parties are prejudiced by the proposed intervenors' delay because the parties relied on the presence

of the existing plaintiffs and the absence of any additional plaintiffs in determining their

litigation, negotiation and settlement strategies.  The existing parties are represented by

able counsel, who effectively and zealously litigated this case during months of discovery

and motion practice and who negotiated for many hours over the past few months to

reach a compromise that will benefit both sides by avoiding the risks and costs of

ongoing litigation, providing plaintiffs with significant compensation for their FLSA

claims and putting an end to all claims of the settling plaintiffs against Worley.  Allowing

the <u>Sullivan</u> Plaintiffs, who failed to move to intervene earlier despite their knowledge

of their purported interest in this litigation, to sidetrack this process and attempt to

negotiate new terms when the settlement is nearly complete would be highly prejudicial

to the parties by prolonging the lawsuit, increasing its cost and risking the annulment of

a complex settlement agreement.  <u>Choike v. Slippery Rock Univ.</u>, 297 F. App'x 138, 141

(3d Cir. 2008); <u>Hollywood Cmty. Synagogue, Inc. v. City of Hollywood</u>, 254 F. App'x

769, 771 (11th Cir. 2007); <u>Lelsz v. Kavanagh</u>, 710 F.2d 1040, 1045 (5th Cir. 1983).

 As to the third prong of the Rule 24 timeliness test, the <u>Sullivan</u> Plaintiffs will

suffer <u>no</u> prejudice if they do not intervene.  The <u>Sullivan</u> Plaintiffs argue that they and

their counsel, as state court class representatives and state court class counsel, represent

the plaintiffs in this case.  However, the <u>Sullivan</u> Plaintiffs have no standing to intervene

as purported representatives of plaintiffs in either of these consolidated actions because

all plaintiffs in both actions are already represented by counsel of record.  Adequacy of representation is "critical to the . . . inquiry" into the third timeliness factor.  Lelsz, 710 F.2d at 1046.  "If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight."  Id.

There is no possible prejudice to the existing plaintiffs by allowing them, advised by their chosen counsel of record, to choose between accepting the settlement terms and releasing all of their claims against Worley in exchange for significant compensation, or rejecting the settlement and continuing to prosecute their contract claims in either the Sullivan litigation or this court, as the settlement agreement and this court's order will provide.  In addition, the members of the putative Sullivan class who did not join in the actions in this court will not be prejudiced in any way because those putative class members' interests in prosecuting their own claims in the Sullivan litigation will be unaffected by the settlement agreement in the instant actions.  "Moreover, [the proposed intervenors are] not a stranger to the litigation [who] became aware of [their] . . . claim only shortly before the [the attempt to intervene]; nor, for example, [are they] an unsophisticated ward of the court.  In short, the prejudice to [the intervenors, if any] was of [their] own making."  Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 561-62.

Finally, no unusual circumstances, such as an inability to act upon their longstanding knowledge of the instant actions, including the ever-present possibility of

settlement, weigh in favor of a finding of timeliness.  <u>Stallworth</u>, 558 F.3d at 266.  The motion to intervene is untimely.

Accordingly, the motion is denied.

4.      <u>Sullivan</u> Plaintiffs Fail to Meet the Other Criteria for Intervention

Even if the motion was timely, the <u>Sullivan</u> Plaintiffs have failed to carry their burden to satisfy the other criteria of Rule 24(a)(2) for an intervention of right or of Rule 24(b) for a permissive intervention.

Consideration of the three remaining Rule 24(a)(2) factors weighs heavily in favor of denying the motion to intervene.  As to the second factor, the <u>Sullivan</u> Plaintiffs do not assert a direct, substantial and legally protectable interest that is related to the property or transaction that forms the basis of the controversy in this case.  They have <u>no</u> interest in the settlement of the plaintiffs' FLSA claims, as they admittedly do not intend to object to any terms of the settlement agreement other than any waiver or release provision.

The <u>Sullivan</u> Plaintiffs also lack a direct, substantial and legally protectable interest in representing a <u>Sullivan</u> litigation class <u>in this court</u> because the state court has not yet defined the scope of the class, no notice of the state court class action has been formalized or sent to putative class members, and Worley has appealed the state court's order certifying a class.  As a result, the putative state court class members have not

received notice of their rights, including the opportunity to exclude themselves from the class, which is required both by Louisiana Code of Civil Procedure article 592(B) and to establish due process.  Albach v. Kennedy, 801 So. 2d 476, 480 (La. App. 1st Cir. 2001); Ducote v. City of Alexandria, 670 So.2d 1378, 95-1197 (La. App. 3d Cir. 1996). Any interest the putative class members may have in a Sullivan class remains contingent on the state appeal court's decision on Worley's appeal, a definition of the scope of the class, notice to class members and expiration of the opt-out period.   Until these contingencies occur, the named Sullivan Plaintiffs and their counsel do not represent any members of the putative Sullivan class, except those who have agreed to be represented by counsel, and do not represent those who have elected to proceed with their claims in this court, where they are represented by their own counsel of record.  See In re Katrina Canal Breaches Consolidated. Litig., No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008) (citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. . . .   Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.").

As to the third Rule 24(a)(2) factor for intervention of right, the disposition of the instant case will in no way impair or impede the potential intervenors' ability to protect their interests.  The five named <u>Sullivan</u> Plaintiffs and any putative <u>Sullivan</u> state court class members who are not plaintiffs in the consolidated actions in this court have no interest whatsoever in the outcome of these consolidated actions.  Each plaintiff in this court will have the choice either to accept the settlement terms or to reject them and maintain his or her individual claims either in the <u>Sullivan</u> litigation or in this court.  The <u>Sullivan</u> Plaintiffs have adduced no reason why individual plaintiffs in an FLSA collective action should not be entitled to accept or reject individual settlement offers. Case law supports such a right.  <u>In re Shell Oil Refinery</u>, 152 F.R.D. 526, 535 (E.D. La. 1989) (citing <u>In re General Motors Corp. Engine Interchange Litig.</u>, 594 F.2d 1106, 1137-40 (7th Cir. 1979); <u>Vernon J. Rockler & Co., Inc. v. Mpls. Shareholders Co.</u>, 425 F. Supp. 145, 149-50 (D. Minn.1977); <u>Chrapliwy v. Uniroyal, Inc.</u>, 71 F.R.D. 461, 464 (N.D. Ind. 1976); <u>Rodgers v. U.S. Steel Corp.</u>, 70 F.R.D. 639, 642-43 (W.D. Pa. 1976)). Regardless of the decisions of any plaintiffs regarding settlement in the instant cases, those who do not participate and are putative members of the <u>Sullivan</u> class can still pursue their claims in the state court litigation, which is the only interest that they have.

The <u>Sullivan</u> Plaintiffs also have not established the fourth factor in a Rule 24(a)(2) analysis:  that the existing parties do not adequately represent the <u>Sullivan</u>

Plaintiffs' alleged interest in ensuring that the plaintiffs in these cases are fully advised of their rights regarding the settlement agreement and its consequences on their claims in the <u>Sullivan</u> matter.  The <u>Sullivan</u> Plaintiffs have produced nothing but speculation that there is a "substantial risk" that plaintiffs in this action will not <u>knowingly</u> waive or release their contract claims against Worley.  On the contrary, plaintiffs in these actions are represented by able counsel who have proven themselves competent, professionally responsible and capable of advising plaintiffs fully regarding the terms of the settlement agreement.  There is no evidence that counsel of record for plaintiffs in this court will not adequately represent the interest of their clients that the <u>Sullivan</u> Plaintiffs attempt to assert.  "When the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." <u>Franklin Parish Sch. Bd.</u>, 47 F.3d at 757 (quotation omitted).  No such negative interests have been established.

Although counsel for the <u>Sullivan</u> Plaintiffs might wish to advise plaintiffs in these actions differently regarding the proposed settlement, mere "tactical differences do not make inadequate the representation of those whose interests are identical." <u>Bush</u>, 740 F.2d at 358 (citing <u>Bumgarner v. Ute Indian Tribe</u>, 417 F.2d 1305, 1308 (10th Cir. 1969); <u>Acuff v. United Papermakers</u>, 404 F.2d 169 (5th Cir. 1968)).

> Representation is not inadequate simply because "the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."  Generally, [the proposed intervenor] would need to demonstrate that it has a legal interest that not only differs from the [the existing plaintiffs'] interest, but would permit [the proposed intervenor] to assert a justification . . . that could not be equally asserted by the [existing plaintiffs].

Schwartz v. Town of Huntington, 191 F.R.D. 357, 359 (E.D.N.Y. 2000) (quoting United States v. City of N.Y., 198 F.3d 360, 367 (2d Cir. 1999)) (citing Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)) (additional citations omitted).  Under these standards, the Sullivan Plaintiffs have not shown that the existing plaintiffs do not adequately represent the Sullivan Plaintiffs' alleged interest in ensuring that plaintiffs are fully advised of their rights regarding the settlement agreement. Having failed to satisfy any of the criteria of Rule 24(a)(2), the Sullivan Plaintiffs are not entitled to intervene of right.

Permissive intervention pursuant to Fed. R. Civ. P. 24(b) "is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common.'"  Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)).  However, permissive intervention "is a matter wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are

otherwise satisfied." Staley v. Harris County, 160 F. App'x 410, 414 (5th Cir. 2005) (quotation omitted) (brackets and ellipsis by the Fifth Circuit). Thus, "a district court may deny permissive intervention if such would unduly delay or prejudice the adjudication of the rights of the original parties." Graham, 132 F. App'x at 514 (quotation omitted).

The Sullivan Plaintiffs do not expressly seek permissive intervention and do not assert that they have a claim or defense that shares a common question of law or fact with the main action. Nonetheless, for the same reasons discussed above in finding that the Sullivan Plaintiffs are not entitled to intervene of right, I find that there are no common questions of law or fact inherent in the Sullivan Plaintiffs' alleged interest in representing plaintiffs who are already adequately represented and when the Sullivan Plaintiffs will experience no prejudice if intervention is denied, while the existing parties will suffer clear prejudice if intervention is allowed. Therefore, I deny the Sullivan Plaintiffs' motion to the extent it might seek permissive intervention under Rule 24(b).

Accordingly, the Sullivan Plaintiffs' Motion for Leave to File Petition in Intervention, Record Doc. No. 298, is denied.

27

III.   THE MOTION TO APPROVE THE SETTLEMENT AGREEMENT

A.   Legal Standards for Approval of Settlement in an FLSA Collective Action

"Because this case arises under the Fair Labor Standards Act, the Court must scrutinize the settlement for fairness before issuing its approval.  This is because '[t]he provisions of the [FLSA] are mandatory, and not subject to negotiation and bargaining between employers and employees.'"  Domingue v. Sun Elec. & Instrumentation, Inc., No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (Vance, J.) (quoting Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 717 (E.D. La. 2008) (Berrigan, J.)) (citing 29 U.S.C. § 201 et seq.; Schulte v. Gangi, 328 U.S. 108, 113 n.8 (1946); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-55 (11th Cir. 1982)).

Before approving a settlement in an FLSA collective action, the court must determine whether (1) the settlement involves the resolution of a bona fide dispute over an FLSA provision and (2) the settlement is fair and reasonable.  Lynn's Food Stores, 679 F.2d at 1352-55; Jarrad v. S. Shipbldg. Corp., 163 F.2d 960, 960 (5th Cir. 1947); Domingue, 2010 WL 1688793, at *1 (citing Lynn's Food Stores, 679 F.2d at 1355); Liger v. New Orleans Hornets NBA Ltd. P'ship, No. 05-1969, 2009 WL 2856246, at *1 (E.D. La. Aug. 28, 2009) (Berrigan, J.) (citing Lynn's Food Stores, 679 F.2d at 1355; Collins, 568 F. Supp. 2d at 717; Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *4 (E.D. La. Sept. 23, 2004) (Wilkinson, M.J.)).

28

"The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, . . . but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages."  Collins, 568 F. Supp. 2d at 719 (citations and footnote omitted).

Although the provisions of Fed. R. Civ. P. 23 , which governs class actions, do not apply to collective actions under the FLSA, Rule 23(e) is similar in that it requires court approval before a proposed class action settlement may be finalized.  A class action settlement must be "fair, adequate and reasonable" and cannot be the product of collusion between the parties.  In re Beef Indus. Antitrust Litig., 607 F.2d 167, 179 (5th Cir. 1976); Ruiz v. McKaskle, 724 F.2d 1149, 1152 (5th Cir. 1984); Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977).

Thus, the Rule 23(e) standard encompasses the "fair and reasonable" settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action.  Liger, 2009 WL 2856246, at *2 (citing Hitchcock v. Orange County, No. 604CV1722ORL28JGG, 2006 WL 3614925 (M.D. Fla. Dec. 11, 2006); Brask v. Heartland Auto. Servs., Inc., No. 06-CV-00011, 2006 WL 2524212 (D. Minn. Aug. 15, 2006); Camp, 2004 WL 2149079, at *5).

In determining whether a settlement is fair, adequate and reasonable, the court should consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

Reed v. Gen. Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983) (citing Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982)); accord Liger, 2009 WL 2856246, at *2; Collins, 568 F. Supp. 2d at 722.

When considering these factors, the court should keep in mind the "strong presumption" in favor of finding a settlement fair. Cotton, 559 F.2d at 1331; Henderson v. Eaton, No. 01-0138, 2002 WL 31415728, at *2 (E.D. La. Oct. 25, 2002) (Vance, J.). Moreover, the court is aware, as the parties must also be, that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 806 (3d Cir. 1995) (citing Cotton, 559 F.2d at 1330).

### B.   A Bona Fide Dispute Exists

Having reviewed the record as a whole, including the submissions of the parties in connection with the instant motion, as well as the complaint, as amended; defendants' answers; plaintiffs' previously filed motion for conditional certification as a collective

30

action; plaintiffs' previously filed motions for partial summary judgment; and defendants' responses to plaintiffs' previously filed motions, I find that the instant action presents bona fide disputes over FLSA provisions, including but not limited to whether the administrative exemption, the highly compensated employee exemption and/or the executive exemption from overtime pay is or are applicable to the collective action members; whether collective action members were paid on a salaried basis; whether they were similarly situated for purposes of final certification of a collective action; which defendant was plaintiffs' employer;[1] whether the employer willfully violated the statute; whether the employer acted in good faith; the extent of overtime each collective action member actually worked; the amount of overtime pay that may be due to each collective action member; and the possibility of recovery of liquidated damages. "A disagreements [sic] over 'hours worked or compensation due' clearly establishes a bona fide dispute. The institution of a federal court litigation followed [by] aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute." Bredbenner v. Liberty Travel, Inc., No. 09-905, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (quoting Hohnke v. United States, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005)) (citing D.A.

---

[1]Defendant Worley Catastrophe Response, LLC has consistently denied that it employed any plaintiffs.

Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946); Lynn's Food Stores, 679 F.2d at 1354); accord Liger, 2009 WL 2856246, at *3 (citing Hohnke, 69 Fed. Cl. at 175).

This court has observed both aggressive prosecution and strenuous defense in this case.  Thus, the first prong of the settlement approval process is satisfied.

C.   The Settlement Is Fair and Reasonable

Having considered all of the Reed factors, 703 F.2d at 172, in light of the circumstances of this case, as discussed below, I find that the proposed settlement is fair, reasonable and adequate to the collective action members.

1.   No Evidence of Fraud or Collusion

The court may presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  4 Newberg on Class Actions § 11.41 (4th ed.) (avail. on Westlaw without pagination; database updated Nov. 2011); accord Liger, 2009 WL 2856246, at *3; Collins, 568 F. Supp. 2d at 725.  While approval of a proposed settlement is discretionary, "it is clear that the court should not give rubber-stamp approval."  Newberg on Class Actions § 11.41.  There is also a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. Id. § 11.51; accord Liger, 2009 WL 2856246 at *3; Collins, 568 F. Supp. 2d at 725.

In the instant case, no evidence refutes these presumptions.  On the contrary, the evidence and the court's record and observations establish that the parties conducted

extensive settlement discussions, including a lengthy private mediation and, at the request of all counsel, several additional settlement conferences conducted by me that led to finalization of the settlement agreement.   Depositions were taken, voluminous discovery requests were propounded, thousands of pages of documents were produced and more than 360 docket entries were filed into the court's record.   Counsel for both sides are experienced in complex litigation of this sort, and they have demonstrated to the court throughout these proceedings, and particularly when they reached the settlement agreement, their thorough familiarity with the facts and legal issues.

The settlement agreement treats all collective action members uniformly.   Benefits will be distributed based on objective criteria of employment status, wages paid while each member was employed and the amount of overtime worked.

Reasonable additional amounts are awarded to collective action representative Altier and another plaintiff, Sandra Brennan, who both participated directly in depositions and discovery.   Such incentive awards

> are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.   The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.

<u>Sullivan v. DB Invs., Inc.</u>, No. 08-2784, 2011 WL 6367740, at *41 n.65 (3d Cir. Dec. 20, 2011) (quotations and citations omitted); <u>accord</u> <u>Henderson</u>, 2002 WL 31415728, at *6 (citing <u>In re S. Ohio Corr. Facility</u>, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997)).

Accordingly, I find that the settlement agreement is the result of arm's-length negotiations and that there is no evidence of fraud or collusion.  I therefore presume that the proposed settlement is fair and reasonable.

  2. The Complexity, Expense and Likely Duration of the Litigation
  3. The Stage of the Proceedings and the Amount of Discovery

These two related factors weigh heavily in favor of finding that the settlement is fair and reasonable.  The FLSA lawsuit was filed on February 4, 2011.  A collective action was conditionally certified on July 11, 2011, and the court ordered that notice be given to potential collective action members that they must opt in to the case in writing no later than 60 days after the notice was sent, which occurred on August 22, 2011.

The discovery process was painstaking and complex.  The parties exchanged extensive written discovery, produced thousands of documents and conducted six depositions in this case, as well as obtaining deposition testimony of eleven witnesses taken in the related <u>Sullivan</u> litigation in state court.  Counsel had to travel to Illinois and Florida to depose plaintiffs Altier and Brennan and would have been required to travel to the home states of other plaintiffs who reside outside Louisiana for additional depositions if the case proceeded to trial.

To narrow the issues, plaintiffs filed partially dispositive motions that are still pending, but were deferred while the parties conducted their extensive settlement negotiations.  Counsel vigorously engaged their opponents on the legal issues and the facts.  Virtually every motion filed in this action engendered opposition memoranda and often reply memoranda.  The court held numerous motion hearings and status conferences during the eleven months that this litigation has been ongoing in this court.

A jury trial in this matter is scheduled for August 20, 2012, with a final pretrial conference set for August 6, 2012.  Before that would occur, Worley intended to file a motion to decertify the collective action, which would have required extensive briefing by both parties, with numerous exhibits presented to address the multiple legal and factual questions raised by a motion to decertify, and a lengthy hearing and ultimate opinion by the court.  Trial in this matter would become more complicated and expensive if these claims proceeded as individual suits.  Worley most likely would have filed summary judgment motions following a decision on decertification.  Even if not decertified, given the precise damages to be proven, the parties estimate that trial would last approximately two weeks.  The ultimate results after trial would probably be appealed by the unsuccessful parties, which would delay any possible payments to the plaintiffs until the end of a long process.

After engaging in preliminary negotiations, the parties participated in a professional private mediation at which they succeeded in resolving many issues leading to an overall settlement. I later conducted settlement conferences with counsel to assist them with resolving and clarifying the few remaining issues necessary for final agreement.

Thus, this litigation, including the settlement effort, has been complex, expensive and time-consuming for the named plaintiffs, counsel, the parties and the court, and was scheduled to continue at least into August 2012. "Issues of decertification and dispositive motions were avoided because of the progress of settlement negotiations." Collins, 568 F. Supp. 2d at 726. These factors weigh in favor of approving the settlement.

4.      The Probability of Plaintiffs' Success on the Merits

This factor also militates in favor of approving the settlement. When examining the fairness of a proposed settlement, the court should not engage in a trial on the merits because the very purpose of the compromise is to avoid the delay and expense of a trial. Reed, 703 F.3d at 172. However, the court must analyze the law and facts to some extent to examine the probability of plaintiffs' success on the merits.

Plaintiffs allege that Worley required them to work as claims adjusters in the aftermath of the Deepwater Horizon oil spill for 12-hour days six or seven days per week,

totaling 72 or 84 hours per week, and paid them only a pre-set daily rate of pay for each day worked.  They argue that Worley's failure to pay them for overtime work violated Section 207(a)(1) of the FLSA, which requires an employer to pay overtime compensation to non-exempt employees who work more than 40 hours per week.  29 U.S.C. § 207(a)(1).  They also contend that Worley's violations were willful, which would increase the potential damages.

However, the FLSA exempts from the overtime provisions of Section 207(a)(1) "any employee employed in a bona fide executive, administrative, or professional capacity."  Id. § 213(a)(1).  Worley argues that the claims adjusters were executive, administrative and/or highly compensated employees who were exempt from the overtime compensation mandate of Section 207(a)(1).  See 29 C.F.R. §§ 541.200, 541.214(a) (administrative employee); id. § 541.100 (executive employee); id. § 541.601 (highly compensated employees).  Worley also contends that some of the plaintiffs had contracts, while others did not, and that different managers hired the claims adjusters and established their pay, work schedules and other job expectations.  If Worley was found to have violated the FLSA overtime provision, it has asserted a defense that it did so in good faith, which would, if successful, limit its liability for liquidated damages.  A finding of a lack of willful violation would also favor defendant's good faith defense as to liquidated damages.

The court granted conditional certification of the FLSA collective action because plaintiffs' evidence of Worley's generally applicable pay policy to similarly situated employees was sufficient to satisfy the <u>lenient</u> standard for conditional certification at the notice stage.  However, Worley has raised legitimate issues regarding whether the collective action members are similarly situated, including the extent of individualized damages and whether any employees were exempt from the overtime provisions of the FLSA, which would be addressed at the motion for decertification stage, after discovery had revealed more specific evidence.  If the court would have granted Worley's eventual motion to decertify the collective action, the likelihood of each collective action member succeeding on the merits would be significantly diminished, dependent as it would be on individualized proof.

The court has not ruled on plaintiffs' motions for partial summary judgment, in which plaintiffs argue (1) that they were not paid on a salaried basis and they therefore did not fall under either the administrative, executive or highly compensated employee exemptions, Record Doc. No. 234, and (2) that Worley cannot establish a good faith defense to the imposition of liquidated damages.  Record Doc. No. 257.  My preliminary assessment of these motions and Worley's opposition memoranda is that the motions would most likely be denied on the basis that material fact issues are in dispute regarding each issue.

Thus, plaintiffs would still bear the burden of proving both liability and damages at trial, as well as proving that Worley Catastrophe Response, LLC was their employer. Worley would bear the burden of proving that plaintiffs were exempt administrative, executive or highly compensated employees.  Although plaintiffs believe that they have a good case, they acknowledge in their memorandum in support of their attorney's fees request that this "case presents a novel and difficult question . . . of whether a reasonable relationship should exist between a guaranteed salary and the final amount paid to employees.  There were few authorities backing the positions of either side on this particular question[,] causing much uncertainty about the final result."  Record Doc. No. 301-1 at p. 7.  Plaintiffs also acknowledge that their status as skilled, highly paid claims adjusters makes it more difficult for them to argue and prove that they were entitled to overtime pay.  Id.  In addition, the confidential individual form that each plaintiff must sign to participate in the settlement acknowledges a certain weakness in plaintiffs' claims that was revealed during discovery, which reduced the potential value of any recovery in these consolidated actions.  Exhibit C to the Confidential Settlement Agreement.

In sum, while Worley's defenses to plaintiffs' FLSA claims appear somewhat more meritorious at this stage of the litigation, the court understands that the case depends on outstanding procedural and substantive issues yet to be decided, which could

39

change the case significantly before trial.  Such uncertainty about the outcome weighs heavily in favor of approving the settlement agreement.

5.    The Range of Possible Recovery

The parties have not provided the court with any estimates of the possible range of recovery.  However, based on my in camera review of the confidential settlement terms, I find that the amount offered in the settlement, which is more than the amount of regular overtime claimed by plaintiffs, is fair and reasonable.  The total amount to be paid to each participating plaintiff, which has been set out in particularized detail to the court, Exhibit A to the Confidential Settlement Agreement, will be allocated between liquidated damages, which will not be treated as wages and as to which no income taxes will be withheld, and wages, as to which each individual's statutory income taxes will be withheld.  Worley will pay out of its own funds the employer's share of any taxes due on the wages portion of the settlement funds.

6.    The Opinions of Plaintiffs' Counsel, Collective Action Representatives and Absent Members of the Collective Action

The parties join in requesting approval of the settlement, which was arrived at after extensive negotiation by counsel.  "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."  Liger, 2009 WL 2856246, at *4 (citing Cotton, 559 F.2d at 1330).  Although a potential conflict of interest always exists between an attorney and members of a collective action, id.

40

(citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974); In re Employee Benefit Plans Sec. Litig., No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. 1993)), there is no evidence that plaintiffs' counsel have not worked in good faith to secure a reasonable compromise.

Unlike an ordinary class action, there are no absent class members in an FLSA collective action.   However, I have reviewed and evaluated the arguments of the prospective intervenors, the Sullivan Plaintiffs, in opposition to the parties' joint motion for approval of the settlement agreement.  The Sullivan Plaintiffs do not object to the settlement, only to any release of participating plaintiffs' claims against Worley in the state court Sullivan litigation.  The Sullivan Plaintiffs do not provide any valid reason not to approve the agreement.  All plaintiffs in this action will be fully advised regarding the settlement terms, including any waiver and release provisions.

Given the relevant factors discussed above, especially the relatively low chance of success on the merits and the comparatively better damages case, I find that the amounts allocated to each collective action member in the settlement agreement are fair, adequate and reasonable.  Accordingly, the motion to approve the settlement agreement is granted.

IV.	THE MOTION FOR APPROVAL OF ATTORNEY'S FEES AND COSTS

Under the FLSA, the court may award reasonable attorney's fees to the prevailing party.  Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006).  The

statute provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Though the attorney's fee provision of the FLSA does not mention 'prevailing party,' we typically cite prevailing party fee-shifting jurisprudence in FLSA cases." Saizan, 448 F.3d at 799 n.7 (citing Tyler v. Union Oil Co., 304 F.3d 379, 404 (5th Cir. 2002)).

As part of its fairness determination, the court must determine independently that the proposed attorney's fees and costs to be awarded to plaintiffs' counsel are reasonable. Collins, 568 F. Supp. 2d at 717 (citing Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998); Camp, 2004 WL 2149079 at *18). In this case, the court does not have to apportion the fees among plaintiffs' counsel because counsel have agreed to divide the fees pursuant to a fee-sharing agreement, a procedure that the Fifth Circuit has approved. In re High Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 228 (5th Cir. 2008); Longden v. Sunderman, 979 F.2d 1095, 1101 (5th Cir. 1992). Plaintiffs' counsel have submitted the fee-sharing agreement to the court for in camera review and have asked the court to retain jurisdiction to enforce that agreement.

Plaintiffs' counsel seek 25 percent of the total settlement amount as attorney's fees, plus a specified amount for costs. Record Doc. No. 301-1 at p. 1. Although Worley does not object to the requested fees or costs, I denied the parties' initial Joint Motion to

Dismiss and to approve the settlement agreement, and ordered plaintiffs to provide documentation of the reasonableness of the requested fees so that I could independently evaluate the reasonableness of the fees without reliance solely on defendants' lack of opposition to the requested amount. Record Doc. No. 299. Plaintiffs have done so by filing a memorandum of authorities in support of the requested fees, Record Doc. No. 301-1, and providing for in camera review copies of the contemporaneous time sheets kept by their lawyers and an affidavit of one of their lead counsel, J.P. Hughes, Jr., attesting to the accuracy, reasonableness and necessity of the hours expended. Plaintiffs' Exhs. D and F (submitted in camera). I have carefully reviewed and independently evaluated all of these submissions.

A.      Legal Standards for an Award of Reasonable Attorney's Fees

Citing Blum v. Stenson, 465 U.S. 866, 900 (1984), and Goldberger v. Integrated Res., Inc., 203 F.3d 43, 49 (2d Cir. 2000) (citing cases from other circuits), plaintiffs argue that a "blended percentage of the recovery method" is appropriate in this case of a common fund settlement. They note that many collective action members who consented to join this lawsuit before a collective action was either conditionally or finally certified agreed in writing to a contingent attorney's fee of 33 and 1/3 percent, which they assert is an indication of the reasonableness of a lesser percentage amount. Plaintiffs also

contend that a "lodestar cross-check" confirms the reasonableness of the requested 25 percent fee.

The methods used by various federal courts to assess reasonable attorney's fees in a class or collective action involving a common settlement fund

> include the 'lodestar' method, which entails multiplying the reasonable hours expended on the litigation by an adjusted reasonable hourly rate; the percentage method, in which the Court compensates attorneys who recovered some identifiable sum by awarding them a fraction of that sum; or, more recently, a combination of both methods in which a percentage is awarded and checked for reasonableness by use of the lodestar method.

In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 651 (E.D. La. 2010) (Fallon, J.) (citation omitted).  Under any of these methods, "the ultimate goal is reasonableness." Id. at 650-51.

The Fifth Circuit has traditionally used the lodestar method to calculate reasonable attorney's fees in all types of cases.

> While the United States Supreme Court has approved the percentage method in common fund cases, it has never formally adopted the lodestar method in common fund cases.  Conversely, the Fifth Circuit appears to be the only Court of Appeals that has not explicitly endorsed the percentage method.  However, neither has the Fifth Circuit "explicitly disapproved of the percentage method of calculating fees in common fund cases." Therefore, the Fifth Circuit appears to tolerate the percentage method, so long as the Johnson framework is utilized to ensure that the fee awarded is reasonable.

Id. at 651 (quoting In re OCA, Inc. Sec. & Derivative Litig., No. 05-2165, 2009 WL 512081, at *18 (E.D. La. Mar. 2, 2009) (Vance, J.)) (citing Blum, 465 U.S. at 900 n.16;

44

Strong, 137 F.3d at 851-52 & n.5; Forbush v. J.C. Penney Co., 98 F.3d 817, 823-25 (5th Cir. 1996); Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 773-74 (11th Cir. 1991); In re Prudential-Bache Energy Income P'ships Sec. Litig., MDL No. 888, 1994 WL 150742 (E.D. La. Apr. 13, 1994) (Livaudais, J.); Manual for Complex Litigation (Fourth) § 14.121 (2004)).

The Fifth Circuit recently stated that "[t]his circuit requires district courts to use the 'lodestar method' to assess attorneys' fees in class action suits." In re High Sulfur Content Gasoline, 517 F.3d at 228 (emphasis added). However, High Sulfur Content Gasoline is not directly on point because the issue before that court was not whether the amount of attorney's fees awarded to the class members was fair and reasonable, but whether the trial judge had used appropriate procedures to allocate the award of fees among numerous plaintiffs' attorneys, who disputed the allocation among themselves. In addition, the Fifth Circuit's refusal in Strong either to adopt or disapprove the percentage method is also not directly on point because there was no common fund settlement in that case. Klein v. O'Neal, Inc., 705 F. Supp. 2d 632, 674 (N.D. Tex. 2010) (citing Strong, 137 F.3d at 852; In re OCA, Inc. Sec. & Derivative Litig., 2009 WL 512081, at *17).

In light of these uncertainties, I will address plaintiffs' motion to approve their fee application under both the percentage and the lodestar methods. I will first examine the

45

request for attorney's fees under the Fifth Circuit's apparently preferred lodestar method,

then perform a cross-check comparison under the percentage method.

B.    The Lodestar Method

The Fifth Circuit recently summarized the law concerning the lodestar calculation,

as follows.

> In determining the appropriateness of awards of attorneys' fees, district courts engage in a two-step process . . . .  The first step requires the district court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates."  This first-step determination is known as the lodestar calculation. . . .  In the second-step, the lodestar, which is presumptively reasonable, can be adjusted upward or downward by the district court based on the district court's considerations of the Johnson factors. . . .  In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), we laid out twelve factors to be considered in deciding whether the lodestar ought to be adjusted.  See id. at 718.  Those factors are:
>
> > (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

46

Alexander v. City of Jackson, No. 11-60254, 2011 WL 6847792, at *1-2 (5th Cir. Dec. 30, 2011) (quoting La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995)) (additional citations omitted).

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted); accord Saizan, 448 F.3d at 800. Three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Shipes, 987 F.2d at 319-22 & n.9). After Johnson was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. Walker v. United States Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567; Shipes, 987 F.2d at 323). Nonetheless, an increase in the lodestar "due to superior performance and results . . . is permitted in extraordinary circumstances." Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010).

1.      Reasonable Hourly Rates

First, I must determine whether the hourly rates charged by plaintiffs' counsel were

reasonable.   The qualifications and experience of plaintiffs' counsel are established by

their memorandum, Record Doc. No. 301-1 at p. 5; Hughes's affidavit and its attachments

submitted in camera, Plaintiffs' Exh. D; and the affidavits of plaintiffs' attorneys filed in

connection with their motion for class certification, Record Doc. No. 120, Plaintiffs' Exhs.

27-30.  All of the partner level attorneys have substantial experience in FLSA collective

and class actions.

Plaintiffs' counsel assert that they have in the past collected the following hourly

rates for their work.

|  |  |
|---|---|
| Michael A. Starzyk | $400 |
| April L. Walter | $375 |
| Joseph E. Fieschko, Jr. | $350 |
| John R. Linkosky | $350 |
| J.P. Hughes, Jr. | $350 |
| Steven R. Ricks | $300 |
| Raven Applebaum | $275 |
| Nicholas Brown | $275 |
| Hessam Parzivand | $225 |
| J. Paul Rinnan | $150 |

In addition, paralegals and law clerks billed for their work at the following hourly

rates:

|  |  |
|---|---|
| Kelley Kaigler | $95 |
| Sara Nowell | $95 |
| Kim Hammonds | $105 |

| | |
|---|---|
| Victoria Hanson | $105 |
| Megan McGregor | $105 |

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested.  LP&L, 50 F.3d at 328.  Worley does not contest any of the hourly rates.

Hourly rates are to be computed according to the prevailing rates in the relevant legal market, McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011), which is the Eastern District of Louisiana in this case.  I find that the hourly rates for these plaintiffs' attorneys, while at the high end of the range of prevailing market rates for lawyers with comparable experience and expertise in litigation of this type, are entirely reasonable in this case.  Thompson, 553 F.3d at 868; Hornbeck Offshore Servs., L.L.C. v. Salazar, No. 10-1663, 2011 WL 2214765, at *9 (E.D. La. June 1, 2011) (Wilkinson, M.J.), report & recommendation adopted as modified on other grounds, 2011 WL 2516907 (E.D. La. June 23, 2011) (Feldman, J.); Cedotal v. Whitney Nat'l Bank, No. 94-01397, 2010 WL 5582989, at *13 (E.D. La. Nov. 10, 2010) (Chasez, M.J.), report & recommendation adopted as modified on other grounds, 2011 WL 127157 (E.D. La. Jan. 14, 2011) (Lemmon, J.); Ranger Steel Servs., LP v. Orleans Materials & Equip., Co., No. 10-112, 2010 WL 3488236, at *1, *3 (E.D. La. Aug. 27, 2010) (Barbier, J.); Hebert v.

49

Rodriguez, No. 08-5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010) (Barbier, J.), aff'd, 430 F. App'x 253 (5th Cir. 2011).

I also find that the rates billed for paralegals and law clerks are reasonable and recoverable. Missouri v. Jenkins, 491 U.S. 274, 288 (1989); Thompson, 553 F.3d at 868; Braud v. Transp. Serv. Co., No. 05-1898, 2010 WL 3283398, at *15 (E.D. La. Aug. 17, 2010) (Knowles, M.J.).

### 2. The Reasonable Hours Worked

Next, I must determine the reasonable number of hours that plaintiffs' counsel expended on the litigation. As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. Watkins, 7 F.3d at 457. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green v. Admin'rs of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63-64 (2006) (citing Walker, 99 F.3d at 769); accord Hensley, 461 U.S. at 433-34. The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." Walker, 99 F.3d at 770. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended

to substitute for the exercise of billing judgment." Id.; accord Saizan, 448 F.3d at 800;

Hopwood v. Texas, 236 F.3d 256, 279 (5th Cir. 2000).

In this case, plaintiffs' counsel worked a total of 5,452 hours as of December 29,

2011. This does not include the time that plaintiffs' counsel spent after December 29,

2011 in preparing the instant motion with its voluminous supporting documentation and

in responding to the motion to intervene filed by the Sullivan Plaintiffs, all of which

would also be compensable time.

Counsel's representation of plaintiffs throughout this matter has been thoroughly

conscientious and uniformly excellent. I find that the hours spent were reasonable and

even on the low side, considering the complex legal, organizational, strategic and

evidentiary burdens imposed by representation of a very large group of plaintiffs in this

collective action. My review of counsel's time sheets and the hours expended by each

attorney and paralegal reveals no deficiencies significant enough to warrant a reduction

in the hours sought. Thus, the lodestar amount consists of counsel's reasonable hours

multiplied by each attorney's and paralegal's reasonable hourly rate.

The lodestar amount "is presumptively reasonable and should be modified only in

exceptional cases." Watkins, 7 F.3d at 457. Based on the Johnson factors, plaintiffs

request enhancement of their fees by a multiplier of 2.17, and Worley does not object to

the enhancement.

The use of multipliers is acceptable in a common fund case and multipliers in the range of 2.17 or higher are regularly awarded.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998); 3 Newberg on Class Actions § 14.03 at 14-5)) (surveying multipliers in common fund cases and finding a range of 0.6 to 19.6, with more than three-fourths between 1.0 and 4.0 and a bare majority in the 1.5 to 3.0 range); In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 798-801 (S.D. Tex. Sept. 8, 2008) (discussing multipliers awarded and used as lodestar cross-checks in mega-fund cases); cf. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig., 447 F. Supp. 2d 612, 633 (E.D. La. 2006) (Vance, J.) (multiplier of 1.6 is appropriate when two of the Johnson factors, the results obtained and the undesirability of the case, warrant an increase and this multiplier produces a fee that is higher than the average fee for recoveries of a similar size).

In the instant case, faced with novel and difficult questions of law, significant defenses vigorously advanced by skilled and equally conscientious defense counsel, and uncertainties of proof, the results achieved by plaintiffs' counsel are extraordinary and warrant an upward adjustment of the lodestar.  Counsel has obtained for the participating collective action members net settlement payments that amount to more than their wage damages and that appear to be better than the amounts received in typical FLSA collective

actions.  See Charlotte S. Alexander, Would an Opt In Requirement Fix the Class Action Settlement?  Evidence from the Fair Labor Standards Act, 80 Miss. L.J. 443, 488-89 Fig. 9 (Winter 2010) (analyzing recovery data from 25 collective actions and finding that the ratio of recovery to plaintiffs' losses ranged from four percent to 100 percent (but only in one case where plaintiffs' actual losses were extremely low), while the median ratio was 28 percent).  Plaintiffs' counsel in this case succeeded in collecting opt-in consent forms from 544 of 1,304 putative members of this collective action, which is a very high rate of 42 percent of potential plaintiffs choosing to opt in.  See id. at 466-67, 489-91, Fig. 10 (median opt-in rate was 15 percent, while 30 of 38 cases studied had opt-in rates below 20 percent); id. at 468 (citing Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 292-94 (2008)) (Brunsden's study of 21 FLSA collective actions calculated average opt-in rate of 15.71 percent).

In addition, the legal, factual and procedural difficulties cited above, combined with the problems involved in prosecuting a collective action against two defendants when one denied that it was the employer, while the other may not have been financially capable of paying a large judgment, contributed to the "undesirability" of the instant case.  This factor also weighs in favor of an upward adjustment.

As to the other factors that are not subsumed in the lodestar or prohibited from consideration, the customary fee and awards in similar cases have already been evaluated in establishing a reasonable hourly rate.   The nature and length of the professional relationship with plaintiffs' attorneys is not relevant in this case.

Having weighed the Johnson factors, I find that the requested multiplier is reasonable in this case.

C.     The Percentage Method

"Courts have endorsed the practice of using the other method of determining reasonableness of fees in class actions, percentage of recovery, to double check the fee." Collins, 568 F. Supp. 2d at 729 (citing In re Linerboard Antitrust Litig., No. MDL 1261, 2004 WL 1221350, at *3 (E.D. Pa. June 2, 2004)).   In this case, plaintiffs request attorney's fees in the amount of 25 percent of the settlement amount, which Worley does not contest.

The Manual on Complex Litigation states that a fee of 25 percent of a common fund "'represents a typical benchmark'" in common fund cases, while the "Ninth Circuit has adopted a benchmark of 25% in common fund cases" and common fee awards in securities suits "generally fall within the 20 to 33 per cent range."   In re OCA, Inc. Sec. & Derivative Litig., 2009 WL 512081, at *19 (quoting Manual on Complex Litigation (4th) § 14.121)) (citing Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003); Newberg

on Class Actions § 14.6 (4th ed.)).  "In order to prevent windfalls to attorneys, the percentage of attorneys' fees awarded typically decreases as the settlement award increases in size."  Id. (citing In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 195 (E.D. Pa. 2000); Hicks v. Stanley, No. 01 Civ. 10071(RJH), 2005 WL 2757792 at *9 (S.D.N.Y. 2005)).

Judges in this court have awarded percentage amounts to class counsel in common fund settlements ranging from 6.5 percent in a multi-billion dollar settlement of the Vioxx drug litigation to the 20 to 29 percent range in cases with millions of dollars in the settlement fund.  See In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d at 651-52 (awarding 6.5 percent of $4.85 billion settlement amount); In re OCA, Inc. Sec. & Derivative Litig., 2009 WL 512081, at *20 (After reviewing data on fee awards in scholarly studies of class action settlements, the court set a benchmark of 27 percent for a $6.5 million recovery, which was the average of the mean fee percentages in "settlements of comparable size and is also roughly the average of the fee awards in the sampling of reported securities cases collected by this Court involving similar-sized settlements."); Collins, 568 F. Supp. 2d at 729 (citing In re Harrah's Ent'mt, Inc., No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) (Clement, J.); In re Prudential-Bache Energy Income P'ships Secs. Litig., 1994 WL 150742, at *1-2, 4)) (using the percentage method as a cross-check of the lodestar and approving award of 24 percent of the $3,120,000 settlement amount, which

"is lower than the caselaw would support."); Turner v. Murphy Oil, USA, Inc., 472 F. Supp. 2d 830, 864 (E.D. La. 2007) (Fallon, J.) (setting initial benchmark of 15 percent, adjusted upward to 17 percent after consideration of the Johnson factors, in $195 million settlement); In re Educ. Testing Serv., 447 F. Supp. 2d at 628-29 (Vance, J.) (in an $11.1 million recovery, initial benchmark of 25 percent was adjusted upward to 29 percent because two of the Johnson factors warranted an upward adjustment).

Based on the studies cited by the judges of this court and their analyses in these cases, compared to the settlement fund in the instant case and the Johnson factors that have already been discussed, which warrant an upward adjustment, I find that an award of attorney's fees in the amount of 25 percent of the settlement amount is fair and reasonable as a cross-check of the lodestar amount.

D.    Costs

The parties have agreed that a certain amount of the settlement funds shall be allocated as costs, which the agreement specifically defines as out-of-pocket costs in several categories, including expert witness fees and the cost of notice administration by the third-party administrator that handles collective action notices. The amount available to pay costs is capped at a specific number, which is about 1.44 percent of the total settlement value. The agreement provides that any amount left in the costs fund after all of the actual costs are paid will revert to the participating plaintiffs, to be allocated among

56

them according to the same percentages by which the main settlement fund will be allocated. Worley has also agreed to pay the cost of the private mediator out of its own funds. I find that the amount allocated for costs is fair and reasonable.

IV.    BP'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT

After the court granted BP's motion to dismiss all claims against it in Civil Action No. 11-241, Record Doc. No. 87, I denied BP's Motion for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b). Record Doc. Nos. 125, 153. I now reconsider that ruling sua sponte.

Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court <u>may</u> direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b) (emphasis added). "Rule 54(b) requests should <u>not</u> be granted routinely." <u>Brown v. Miss. Valley State Univ.</u>, 311 F.3d 328, 332 (5th Cir. 2002) (emphasis added).

"To enter a Rule 54(b) final judgment, the district court must have disposed of 'one or more . . . claims or parties.' That requirement is jurisdictional . . . ." <u>Eldredge v. Martin Marietta Corp.</u>, 207 F.3d 737, 740 (5th Cir. 2000) (quoting Fed. R. Civ. P. 54(b)). This court's previous dismissal order disposed of all of plaintiffs' claims against BP.

Thus, the only issue is whether "there is no just reason for delay" in entering a Rule 54(b) final judgment in BP's favor.  This question is left to the district court's "sound judicial discretion."  <u>Brown</u>, 311 F.3d at 332.

"Rule 54(b) judgments are not favored and should be awarded only when necessary to avoid injustice . . . ."  <u>Fitch v. Wells Fargo Bank, N.A.</u>, No. 08-1639, 2010 WL 4553455, at *1-2 (E.D. La. Oct. 28, 2010) (Vance, J.) (citing <u>PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.</u>, 81 F.3d 1412, 1421 (5th Cir. 1996)); <u>accord</u> <u>Ordemann v. Livingston</u>, No. 06-4796, 2007 WL 1651979, at *1 (E.D. La. June 7, 2007) (Feldman, J.).  "One of the primary policies behind requiring a justification for Rule 54(b) certification is to avoid piecemeal appeals.  A district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel."  <u>PYCA Indus., Inc.</u>, 81 F.3d at 1421 (citing <u>Sears, Roebuck & Co. v. Mackey</u>, 351 U.S. 427, 437 (1956); <u>Ansam Assocs., Inc. v. Cola Petroleum, Ltd.</u>, 760 F.2d 442, 445 (2d Cir. 1985)).

"A major factor the district court should consider is whether the appellate court 'would have to decide the same issues more than once even if there were subsequent appeals.'"  <u>Fitch</u>, 2010 WL 4553455, at *1 (quoting <u>H & W Indus., Inc. v. Formosa</u>

<u>Plastics Corp.</u>, 860 F.2d 172, 175 (5th Cir. 1988)) (internal quotation omitted); <u>accord</u>

<u>Ordemann</u>, 2007 WL 1651979, at *1.

The court has now granted the remaining parties' Joint Motion to Approve Settlement and for Conditional Dismissal and has approved the settlement agreement, which specifically releases all claims by participating plaintiffs against BP, and will dismiss all of the participating plaintiffs' claims against Worley. Even if some plaintiffs choose not to participate in the settlement and they proceed to trial against Worley and lose, or summary judgment is entered against them, they will most likely not appeal the dismissal of BP. BP will not appeal its own dismissal. After weighing the appropriate factors, I find that Rule 54(b) certification is now appropriate regarding the previously ordered dismissal of BP and that there is no just reason for delay in entering a Rule 54(b) final judgment in BP's favor.

Accordingly, IT IS ORDERED that BP's Motion for Entry of Partial Final Judgment Pursuant to Fed. R. Civ. P. 54(b), Record Doc. No. 125, is granted. Judgment will be separately entered.

V.   ORDER   APPROVING   SETTLEMENT   AGREEMENT   AND
<u>CONDITIONALLY DISMISSING THESE ACTIONS</u>

I have considered the parties' Joint Motion to Approve Settlement and for Conditional Dismissal, evaluated the Confidential Settlement Agreement between the parties and the attachments thereto, and found their terms to be fair and reasonable, as

discussed in detail above.  I have also reviewed the parties' proposed order of approval and dismissal, which I found less than sufficiently explanatory in part and somewhat too restrictive in other regards, and which I have revised herein to clarify the options available to any plaintiff who does not want to participate in the settlement and chooses instead to pursue his or her individual claims.

Accordingly, **IT IS ORDERED** that the Joint Motion to Approve Settlement and for Conditional Dismissal, Record Doc. No. 301, is **GRANTED**, for the reasons set out above and subject to the following order.

**IT IS FURTHER ORDERED** that these consolidated actions are hereby **DISMISSED**, each party to bear its own fees and costs except as provided in the Confidential Settlement Agreement, WITHOUT PREJUDICE to the rights of the parties to move for summary judgment to enforce the settlement, as provided in Local Rule 41.2, if the settlement is not consummated within a reasonable time.  The court specifically approves the terms of the settlement agreement, including the attorneys' fee-sharing agreement that was submitted to the court for in camera review as Plaintiffs' Exhibit F, and incorporates those terms into this order of dismissal.  The court retains jurisdiction over the parties and their settlement agreement, including the fee-sharing agreement and the scope of both agreements, for purposes of enforcing the agreements, should any

controversy arise about the terms of the agreement or any party's performance of its obligations under the agreement.

**IT IS FURTHER ORDERED** that, no later than three (3) days after entry of this order, plaintiffs' counsel must file into the record of Civil Action No. 11-241 the signed consent forms of those plaintiffs listed in Exhibit A to the Confidential Settlement Agreement, after redacting residential street addresses, home telephone numbers, cell phone numbers and e-mail addresses, except that plaintiffs' counsel is not required to file consent forms for any of the plaintiffs whose opt-in consent forms have previously been filed in this action.

**IT IS FURTHER ORDERED** that, upon the court's receipt of a joint motion to dismiss to be filed by the parties no later than sixty (60) days after June 1, 2012, the court will enter a final order dismissing WITH PREJUDICE all claims of all Participating Plaintiffs (defined as those plaintiffs who return the signed form specified in the Confidential Settlement Agreement to the designated third-party administrator no later than March 16, 2012) in these consolidated actions, each party to bear its own fees and costs except as provided in the Confidential Settlement Agreement.

**IT IS FURTHER ORDERED** that the court's final order will dismiss the claims of any Non-Participating Plaintiffs (defined as those plaintiffs who fail to return the signed form specified in the Confidential Settlement Agreement to the designated third-

party administrator by March 16, 2012) WITHOUT PREJUDICE to any rights such Non-Participating Plaintiffs may have either to re-file such claims in the United States District Court for the Eastern District of Louisiana or to pursue their individual claims either in the existing cases or elsewhere.  In their joint motion to dismiss, the parties must identify the names of any Non-Participating Plaintiffs or indicate that there are no Non-Participating Plaintiffs, as the case may be.

New Orleans, Louisiana, this _____18th_____ day of January, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE